**BARNES & THORNBURG LLP**
David P. Schack (SBN 106288)
david.schack@btlaw.com
Alice M. Kyureghian (SBN 300972)
akyureghian@btlaw.com
2029 Century Park East, Suite 300
Los Angeles, California 90067-2904
Telephone: (310) 284-3880
Facsimile: (310) 284-3894

Attorneys for Plaintiff
ATHENA COSMETICS, INC.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

ATHENA COSMETICS, INC., a corporation,

Plaintiff,

v.

GREAT AMERICAN INSURANCE COMPANY, a corporation; and DOES 1 through 15, inclusive,

Defendants.

Case No. 2:24-cv-08010-AB-AGR
Assigned to: Hon. André Birotte Jr.

**PLAINTIFF ATHENA COSMETICS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS COMPLAINT FILED BY DEFENDANT GREAT AMERICAN INSURANCE COMPANY**

*[Filed concurrently with the Declaration of David P. Schack in support of Athena's Opposition to Great American's Motion to Dismiss]*

Date: November 22, 2024
Time: 10:00 a.m.
Location.: 7B

**TABLE CONTENTS**

I. INTRODUCTION AND SUMMARY OF MATERIAL ALLEGATIONS........1
II. LEGAL STANDARDS ........4
A. Legal Standard Governing a Motion to Dismiss........4
B. Applicable Law Governing Insurance Policies........5
1. Scope of the Duty to Defend........5
2. Enforceability of Coverage Limitations........7
III. THE COURT SHOULD DENY THE MOTION........7
A. The Court Should Deny the Motion as to Breach of Contract. ........7
1. The Complaint Sufficiently Alleges a Breach of Contract. ........7
2. The Unfair Competition Endorsement is inapplicable and does not absolve Great American's duty to defend. ........16
B. The Court Should Deny the Motion as to Breach of the Implied Covenant of Good Faith and Fair Dealing........21
C. The Court Should Deny the Motion as to Athena's UCL Claim. ........23
D. The Court Should Deny the Motion as to Declaratory Relief........24
E. The Court Should Deny the Motion as to Athena's Claim for Recovery of Punitive Damages. ........24
IV. CONCLUSION........25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re "Agent Orange" Prod. Liab. Litig.*,
100 F.R.D. 718 (E.D.N.Y. 1983) ..... 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 4

*Assoc. Indus. Inc. Co. v. Mt. Hawley Ins. Co.*,
536 F. Supp. 3d 676 (S.D. Cal. 2021) ..... 20

*Balistreri v. Pacifica Police Dept.*,
901 F.2d 696 (9th Cir. 1988) ..... 4

*Bank of the West v. Sup. Ct.*,
2 Cal. 4th 2354 (1992) ..... 7

*Barnett v. Fireman's Fund Ins. Co.*,
90 Cal. App. 4th 500 (2001) ..... 6

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ..... 10

*Buss v. Superior Ct.*,
16 Cal. 4th 35 (1997) ..... *passim*

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) ..... 4

*Clark v. Allstate Ins. Co.*,
106 F. Supp. 2d 1016 (S.D. Cal. 2000) ..... 25

*Clark v. State Farm Mut. Auto. Ins. Co.*,
231 F.R.D. 405 (C.D. Cal. 2005) ..... 4, 25

*CNA Cas. of Cal. v. Seaboard Sur. Co.*,
176 Cal. App.3d 598 (1986) ..... 6

*Comput. Economics, Inc. v. Gartner Grp., Inc.*,
50 F. Supp. 2d 980 (S.D. Cal. 1999) ..... 24, 25

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) .......... 23

*EP&A Envirotac. Inc. v. Great Am. E&S Ins. Co.*,
2021 WL 3779227 (C.D. Cal. 2021) .......... 19

*F.D.I.C. v. GB Escrow, Inc.*,
2011 WL 4550831 (C.D. Cal. Sept. 28, 2011) .......... 7

*Foster-Gardner, Inc. v. National Union Fire Ins. Co.*,
18 Cal.4th 857 (1998) .......... 10

*Gray v. Zurich Ins. Co.*,
65 Cal.2d 263 (1966) .......... 5

*Great Am. E&S Ins. Co. v. Theos Med. Sys.*,
357 F.Supp.3d 953 (N.D. Cal. 2019) .......... 19

*Guebara v. Allstate Ins. Co.*,
237 F.3d 987 (9th Cir. 2001) .......... 21

*Hartford Fire Ins. Co. v. Tempur-Sealy Int'l Inc.*,
158 F. Supp. 3d 877 (N.D. Cal. 2016) .......... 3, 12, 13, 14

*Haynes v. Farmers Ins. Exch.*,
32 Cal. 4th 1198 (2004) .......... 17, 18

*Hervey v. Mercury Cas. Co.*,
185 Cal. App. 4th 954 (2010) .......... 18

*Hudson Ins. Co. v. Colony Ins. Co.*,
624 F.3d 1264 (9th Cir. 2010) .......... 5

*Jackson v. East Bay Hosp.*,
980 F.Supp. 1341 (N.D. Cal. 1997) .......... 25

*James River Ins. Co. v. Rawlings Sporting Goods Co., Inc.*,
No. CV 19-6658-GW-MAAX, 2021 WL 346418 (C.D. Cal. Jan. 25, 2021) .......... 3, 18, 19

*Lucas v. Dep't of Corr.*,
66 F.3d 245 (9th Cir. 1995) .......... 5

*MacKinnon v. Truck Ins. Exchange*,
31 Cal.4th 635 (2003) .......... 7

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ........ 6

*Markoff v. Athena Cosmetics, Inc.*,
Case No. 23-cv-16401 ........ 2

*Montrose Chem. Corp. v. Superior Court*,
6 Cal.4th 287 (1993) ........ 5, 7

*In re Nat'l Football League Players Concussion Inj. Litig.*,
821 F.3d 410 (3d Cir. 2016) ........ 12

*Nordby Constr. Inc. v. Am. Safety Indem. Co.*,
2015 WL 1263389 (N.D. Cal. Mar. 19, 2015) ........ 22, 23

*Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*,
307 F.3d 944 (9th Cir. 2002) ........ 5, 7, 15

*Plantronics, Inc. v. Am. Home Assurance Co.*,
No. 07-cv-06038-PSG, 2014 WL 2452577 (N.D. Cal. 2014) ........ 15

*Rush v. Athena Cosmetics, Inc.*,
Case No. 23-cv-8799 ........ 2

*Rush v. Athena Cosmetics, Inc.*,
Case No. 24-cv-8542 ........ 2

*Saarman Constr., Ltd v. Ironshore Specialty Ins. Co.*,
230 F. Supp. 3d 1068 (N.D. Cal. 2017) ........ 21

*Slattery v. Athena Cosmetics, Inc.*,
Case No. 2:23-cv-10078 ........ 2

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ........ 4

*Tria Beauty, Inc. v. Nat'l Fire Ins. Co.*,
2013 WL 2181649 (N.D. Cal. 2013) ........ 19

*Upper Deck Co., LLC v. Fed. Ins. Co.*,
358 F.3d 608 (9th Cir. 2004) ........ 13, 14

*Zhang v. Sup. Ct.*,
57 Cal. 4th 364 (2013) ........ 23, 24

**Statutes**

Cal. Bus. & Prof. Code § 17200 *et seq.* .......... 3, 18, 23

Cal. Bus. & Prof. Code § 17500 *et seq.* .......... 18

Cal. Civ. Code § 1750 *et seq.* .......... 18

RICO .......... 14

UCL .......... 23, 24

**Other Authorities**

D Finis, S Schrader, G Geerling, Meibomian gland dysfunction .......... 9

Fed. R. Civ. P. 8(a) .......... 22, 24, 25

Fed. R. Civ. P. 9(b) .......... 25

Federal Rules of Civil Procedure Rules 8 and 9 .......... 25

Federal Rules of Civil Procedure, Rule 8(a) .......... 3

Federal Rules of Civil Procedure Rule 12(b)(6) .......... 4

Policy No. PL 2258463-05 .......... 8

Rule 12(b)(6) .......... 4

*Sony Comput. Entm't Am. Inc. v. Am. Home Assurance Co* .......... 14

Plaintiff Athena Cosmetics, Inc. ("Athena") submits the following Memorandum of Points and Authorities in opposition to Defendant Great American Insurance Company's ("Great American") motion to dismiss (the "Motion").

## I. INTRODUCTION AND SUMMARY OF MATERIAL ALLEGATIONS

Great American's obligations under the policy and the breach of those obligations, as alleged in the Complaint, are simple and clear. In refusing to defend and now moving to dismiss the Complaint, Great American goes through many machinations in an attempt to avoid its obligations under the policy. Among other things, it refuses to acknowledge the breadth of the duty to defend as enunciated by the California Supreme Court and appellate courts for the last 50 years. Instead of accepting its duty to defend where the underlying pleadings allege facts giving rise to a *possibility* of coverage, it improperly asserts self-serving conclusions about what the plaintiffs must have meant by their pleadings. It then attempts to evade its contractual and prophylactic duty to defend the entire action by advocating for the application of a vague exclusion that—according to Great American—would improperly contract around a seminal California Supreme Court case, *Buss v. Superior Court*.[1] Great American's arguments are erroneous and contravene fundamental public policy and law in California.

In reality, Athena has more than sufficiently alleged a breach of the policy. As evidenced by Great American's 23-page Motion seeking to dismiss Athena's complaint on substantive coverage grounds, Great American has fair notice of Athena's claim and has the ability to defend against it. That is all that is required by the Federal Rules of Civil Procedure. For the reasons set forth herein, the Court should deny the Motion so that Athena may move forward expeditiously to try its claims against Great American.

*First*, Athena's complaint sufficiently alleges a breach of contract. The

[1] *Buss v. Superior Ct.*, 16 Cal. 4th 35 (1997).

complaint alleges that Great American issued, among others, a policy that provides that Great American "will pay those sums that the Insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." [Complaint, ¶5]. The term "bodily injury" is defined to mean "injury, sickness, disease . . . sustained by a person," including "mental anguish, mental injury or shock if directly resulting from physical injury, sickness, or disease to that person." [*Id.*]. As alleged in the complaint, the Underlying Actions[2] all allege claims of bodily injury and disease, including but not limited to claims that the Athena products caused (1) swollen and red eyes; (2) eye disease; (3) blurry vision; (4) chronic dry eyes; and (5) anxiety, depression and the feeling of isolation. These allegations are the exact "physical injury" and "mental anguish resulting from physical injury" that falls within the Policy's definition of "bodily injury."

Great American seeks to shirk its obligations by simply glossing over these allegations and focusing instead on a singular allegation that the putative class members do not seek to recover for their "physical injuries." This allegation, however, does not eliminate all potential coverage under the Policy as must be the case for Great American to deny its duty to defend. As Great American knows, while the underlying plaintiffs do not seek recovery for their physical injuries, they have *not,* for example, disavowed recovery for their mental injuries. Indeed, the relevant complaints expressly allege mental injury and mental anguish. Because the Policy defines "bodily injury" to include "mental anguish [and] mental injury . . .

[2] There are three underlying actions at issue in this case: (1) *Slattery v. Athena Cosmetics, Inc.*, Case No. 2:23-cv-10078, pending in the Central District of California ("Slattery Action"); (2) *Rush v. Athena Cosmetics, Inc.*, Case No. 23-cv-8799, pending in the Eastern District of New York, ("Rush Action"); and (3) *Markoff v. Athena Cosmetics, Inc.*, Case No. 23-cv-16401, pending in the Northern District of Illinois, ("Markoff Action") (collectively the "Underlying Actions"). After the filing of Athena's Complaint, the Rush Action was dismissed in New York and refiled in California as *Rush v. Athena Cosmetics, Inc.*, Case No. 24-cv-8542, pending in the Central District of California.

resulting from physical injury, sickness or disease," the Underlying Actions continue to allege claims that create *at least* the potential for coverage, *i.e.,* meet the test for triggering Great American's duty to defend. Further, as Great American knows, California courts have repeatedly recognized that factual allegations of bodily injury or mental injury in consumer class action lawsuits suffice to trigger the duty to defend and the mere fact that the named class plaintiff(s) disavows recovery for physical injuries does not eliminate the duty to defend. *Hartford Fire Ins. Co. v. Tempur-Sealy Int'l Inc.*, 158 F. Supp. 3d 877, 885 (N.D. Cal. 2016). In sum, Great American has not satisfied its heavy burden of showing that all possibility of coverage is eliminated, and therefore, Great American owes a duty to defend and has breached that duty by its admitted denial of coverage at the outset.

*Second*, Great American cannot escape its duty by relying on a vague and ambiguous exclusion in its Policy for unfair competition. As an initial matter, the Unfair Competition Endorsement is vague in both its terms and in its application to the Underlying Actions. It is written in shorthand and requires an insured to play a guessing game in ascertaining its meaning. It is further ambiguous as to its meaning. While Great American urges for a broad application of this term to consumer protection statutes, the term "unfair competition" remains undefined and California federal courts, including the Central District, have interpreted this term to apply only to claims brought by business competitors. *James River Ins. Co. v. Rawlings Sporting Goods Co., Inc.*, 2021 WL 346418, at *4 (C.D. Cal. Jan. 25, 2021). Further, Great American's argument that an exclusion for unfair competition absolves its duty to defend, even where there are potentially covered claims for bodily injury, contravenes California law and public policy. Put simply, the Unfair Competition Endorsement does not absolve Great American of its duty to defend.

*Third*, Athena's complaint sufficiently alleges a claim for (1) breach of the implied covenant of good faith and fair dealing, (2) violation of Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL") and (3) declaratory relief. Federal Rules of Civil

Procedure, Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Athena's complaint satisfies this standard.

*Fourth*, Athena has sufficiently pled a prayer for punitive damages. It is well-established that in federal courts, claims for punitive damages under Section 3294 "may be averred generally." Indeed, several federal district courts in California have upheld general allegations that a defendant acted intentionally, with "malice" or with "conscience disregard" as adequately pled under Section 3294. *Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405, 406 (C.D. Cal. 2005).

For these reasons and the reasons stated more fully below, this Court should deny Great American's Motion.

## II. LEGAL STANDARDS

### A. Legal Standard Governing a Motion to Dismiss

Federal Rules of Civil Procedure Rule 12(b)(6) provides that defendants may move to dismiss any action that "fail[s] to state a claim upon which relief can be granted." A complaint survives a Rule 12(b)(6) motion if it contains a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Contrary to arguments Great American advances, a complaint does not require "detailed factual allegations" to survive; it only needs to allege facts sufficient to provide "fair notice to the opposing party of the nature of the claim so that the party may efficiently defend against it." *Id.*

Consequentially, a Rule 12(b)(6) dismissal is appropriate *only* where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on a Rule 12(b)(6) motion, courts may "generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). All allegations of material fact, however, must be construed in the light most favorable to the nonmoving party. *Cahill v. Liberty*

*Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

Finally, even where a complaint is found to be lacking, the court must grant leave to amend unless it is clear that the pleading deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

**B. Applicable Law Governing Insurance Policies**

**1. Scope of the Duty to Defend**

For more than fifty years, beginning with the seminal decision in *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263 (1966), California courts have emphasized the expansive breadth of an insurer's duty to defend and the rule that an insurer must defend the insured if the allegations against the insured create *any possibility* of coverage. In *Gray*, the plaintiff alleged that the insured had committed assault. Even though the exclusionary language in the insurance policy excused the insurer from the defense of actions where the plaintiff alleged that the insured intentionally caused bodily injury (as was the case in the subject assault claim), the California Supreme Court nonetheless held that the insurer had a duty to defend because the *potential* existed, nonetheless, that the plaintiff could obtain a judgment based on nonintentional conduct. Since *Gray*, subsequent decisions have confirmed the breadth of the duty to defend. *See e.g.*, *Montrose Chem. Corp. v. Superior Court*, 6 Cal.4th 287 (1993) (holding that an insurer must defend its insured "if the complaint might be amended to give rise to a liability that would be covered").

To determine whether the insurer owes a duty to defend, courts first "compare the allegations of the complaint—and facts extrinsic to the complaint—with the policy terms to see if they reveal a possibility that the claim may be covered by the policy." *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 949 (9th Cir. 2002). Under California law, the insurer's duty is not measured by the technical legal cause of action pled in the underlying complaint, but rather by the *potential* for liability under the policy's coverage as revealed by the *facts* alleged in the complaint or otherwise known to the insurer." *Hudson Ins. Co. v. Colony Ins.*

*Co.*, 624 F.3d 1264, 1267 (9th Cir. 2010) (emphasis in original).

The breadth of the duty to defend was illustrated in *Barnett v. Fireman's Fund Ins. Co.,* 90 Cal. App. 4th 500 (2001). In *Barnett*, the underlying suit stated causes of action for breach of fiduciary duty, intentional interference with contractual relations, breach of the implied covenant of good faith and fair dealing, and fraud. *Id.* at 506. Buried within these causes of action were factual allegations that the insured made disparaging remarks about the claimant – however, the claimant did not state a separate cause of action for defamation nor did the claimant allege damages caused by these defamatory remarks. *Id.* at 509–10. The insurer, whose policy covers defamatory claims, denied coverage stating that "it had no duty to defend because the third-party complaint did not allege [the insured's] liability for defamation and required speculation about extraneous facts that the third party might or might not assert by amendment." *Id.* at 510. The California appellate court disagreed, noting that "the duty to defend arises when the facts alleged in the underlying compliant give rise to a *potentially* covered claim regardless of the technical legal cause of action pleaded by the third party." *Id.* The Court also noted that the insurer must consider all facts known to it, including extrinsic evidence, to determine whether a potential for coverage existed. *Id.*; *see also CNA Cas. of Cal. v. Seaboard Sur. Co.*, 176 Cal. App.3d 598, 607 (1986) (concluding that the duty to defend is "fixed by the facts" and not by the "formal theory of liability or cause of action pleaded" and holding that a single sentence alleging disparagement in an otherwise uncovered antitrust cause of action was sufficient to trigger coverage).

Further, "[i]f any of the claims in the underlying complaint are covered, the insurer has a duty to defend the entire action." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Thus, in a "mixed action" *–i.e.,* where some claims are potentially covered and some are not—the insurer must defend the entire action from the outset. *Buss*, 16 Cal.4th at 48. "It cannot parse the claims, dividing those that are at least potentially covered from those that are not."

*Id.* at 49. This is because the duty to defend is prophylactic and imposed by law. *Id.*

Finally, the insurer bears a heavy burden to show that it does not have a duty to defend. While the "insured need only show that the underlying claim *may* fall within policy coverage[,] the insurer must prove it *cannot*." *Montrose*, 6 Cal.4th at 300 (emphasis in original). "Once the insured makes a showing of potential coverage, the insurer may be relieved of its duty only when the facts alleged in the underlying suit can by no conceivable theory raise a single issue that could bring it within the policy coverage." *Pension Tr. Fund*, 307 F.3d at 949.

#### 2. Enforceability of Coverage Limitations

It is well-established that "insurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon v. Truck Ins. Exch.*, 31 Cal.4th 635, 648 (2003). To be enforceable, an exclusionary clause "must be conspicuous, plain and clear." *Id.* at 639. "This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage." *Id.* at 648. Further, even if the exclusionary language is conspicuous, plain and clear, the insurer bears the burden of proving the applicability of the exclusion to eliminate coverage. *Id.* Any ambiguity with respect to the applicability of an exclusion or limiting provision must be construed in favor of coverage. *Bank of the West v. Sup. Ct.*, 2 Cal. 4th 1254, 1264–65 (1992).

## III. THE COURT SHOULD DENY THE MOTION

### A. The Court Should Deny the Motion as to Breach of Contract.

#### 1. The Complaint Sufficiently Alleges a Breach of Contract.

To state a claim for breach of contract, a plaintiff must allege "(1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to the plaintiff." *F.D.I.C. v. GB Escrow, Inc.*, 2011 WL 4550831, *4 (C.D. Cal. Sept. 28, 2011). Here, Athena plainly alleges:

- **A contract**: "Great American issued, among others, a Commercial General

Liability Policy, Policy No. PL 2258463-05) to Athena with a policy period of March 1, 2023 to March 1, 2024." [Complaint ¶ 4].

- **Plaintiff's performance or excuse for nonperformance**: "Athena has duly performed all conditions required under the Policy, except any that were excused by Great American's breaches and/or other conduct." [*Id.* ¶ 12].
- **Defendant's breach**: "Great American was and is obligated, *inter alia*, to provide a defense to Athena for the Slattery Action, Rush Action, and Markoff Action (collectively referred to as the 'Actions.') Great American has failed and refused to comply with its duty to defend Athena in the Actions." [*Id.* ¶¶ 9-10], and
- **Damages to the plaintiff –** "As a result of Great American's breach of its obligations under the Policy, Athena has been improperly forced to bear substantial fees and costs in the defense of the Actions and to pay other amounts that should be properly paid by Great American under the Policy." [*Id.* ¶ 11].

Indeed, the Complaint provides specific details regarding Great American's contractual obligations and breach. As alleged in the Complaint, the Policy provides that Great American "will pay those sums that the Insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [*Id.* ¶5]. The term "bodily injury" is defined in the Policy to mean "injury, sickness, disease . . . sustained by a person," including "mental anguish, mental injury or shock if directly resulting from physical injury, sickness, or disease to that person." [*Id.*] The Policy further provides that Great American "will have the right and duty to defend the Insured against any 'suit' seeking those damages." [*Id.*]; *see also* [Ex. A, Section I.a. Dkt. #9-1].

As alleged in the Complaint, the Underlying Actions all allege "claims for damages which fall within the Policy's Commercial General Liability Coverage Form, including without limitation, claims of bodily injury." [Complaint ¶¶ 6-8].

For example, in the Slattery Action, the plaintiff alleges, among other things:

- Paragraph 4: "[The Athena products] cause serious adverse effects to the eye and the structure around the eye, including but not limited to blepharitis, Meibomian Gland Dysfunction, chronic dry eye, redness, discoloration, pain or irritation, and other serious side effects."[3]
- Paragraph 6: "Moreover, since it started selling its PGA-containing Enhancement Serums over-the-counter, Athena has received numerous consumer complaints and reports that its products have caused consumers to suffer serious eye conditions and injuries."
- Paragraph 17: "Plaintiff's use of RevitaLash caused pain and eye inflammation."
- Paragraph 47a: "[I] am experiencing a plethora of issues with my Meibomian gland as a result of the topical prostaglandin analogs in RevitaLash . . . RevitaLash has aged me several years in the span of only a few months . . . ."
- Paragraph 47e: "My eyes had become so red and miserable . . . [I]'ve lost lashes . . . Perhaps when all of the craziness stops, I'll go back to Neulash in the hopes of growing the lashes I lost with Revitalash."
- Paragraph 140: "Defendant's Enhancement Serums . . . resulted in physical impact to Plaintiff and other class members, including . . . sub-cellular or structural impact on Plaintiff's and each other class member's face and eye area."
- Paragraph 141: "As a direct and proximate result of Defendant's negligent conduct, Plaintiff and each other class member suffered

---

[3] Meibomian Gland Dysfunction "is a ***chronic disease***, usually caused by obstruction of the secretary Meibomian gland." D Finis, S Schrader, G Geerling, <u>Meibomian gland dysfunction</u>, National Center for Biotechnology Information, available at *[Meibomian gland dysfunction] - PubMed (nih.gov)* (May 16, 2012).

injury and are entitled to damages in an amount to be proven at trial." [Great American's RJN, Ex. A, Dkt. #10-3.][4]

The complaints in the other Underlying Actions contain similar allegations and largely copy one another. *See* [Great American's RJN, Exs. A-B, ¶¶ 4, 6, 17, 47a, 47e, 141, Dkts. #10-1, 10-2]. In addition, Ms. Slattery—a named plaintiff and class member—described her injuries in a June 15, 2023 letter to Great American, wherein she alleged a variety of physical and mental injuries.[5] (Schack Decl., Exhs. 1-2). These included: (i) swollen and red eyes, (ii) chalazion on the left upper eye, (iii) blurry vision, (iv) blepharitis in both eyes, (v) chronic dry eyes, and (vi) "[t]he sudden onset of eye problems caused her anxiety, depression, and feeling of isolation." (*Id.*) The plaintiff described her mental injuries as follows:

> [The onset of eye problems is] causing me to not have desire for or ability to participate in normal daily activities including cleaning my home. It is always there and a distraction, even carrying on a conversation with the discomfort there.

Ms. Slattery further explained that she can no longer wear makeup "due to her eyes constantly watering" which in turn "makes her feel very self-conscious" and "she has missed many social activities," which further contributes to her "anxiety, depression, and feeling of isolation." (*Id.*) Clearly, these allegations are the exact "physical injuries" and "mental anguish [and] mental injury" that falls within the

[4] In considering a motion to dismiss, the Court may consider documents that are judicially noticeable or whose contents are alleged in a complaint and whose authenticity no party questions. *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994), overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002). Great American has sought judicial notice of the complaints in the Underlying Actions. Athena does not oppose these requests, but notes that Great American has not authenticated the complaints. [Dkt. #10].

[5] Under California law, Great American must consider extrinsic evidence, such as Ms. Slattery's letter, in evaluating the duty to defend. *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal.4th 857, 880 (1998).

Policy's definition of "bodily injury." Accordingly, the Underlying Actions are "suits" alleging "bodily injury" that triggered Great American's duty to defend and its continued refusal to accept those obligations constitutes a breach of contract.

Great American simply glosses over these allegations and focuses instead on a singular allegation—namely, that the putative class members do not seek to recover for their "physical injuries." This argument, however, does not eliminate – let alone address – the possibility that these plaintiffs may seek to recover for their mental injuries. As can be seen from the definition in the Policy, "bodily injury" includes both claims for "physical injury" and "mental anguish, mental injury or shock if directly resulting from physical injury, sickness, or disease to that person." [Ex. A, Section V.3. Dkt. #9-1]. While the putative class members state that they are not seeking to recover for "physical injury," they never disavow recovery for damages for "mental anguish, mental injury or shock." Indeed, the allegations in the Underlying Actions allege facts supporting and creating at least the potential for covered claims for mental anguish or mental injury, such as Athena's products causing class members to be "miserable" and age them "several years in the span of only a few months." In addition, extrinsic evidence plainly establishes that Ms. Slattery alleges mental anguish and injury resulting from her physical injuries. Thus, the Underlying Actions, as pled, allege facts that give rise to the potential for liability–thereby triggering Great American's duty to defend.[6]

Great American argues that plaintiffs in the Underlying Actions could not seek damages for "bodily injury" "without destroying the putative class" because it would undercut the commonality required for class certification. However, this argument simply constitutes an impermissible and self-serving analysis of class

---

[6] The complaints in the Underlying Actions also allege that Athena's products caused class members to contract ***diseases*** (e.g., Meibomian Gland Dysfunction) which are covered separately from "physical injury" in the Policy's definition of bodily injury and damages for which are not disavowed in the complaints.

action law and the intent of the plaintiffs' class action lawyers by an insurance company. There is no ironclad rule that prevents a court from certifying a class where the class action complaint seeks damages for any form of physical injury or mental anguish/injury. *See In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 426–29 (3d Cir. 2016) (certifying a class of retired football players who suffered concussions that led to various physical injuries or diseases); *In re "Agent Orange" Prod. Liab. Litig.*, 597 F.Supp. 740, 755–57 (E.D.N.Y. 1984), aff'd sub nom. 818 F.2d 145 (2d Cir. 1987) (certifying a class of Armed Forces veterans who were physically injured by exposure to Agent Orange). For example, plaintiffs could seek a set amount for mental anguish or injury for each class member that would not affect commonality. Moreover, nothing prevents a plaintiff class action lawyer from seeking such physical or mental injury damages and attempting to seek class approval with an adequate mechanism for determining those damages—even if Great American believes that such a path is misguided. Great American, despite its apparent belief, is not clairvoyant and cannot read the minds of the plaintiff class or their lawyers. Rather, it must, at the outset, defend if the allegations create any possibility of coverage, and here, Great American's speculation about the difficulties of obtaining class certification does not eliminate all possibility of coverage. Rather, if Great American saw the allegation of mental anguish/injury damages as a weakness to the class action complaints, Great American should have accepted defense and helped its insured defeat those claims rather than deny coverage and abandon its insured.

Moreover, as Great American knows, California courts have repeatedly recognized that mere factual allegations of bodily injury or mental anguish in consumer class action lawsuits suffice to trigger the duty to defend and have rejected the very arguments that Great American makes here. For example, in *Hartford Fire Ins. Co. v. Tempur-Sealy Int'l Inc.*, 158 F. Supp. 3d 877 (N.D. Cal. 2016), the underlying class action lawsuit alleged that defendants failed to inform

consumers that their mattresses emitted a chemical odor caused by a volatile organic compound. The insurers, like here, took the position that they had no duty to defend because the underlying complaint did not allege specific claims for bodily injury or property damage. The Court rejected this argument:

> "Defendant [insurer] cannot construct a formal fortress of the third party's pleadings and retreat behind its walls. The pleadings are malleable, changeable and amendable . . . Since modern procedural rules focus on the facts of a case rather than the theory of recovery in the complaint, the duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources. An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential for liability under the policy."

*Id.* at 883 (quoting *Gray*, 65 Cal.2d at 276–77).

Indeed, the *Tempur-Sealy* court distinguished the very cases that Great American cites in support of its Motion. It noted that "none of the underlying complaints in those cases actually *alleged* detailed facts that would support covered claims for bodily injury or property damage." *Id.* at 884. In *Low v. Golden Eagle Ins. Co.*, the only relevant allegation read: "[P]laintiff . . . has purchased and consumed Metabolife 356 which w[as] manufactured and distributed by the defendants named herein, without disclosure to her that these diet drugs were extremely dangerous to her health." 99 Cal. App. 4th 109, 112 n.3 (2002). Thus, "the underlying complaint in *Low* did not actually allege that the plaintiff suffered any bodily injury."[7] *Tempur-Sealy*, 158 F. Supp. 3d at 884. Similarly, in *Upper*

---

[7] Moreover, there is no indication in *Low* that the policy covered mental anguish/ injury resulting from physical injury—as is the case here—so the Court never considered whether such mental anguish/injury could trigger the duty to defend even though the plaintiff disclaimed recovery for "physical injuries."

*Deck Co., LLC v. Fed. Ins. Co.*, the underlying complaint involved a RICO suit for violation of gambling statutes without any allegations of bodily injury. 358 F.3d 608 (9th Cir. 2004). The insured "claimed that, although the lawsuit was styled as a RICO suit, it could have been construed or amended to assert damages for personal injury to children as a result of a gambling addition," but the Ninth Circuit found that "an insurer would need to be clairvoyant to read 'addiction' [and related bodily injury] into this underlying complaint." *Id.* at 615. Finally, in *Sony Comput. Entm't Am. Inc. v. Am. Home Assur. Co.*, "the consumer complaints of scratches and other damage to discs—which could potentially establish physical damage—were never incorporated into the third-party lawsuit." 532 F.3d 1007, 1020–21 (9th Cir. 2008). Thus, in each of these cases, "[t]o support a finding of potential liability, the plaintiffs would need to allege *new facts* of bodily injury." *Upper Deck*, 358 F.3d at 615 (emphasis in original).

Conversely here, the Underlying Actions include detailed allegations of bodily injury. Thus, like the complaint in *Tempur-Sealy* and unlike the complaints in *Low*, *Upper Deck*, and *Sony*, the factual alleges gave rise to a potential for liability under the Policy. As the *Tempur-Sealy* court explained, the putative class members' explicit allegation that they do not seek damages for "physical injury" *does not* negate the duty to defend. *Tempur-Sealy*, 158 F. Supp. 3d at 885. The duty to defend is eliminated only where "the third-party complaint d[oes] not allege the type of damages covered by the policy, *and* the class representatives explicitly disavowed any interest in the type of damages covered by the policy." *Id.* (emphasis added). In *Tempur-Sealy*, the underlying complaint *did* allege the type of damages covered by the Policy, making the claimants' disavowal of recovery for these damages immaterial. *Id.* Similarly here, the Underlying Actions *do* contain factual allegations of bodily injury, such that there is a potential for liability.

*Plantronics, Inc. v. Am. Home Assur. Co.*, No. 07-cv-06038-PSG, 2014 WL 2452577 (N.D. Cal. May 30, 2014) is also instructive on this point. The underlying

lawsuits in *Plantronics* alleged that the use of Bluetooth headsets caused noise induced hearing loss but lacked adequate warnings about such potential hearing loss. Notably, like here, the underlying lawsuits expressly disclaimed damages for bodily injury, and instead alleged that the class members sought "damages for economic injury and do not seek damages for any physical injury that may have been sustained by Class members." *Id*. at *1. The insurers denied coverage on this basis, and coverage litigation ensued. *Id.* The trial court ruled against the insurers and determined that they had a duty to defend, holding that the underlying actions described a risk for noise-induced hearing loss and thus, put the insurers on notice of "a *potential* for coverage under the terms of the policy." *Id*. at *4. (emphasis in the original). The *Plantronics* court noted that it "will not permit the insurers to duck coverage simply because the complainants sought the tactical advantage of bringing their claims through a class action." *Id.* at *4 n. 39. Again, *Plantronics* supports the existence of Great American's duty to defend in the present matter and its refusal to accept these obligations constitutes a breach of contract.

Finally, Great American has not satisfied its burden of showing that the Underlying Actions "can by no conceivable theory raise a single issue that could bring it within the policy coverage." *Pension Tr. Fund*, 307 F.3d at 949. Most notably, the Underlying Actions are putative class actions. Until the courts grant class certification, the named plaintiffs are the only plaintiffs with claims. If the courts deny class certification, the named plaintiffs have the option of proceeding with their own individual actions and—as evidenced by Ms. Slattery's letter to Great American—these plaintiffs each allege physical injury and mental anguish as a result of Athena's products. This is precisely why California courts have consistently held that the duty to defend hinges on the *facts* alleged and not the malleable legal theories of recovery. *Supra.*

In sum, Great American has not eliminated *all* potential for coverage under the Policy and has not shown that the Underlying Actions cannot be amended to

give rise to a liability that would be covered. Consequently, Great American has a duty to defend and is in breach of that duty.

**2. The Unfair Competition Endorsement is inapplicable and does not absolve Great American's duty to defend.**

Unable to escape the factual allegations of bodily injury in the Underlying Actions, Great American attempts to avoid its obligations by shoehorning a consumer class action complaint into an exclusion for unfair competition. Great American's arguments fail because (1) the Unfair Competition Endorsement is not conspicuous, plain and clear as required under California law; (2) properly construed, the Unfair Competition Endorsement does not apply here; and (3) Great American's interpretation of this Endorsement violates California Supreme Court precedent. In short, the Unfair Competition Endorsement does not eliminate all possibility of coverage and does not relieve Great American of its duty to defend.

a) <u>The Unfair Competition Endorsement is not conspicuous, plain and clear</u>**.**

Great American argues that it has no duty to defend because the Policy contains the following exclusion for suits alleging unfair competition:

**INFRINGEMENT OF INTELLECTUAL PROPERTY OR UNFAIR COMPETITION**

***

C. The following exclusion is added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I – COVERAGES, Coverage I – Bodily Injury and Property Damage Liability, 2. Exclusions**:

**Claim or Suit Alleging Infringement of Intellectual Property or Violation of Laws Concerning Unfair Competition or Similar Laws**

Any "bodily injury" or "property damage" alleged in any claim or

"suit" that also alleges any:

***

2. Violation of any statute, common law, or other laws or regulations described in **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I – COVERAGES, Coverage B – Personal and Advertising Injury, 2. Exclusions, Claim or Suit Alleging Violations of Laws Concerning Unfair Competition or Similar Laws**.

***

Notably, there are *no* descriptions of statutes, common law, or other laws or regulations involving unfair competition in the Commercial General Liability Coverage Form, Section I.B. for Personal and Advertising Injury. [Ex. A, Section I.B.2 Dkt. #9-1]. While unclear, it appears Section C of this Endorsement may be referring to the "statutes, common law or other laws or regulations described" in Section B of the Endorsement. However, Section B relates to coverage for "personal and advertising injury," and even then, there are *no* descriptions of statutes, common law or other laws or regulations involving unfair competition. Instead, it merely states that there is no coverage for "[a]ny 'personal and advertising injury' alleged in a claim or 'suit' that also alleges any actual, alleged, or threatened violation of any statutes, common law, or other laws or regulations concerning unfair competition, antitrust, restraint of trade, piracy, unfair trade practices, or any similar laws or regulations." [*Id.*]

Under California law, in order to be enforceable, exclusions to coverage must be "plain and clear" and "conspicuous." *Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1204–05 (2004). An exclusion that is "plain and clear" is "stated precisely and understandably, in words that are part of the working vocabulary of the average layperson," whereas a "conspicuous" exclusion is "placed and printed so that it will attach the reader's attention." *Id.* at 1204. Put simply, "[t]o be enforceable," an

exclusion "must be so drafted that a reasonable purchaser of insurance would have both noticed it and understood it." *Hervey v. Mercury Cas. Co.*, 185 Cal. App. 4th 954, 966 (2010) (internal citations omitted).

Contrary to these requirements, the Unfair Competition Endorsement is written in shorthand. It requires an insured to shift through the Policy and piece together its meaning. Even then, it is vague, ambiguous and confusing. On this basis alone, the exclusion is unenforceable and Great American's argument fails.

b) Properly construed, the Unfair Competition Endorsement has no application here.

Further, the meaning of "unfair competition" as used in the Policy is vague. The term itself is not defined, but listed in connection with "similar laws," such as antitrust, restraint of trade, piracy, and unfair trade practices. While Great American argues the term must be given broad construction to include consumer protection statutes, such as those alleged in the underlying class actions, California federal courts – including this Court – disagree.

In *James River Ins. Co. v. Rawlings Sporting Goods Co., Inc.*, the Central District of California interpreted a similar exclusion to apply only to allegations of unfair competition or trade practices directed at business competitors. No. CV 19-6658-GW-MAAX, 2021 WL 346418 (C.D. Cal. Jan. 25, 2021). The insured, Rawlings, was named in a class action complaint alleging that it misrepresented the weight of baseball bats that it sold. *Id.* at *1. Like here, the claimants asserted several consumer protection claims against Rawlings, including violation of California's (1) unfair competition law, Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) false advertising law, Cal. Bus. & Prof. Code § 17500 *et seq.*; and (2) consumer legal remedies act, Cal. Civ. Code § 1750 *et seq.* The insurer, James River, argued that Rawlings' alleged wrongdoing fell within an exclusion for "unfair trade practices" in the James River policy. *Id.* at *4. The court disagreed, noting that "the fact that California's consumer protection statutes refer to unfair trade practices does

not, by itself, determine the meaning of 'unfair trade practices' within the Policies." *Id.* "Besides 'unfair trade practices,' the other categories of excluded behavior are: 'anti-trust,' 'business competition,' and "tortious interference in another's business or contractual relationships.' *Id.* The court explained that "a word takes meaning from the company it keeps" and because "[t]he anti-trust, business competition, and tortious interference categories all refer to conduct by businesses targeted at its business competitors," unfair trade practices must also be limited to conduct targeted at business competitors. *Id.*

Similarly here, the fact that California's consumer protection statutes refer to unfair competition does not, by itself, determine the meaning of unfair competition within the Policy. Like *James River*, such claims refer to conduct targeted at *business competitors* – not *consumers* of the insured's product. In fact, this interpretation is consistent with extrinsic evidence showing Athena's and Great American's understanding of the type of claims the Unfair Competition Exclusion was meant to exclude. Athena is prepared to present evidence to this effect or amend its complaint to add such allegations if the Court finds it necessary. Interestingly and tellingly, this interpretation is also consistent with the cases Great American cites in its Motion, as each cited case involves an underlying claim brought by a third-party business competitor. *See Great Am. E & S Ins. Co. v. Theos Med. Sys.*, 357 F.Supp.3d 953, 959 (N.D. Cal. 2019) (Malem Medical was a business competitor of the insured); *Tria Beauty, Inc. v. Nat'l Fire Ins. Co.*, 2013 WL 2181649, *3 (N.D. Cal. May 20, 2013) (Radiancy was a business competitor of the insured); *EP&A Envirotac, Inc. v. Great Am. E&S Ins. Co.*, 2021 WL 3779227, *2 (C.D. Cal. July 27, 2021) (Soilworks was a business competitor of the insured). It also explains why Great American devoted nearly 5 pages of its Motion discussing claims involving "personal and advertising injury" without citing a single case that applied the subject Endorsement to *consumer* class action claims.

Most critically, however, is that Great American, as the drafter of the Policy,

could have included "violation of consumer protection statutes" as part of the list of excluded "statutes or regulations," but chose not to do so. *Assoc. Indus. Inc. Co. v. Mt. Hawley Ins. Co.*, 536 F. Supp. 3d 676, 682 (S.D. Cal. 2021) (explaining that exclusions specifically set out in the policy will be respected, but additional exclusions will not be read in). Further, at this juncture, on a motion to dismiss, this Court is without the benefit of extrinsic evidence, such as communications between the parties during the negotiation of the subject Endorsement, to determine the true mutual intent of the parties as it relates to the meaning of this term and the type of claims it was meant to exclude. *Id.* ("interpretation of an insurance policy. . . must give effect to the mutual intention of the parties at the time the contract is formed").

c) <u>Great American's Interpretation of the Unfair Competition Endorsement Conflicts with California Supreme Court Authority.</u>

Great American's interpretation of the Unfair Competition Endorsement further violates California Supreme Court authority on an insurer's duty to defend. Specifically, Great American argues that even if there is a potential for coverage of the bodily injury claims, the mere fact that the Underlying claimants also allege unrelated "unfair competition" claims negates its duty to defend. This argument contradicts California law.

As the California Supreme Court explained in *Buss*, "the insurer [has a] duty to defend the 'mixed' action prophylactically . . . To defend immediately, the insured must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not." 16 Cal.4th at 48–9 (internal citations omitted). Notably, this duty does not arise from the language of an insurance policy but is instead imposed by California law as a matter of public policy. *Id.* Where, as here, an insurer attempts to circumvent this principle by seeking to shirk its duty to defend mixed actions, such effort contravenes fundamental public policy and is unenforceable. *Id.*; *Saarman Constr., Ltd v. Ironshore Specialty Ins. Co.*, 230 F. Supp. 3d 1068, 1080 (N.D. Cal. 2017)

("Ironshore cannot contract around California law that requires insurers to defend the entire action if there is any potentially covered claim."). Accordingly, the Unfair Competition Endorsement is unenforceable, as interpreted, and cannot be used to eliminate Great American's duty to defend.

**B. The Court Should Deny the Motion as to Breach of the Implied Covenant of Good Faith and Fair Dealing.**

In order to state a claim for breach of the implied covenant of good faith and fair dealing by an insurer, plaintiff must allege that the insurer withheld payment of an insured's claim unreasonably and in bad faith. *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001). Here, Athena alleged that Great American unreasonably, and without proper cause, withheld benefits due under the Policy. [Complaint ¶¶ 15-19]. In particular, Athena has alleged:

> "Great American has tortiously breached that implied covenant of good faith and fair dealing, as hereinabove alleged, in that it, among other things:
>
> (a) Wrongfully, intentionally and in bad faith refused to honor obligations to defend Athena in the Actions;
>
> (b) Wrongfully, intentionally and in bad faith failed and refused to pay defense costs and expenses owing for the entirety of the Actions;
>
> (c) Fraudulently misrepresented and falsely promised that it would defend Athena under the Policy for claims and suits seeking damages covered by the Policy when it had no intention of doing so;
>
> (d) Wrongfully, intentionally and in bad faith failed and refused to respond to communications from Athena in a timely fashion and engaged in improper delays;
>
> (e) Wrongfully, intentionally and in bad faith forced Athena to incur the expense of filing the within action to recover benefits owed

under the Policy;

(f) Wrongfully, intentionally and in bad faith damaged Athena's business by failing and refusing to pay fees and costs incurred in the Actions and forcing Athena to pay substantial sums for those fees and costs; and

(g) Wrongfully, intentionally and in bad faith placed its own interests above those of Athena."

Great American argues that Athena's claim for breach of the implied covenant must be dismissed because (1) Great American properly disclaimed coverage, (2) Athena's complaint does not allege sufficient facts, and (3) the "genuine dispute doctrine" negates any tortious conduct. These arguments fail.

First, as shown above and incorporated by reference herein, Great American's refusal to honor its coverage obligations to Athena violates California law.

Second, Athena's allegations of breach of the implied covenant of good faith and fair dealing satisfy the Federal Rules of Civil Procedure, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In accordance with these Rules and as quoted above, Athena has provided a short and plain statement of its claim, including at least seven specific reasons why Great American has breached the implied covenant.

Third, arguments regarding dismissal under the "genuine dispute doctrine" are inappropriate for the pleading stage. As federal courts in California have held, the question of "reasonableness" and "bad faith" is one of fact and cannot be decided at the pleading stage. *Nordby Constr. Inc. v. Am. Safety Indem. Co.*, 2015 WL 1263389, at *9 (N.D. Cal. Mar. 19, 2015). "To the extent [an insurer] contends that it acted reasonably under the 'genuine dispute doctrine,'" this defense "is a factual issue that cannot be adjudicated at the pleading stage." *Id.* Whether Great American acted reasonably under the genuine dispute doctrine requires a factual finding that Great American fully investigated all possible bases of plaintiff's

claims—including all extrinsic evidence—prior to denying coverage. *See id.* This Court simply cannot make such a determination at the pleadings stage.

**C. The Court Should Deny the Motion as to Athena's UCL Claim.**

Next, Great American seeks dismissal of Athena's Third Claim for Unfair Competition under Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL") on the ground that it doesn't state sufficient facts. The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]" and allows suits "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." *Id.* § 17204. Because the UCL is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).

Here, Athena plainly alleges that Great American violated the UCL because, among other things, "Great American's bad faith refusal to comply with its duty to defend the Actions was unlawful and constituted a tortious breach of the subject Policy" and its "misrepresentations to Athena regarding Athena's rights under the Policy and applicable law violation, *inter alia*, the implied covenant of good faith and fair dealing in the subject Policy." [Complaint ¶ 21]. Notably, the California Supreme Court has determined that "*bad faith insurance practices may qualify as any of the three statutory forms of unfair competition*." *Zhang v. Sup. Ct.*, 57 Cal.4th 364, 380 (2013) (noting that bad faith insurance practices "are *unlawful;* the insurer's obligation to act fairly and in good faith to meet its contractual responsibilities is imposed by the common law, as well as by statute…. They are *unfair* to the insured; unfairness lies at the heart of a bad faith cause of action…. They may also qualify as *fraudulent* business practices.") (emphasis added). Thus, the Supreme Court in *Zhang* directly rejected Great American's argument that a UCL claim cannot be based on bad faith insurance practices.

Here, Athena has alleged conduct by Great American that violates, among

other things, the "unlawfulness" prong of the UCL. Specifically, the Insureds allege that Great American's bad faith refusal to comply with its duty to defend the Actions was unlawful and constituted a tortious breach of the Great American Policy. Athena also alleges injury in fact; namely, that it has lost money as a result of Great American's unfair competition. Thus, consistent with Rule 8(a) and California law, Athena has sufficiently pled a claim under the UCL.

**D. The Court Should Deny the Motion as to Declaratory Relief.**

Great American's challenge with respect to Athena's Fourth Claim for declaratory relief is based entirely on its contention that it does not owe Athena a defense or indemnity for the Underlying Actions. For reasons set forth above, Great American has breached its duty to defend and as demonstrated by the Parties' briefing, there is a present controversy for which declaratory relief is proper.

**E. The Court Should Deny the Motion as to Athena's Claim for Recovery of Punitive Damages.**

Lastly, Great American challenges the sufficiency of Athena's pleading as it relates to punitive damages. In doing so, Great American points to several California decisions that subject punitive damage prayers to a heightened pleading standard and require a plaintiff to allege specific evidentiary facts to support allegations of malice, oppression or fraudulent intent. Great American then argues that Athena's complaint does not provide the factual specificity required by California law and asks this Court to strike the prayer for punitive damages. Great American misinterprets the standard.

It is well-established that federal courts sitting in diversity must apply state substantive law and federal procedural rules. *Comput. Economics, Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 986 (S.D. Cal. 1999). Where state law directly conflicts with applicable provisions of the Federal Rules of Civil Procedure, federal courts must apply the Federal Rules – not state law. *Id.*

Although Section 3294 provides the governing substantive law for punitive

damages, California's heightened pleading standard irreconcilably conflicts with Rules 8 and 9 of the Federal Rules of Civil Procedure. *Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016, 1018–19 (S.D. Cal. 2000). Rule 8(a) requires only "a short and plain statement of the claim showing that [the plaintiff] is entitled to relief." Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally." *Id.* Together, Rules 8 and 9 preclude district courts from applying a heightened pleading for allegations of malice or fraudulent intent. *Id.* at 1019. Indeed, several federal district courts in California have upheld general allegations that a defendant acted intentionally, with "malice" or with "conscience disregard" as adequate to plead the mental state required under Section 3294. *See e.g.*, *Clark*, 106 F. Supp. at 1020; *Jackson v. East Bay Hosp.*, 980 F.Supp. 1341, 1353–54 (N.D. Cal. 1997).

Here, Athena's complaint complies with Rules 8 and 9 because it clearly requests punitive damages and makes assertions of intentional and malicious conduct. Whether Great American's conduct rises to the sort of morally culpable conduct that justifies punitive damages is an issue that must be decided by the trier of fact and cannot be adjudicated on the pleadings.

## IV. CONCLUSION

For the foregoing reasons, Athena respectfully requests that this Court deny Great American's Motion in its entirety, or, in the alternative, if the Court is inclined to grant the Motion, it give Athena leave to amend its complaint.

Dated October 24, 2024 **BARNES & THORNBURG LLP**

By: /s/ David P. Schack
David P. Schack
Alice Kyureghian
Attorneys for Plaintiff ATHENA COSMETICS, INC.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.1**

The undersigned, counsel of record for Athena Cosmetics, Inc., certifies that this brief does not exceed 25 pages and contains Times New Roman font of 14 points, which complies with the Length and Format of Motion Papers set forth by this Court's Standing Order, dated March 15, 2024.

/s/ David P. Schack
David P. Schack