# EXHIBIT 2

BARNES & THORNBURG LLP

2029 Century Park East
Suite 300
Los Angeles, CA 90067
310-284-3880
310-284-3894 (Fax)

www.btlaw.com

**David P. Schack**
310-284-3873
david.schack@btlaw.com

March 20, 2024

***Via Email***

Ms. Patricia Block
Great American Insurance E&S Ins. Co.
301 E. Fourth St.
Cincinnati, OH 45202

| | | |
|---|---|---|
| Re: | Insurer: | Great American Insurance E&S Ins. Co. ("GAIC") |
| | Insured: | Athena Cosmetics, Inc., et al. ("Athena") |
| | Policy No. | PL2258463-05, et al. (collectively the "Policy") |
| | Suits: | (1) Markoff v. Athena Cosmetics, Inc., United States District Court for the Northern of Illinois, Case No. 23-cv-16401 ("Markoff Action"); (2) Slattery v. Athena Cosmetics, Inc., United States District Court for the Central District of California, Case No. 2:23-cv-10078 ("Slattery Action") (3) Rush v. Athena Cosmetics, Inc., United States District Court for the Eastern District of New York, Case No. 23-cv-8799 ("Rush Action") (the Markoff Action, Slattery Action and Rush Action are collectively referred to as the "Actions") |

Dear Ms. Block:

I am insurance coverage counsel for Athena. Your December 26, 2023 letter to Mona L. Rose of Athena, in which GAIC denies coverage for the Actions, has been forwarded to me, and I respond here. GAIC's denial of coverage is erroneous and wrongful as discussed herein. Athena demands that GAIC accept defense of the Actions immediately.

## I. GAIC OWES A BROAD DUTY TO DEFEND UNDER THE POLICY

For almost sixty years, beginning with the seminal decision in *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263 (1966), the California appellate courts have emphasized the expansive breadth of an insurer's duty to defend and the rule that an insurer must defend the insured if the allegations against the insured create any possibility of coverage. In *Gray v. Zurich*, the California Supreme Court held that the duty to defend exists for any case even if the allegations are groundless, false or fraudulent. *Id*. at 275. The Court further held that an insurer can only escape its defense duty "if the third party complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage*." *Id.* at 275, n. 15 (emphasis added).

Since *Gray*, subsequent decisions have confirmed the breadth of the duty to defend. In *Horace Mann Inc. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081 (1993), the Supreme Court reiterated these rules:

> It is by now a familiar principle that a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. (*Gray v. Zurich*

> *Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168] (Gray)). As we said in *Gray*, "the carrier must defend a suit which potentially seeks damages within the coverage of the policy." (*Id*. at p. 275, italics in original.) Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. (*Id*. at p. 278; *Signal Cos. v. Harbor Ins. Co.* (1980) 27 Cal.3d 359, 367 [165 Cal.Rptr. 799, 612 P.2d 889,10 A.L.R. 4th 75]; *Savlin v. California Ins. Guarantee Assn.* (1986) 179 Cal.App.3d 256, 263 [224 Cal. Rptr. 493].)

In fact, the *bare possibility of coverage* is sufficient to trigger the duty of defense. *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 295 (1993) ("[A] bare 'potential' or 'possibility' of coverage [is] the trigger of a defense duty. […] California courts have used the terms 'possibility' and 'potential' interchangeably, and we see no difference between them.") It need not be shown that coverage is likely or even "reasonably" likely so long as the bare possibility of coverage exists. *Id*. at 299-300.

Any doubt as to whether the facts give rise to a duty to defend will be resolved in the insured's favor. *Horace Mann Inc. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081 (1993); *see also State Farm Mut. Auto Ins. Co. v. Longden*, 197 Cal.App.3d 226, 233 (1987) ("where there is doubt as to whether the duty to defend exists, the doubt should be resolved in favor of the insured and against the insurer"); *Miller v. Elite Ins. Co.*, 100 Cal.App.3d 739, 753 (1980) ("[a]n insurer must defend a suit which potentially seeks damages within the coverage of the policy. . . if there is a doubt as to whether the insurer must defend, the doubt should be resolved in the insured's favor"); *Montrose Chemical Corp.*, *supra*, 6 Cal.4th at 295-96 ("The insured's desire to secure the right to call on the insurer's resources for the defense of third party claims is, in all likelihood, typically as significant a motive for the purchase of insurance as is the wish to obtain indemnity for possible liability. As a consequence, California courts have been consistently solicitous of the insured's expectations on this score").

Indeed, the Supreme Court in *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 295 (1993) held that an insurer cannot escape its defense duty unless it can demonstrate on a *summary judgment standard* that there is no possibility of coverage:

> [The insurer] misconceives what is at issue in an action seeking declaratory relief on the issue of the duty to defend. To prevail, the insured must prove the existence of the potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales. Any seeming disparity in the respective burdens merely reflects the substantive law.

*Id*. at 300.

The breadth of the duty to defend was illustrated in *Buss v. Superior Court*, 16 Cal.4th 35 (1997). In *Buss*, H&H Sports, Inc. ("H&H") entered into a contract with Jerry Buss, owner of the Lakers and the Forum, to provide certain advertising and other services. Buss terminated the contract, and H&H sued Buss filing an amended complaint alleging 27 causes of action

including a single cause of action for defamation. As to defamation, the amended complaint simply alleged that Buss had made false statements to third parties about H&H's alleged breach of its contract. Buss tendered defense to its liability insurer, Transamerica. Transamerica accepted defense, but insisted that it need not pay for the full defense but only the fees incurred in connection with defense of the defamation claim. In analyzing the issues, the Court of Appeal began by reaffirming the breadth of the duty to defend. *Id*. at 46 ("[T]he insurer's duty to defend runs to claims that are merely potentially covered . . . ."). The Court went on to hold that in a "mixed action"—i.e., where some claims are potentially covered and some are not -- the insurer must defend the entire action from the outset:

> [T]he [insurer has a] duty to defend the entire 'mixed' action prophylactically, as an obligation imposed by law in support of the policy. To defend meaningfully, the insurer must defend immediately. (*Montrose Chemical Corp. v. Superior Court, supra*, 6 Cal.4th at p. 295.) To defend immediately, the insurer must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not. To do so would be time consuming. It might also be futile: The 'plasticity of modern pleading' (*Gray v. Zurich Insurance Co., supra,* 65 Cal.2d at p. 276) allows the transformation of claims that are at least potentially covered into claims that are not, and vice versa. The fact remains: As to the claims that are at least potentially covered, the insurer gives, and the insured gets, just what they bargained for, namely the mounting and funding of a defense.

*Id*. at 48.

Accordingly, GAIC owes a broad duty to defend under the Policy.

## II. THE ALLEGATIONS IN THE ACTIONS TRIGGER GAIC'S DUTY TO DEFEND

At Section I,A,1,a, the Policy provides:

"We will pay those sums that the Insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages."

The term "bodily injury," as modified in the Specialty Plus Endorsement attached to the Policy, is defined as follows:

"'Bodily injury' means injury, sickness, disease or 'incidental medical malpractice' sustained by a person, including death of a person***. 'Bodily injury' also means mental anguish, mental injury or shock if directly resulting from physical injury, sickness, or disease to that person.***" (Emphasis added.)

The Actions clearly allege "bodily injury." For example, in the Class Action Complaint in the Markoff Action, the plaintiff alleges, among other things:

- Paragraph 4: "[he Athena products contain ingredients that] cause serious adverse effects to the eye and the structure around the eye, including but not limited to blepharitis, Meibomian Gland Dysfunction, chronic dry eye, redness, discoloration, pain or irritation, and other serious side effects."

- Paragraph 6: "Moreover, since it started selling its PGA-containing Enhancements Serums over-the-counter, Athena has received numerous consumer complaints and reports that its products have caused consumers to suffer serious eye conditions and injuries.

- Paragraph 17: "Plaintiff's use of RevitaLash caused pain and eye inflammation."

- Paragraph 47a: "[I] am experiencing a plethora of issues with my Meibomian gland as a result of the topical prostaglandin analogs in Revitalash. . . . Revitalash has aged me several years in the span of only a few months. . . ."

- Paragraph 47e: "By day 5 [of using RevitaLash], I was at Urgent Care asking for steroid drops and antibiotic. My eyes had become so red and miserable. . . . [I]'ve lost lashes . . . .Perhaps when all of the craziness stops I'll go back to Neulash in the hopes of growing the lashes I lost with Revitalash."

- Paragraph 141: "As a direct and proximate result of Defendant's negligent conduct, Plaintiff and each other class member suffered injury and are entitled to damages in an amount to be proven at trial."

The complaints in the other Actions contain similar allegations and largely copy one another. Clearly, the complaints plead a claim for "bodily injury" as defined in the Policy.

In your eleven-page single spaced denial letter dated December 26, 2023, you include only one sentence by which you seek to justify GAIC's denial of coverage for the bodily injury claim under the Policy: "The Claim includes express allegations that the Plaintiff and putative class is [sic] not seeking to recover damages for physical injury." This sentence does not support the denial of coverage.

You apparently refer to allegations in the complaints such as paragraph 140 in the Class Action Complaint in the Markoff Action which states: "Although Plaintiff does not seek to recover for physical injuries, Defendant's Enhancement Serums carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed, sub-cellular or structural impact on Plaintiff's and each other class member's face and eye area." Plaintiff's statement that she and the class are not seeking to recover for "physical injury" does not end the inquiry of whether the complaints allege claims with the possibility of coverage. As can be seen from the definition in the Policy, quoted above, "bodily injury" includes at least two components. First, "bodily injury" includes claims for "injury, sickness, disease or 'incidental medical malpractice' sustained by a person, including death of a person." However, second, "bodily injury" also includes "**mental anguish**, mental injury or shock **if directly resulting from physical injury,** sickness, or disease to that person." (Emphasis added.) While the Plaintiff in the Markoff Action states that she (and the class) is not seeking to recover for physical injury, she never disavows all claims for "mental anguish, mental injury or shock" resulting from physical injury. Indeed, the allegations in the Class Action Complaint in the Markoff Action and the other Action allege facts supporting and creating at least the potential for covered claims for mental anguish such as Athena's products causing class members to be "miserable," to lose their eye lashes and to age them "several years in the span of only a few months."

Additionally, I enclose here a June 15, 2023 letter from counsel for Dorian Slattery alleging claims against Athena. Slattery is the plaintiff in the Slattery Action and is a class member in

the Markoff and Rush Actions. In the June 15, 2023 letter, Slattery alleges a variety of physical eye problems that she attributes to Athena's products, including, without limitation, (i) her eyes became swollen and red, (ii) she developed a chalazion on her left upper eye, (iii) her eyes were blurry, (iv) she was diagnosed with blepharitis in both eyes, and (v) she developed chronic dry eyes. In the June 15, 2023 letter, Slattery also asserts: "The sudden onset of eye problems caused her anxiety, depression, and feeling of isolation." Thus, Slattery has expressly alleged the exact "mental anguish" resulting from "physical injury" to her eyes that falls within the definition of "bodily injury" as defined by the Policy.

As you should know, under California law, GAIC must consider "extrinsic" facts it learns from any source in evaluating the duty to defend. *Foster-Gardner, Inc. v. National Union Fire Ins. Co. of Pittsburg, Pa.*, 18 Cal.4th 857,880 (1998) ("It is a settled rule that the insurer must look to the facts of the complaint and extrinsic evidence, if available, to determine whether there is a potential for coverage under the policy and the corresponding duty to defend.") (internal quotes omitted).[1] Accordingly, GAIC was required to consider the June 15, 2023 letter from Slattery as well as the complaints in the Actions when evaluating the duty to defend.[2]

Based on the foregoing, the complaints in the Actions and the extrinsic evidence clearly trigger GAIC's duty to defend.[3] The possibility of coverage exists based on the allegations of, and

---

[1] I understand that Athena has previously provided the June 15, 2023 letter to GAIC.

[2] Additionally, other consumers, who are members of the putative class in the Actions, have asserted that they suffered mental anguish resulting from physical injury allegedly caused by the use of Athena products. For example, the following is post from a consumer on the Amazon website where the consumer alleges mental anguish:




[3] Indeed, California courts have repeatedly recognized that mere allegations of bodily injury in consumer class action lawsuits—without more—suffice to trigger an insurer's duty to defend. In *Hartford Fire Insurance Company v. Tempur-Sealy International, Inc.,* 158 F. Supp. 3d 877 (N.D. Cal. 2016), for example, the underlying class action lawsuit alleged that defendants failed to inform consumers that their mattresses emitted a chemical odor caused by volatile organic compound. The insurers took the position that they had no duty to defend because the underlying complaint did not allege specific claims for bodily injury or property damage. Rejecting this argument, the court held that the insurers had a duty to defend. *Id*. at 883. Although no specific claims for bodily injury or property damage were asserted, allegations detailing the factual basis for a *potential* covered claim in the complaint were enough to trigger the duty to defend. As the court stated, "[o]n their face… the 'facts alleged' in the Underlying Complaint clearly demonstrate 'the potential for liability under the policy's coverage.'" *Id*. The court's holding in *Tempur-Sealy* applies equally here.

claims for, mental anguish by the plaintiffs, and/or the putative class members, in the Actions. Plaintiffs' statements in the complaint that they do not seek relief for "physical injuries" does not eliminate the possibility of plaintiffs' recovery for "mental anguish" resulting from physical injuries which relief has not been disavowed by plaintiffs and which falls within the definition of bodily injury. Moreover, for example, the Class Action Complaint in Markoff Action, at page 39, seeks "all damages . . . associated with the conduct for all causes of action in an amount to be proven at trial, ***including but not limited to*** the full amounts paid or reimbursed for Enhancement Serums." (Emphasis added.) This prayer does not limit the requested relief to damages equal to the amounts paid for Athena's products and is broad enough to include compensatory damages for mental anguish in connection with, for example, the negligence cause of action.

In order to avoid its duty to defend, GAIC is required to negate ***any possibility*** of coverage as to all allegations in the complaints in the Actions as well as extrinsic evidence known to it. *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 295 (1993) GAIC has not done so and cannot do so. Accordingly, GAIC must immediately accept its duty to defend the Actions. *See also State Farm Mut. Auto Ins. Co. v. Longden*, 197 Cal.App.3d 226, 233 (1987) ("where there is doubt as to whether the duty to defend exists, the doubt should be resolved in favor of the insured and against the insurer"); *Miller v. Elite Ins. Co.*, 100 Cal.App.3d 739, 753 (1980) ("[a]n insurer must defend a suit which potentially seeks damages within the coverage of the policy. . . if there is a doubt as to whether the insurer must defend, the doubt should be resolved in the insured's favor"). *Montrose Chemical Corp.*, *supra*, 6 Cal. 4th at 295-96 ("The insured's desire to secure the right to call on the insurer's resources for the defense of third party claims is, in all likelihood, typically as significant a motive for the purchase of insurance as is the wish to obtain indemnity for possible liability. As a consequence, California courts have been consistently solicitous of the insured's expectations on this score").

## III. GAIC'S DENIAL OF COVERAGE CONSTITUTES BAD FAITH.

Under California law, GAIC has an obligation of good faith and fair dealing to its insureds. *Miller v. Elite Ins. Co*., 100 Cal.App.3d 739, 756 (1980) ("Every insurance contract contains an implied covenant of good faith and fair dealing . . . Good faith and fair dealing means that each party is prevented from interfering with the other's right to benefit from the contract"); *Austero v. National Insurance Company*, 84 Cal.App.3d 1, 15 (1978) ("[I]t is now firmly established that every policy of insurance imports an implied covenant of good faith and fair dealing which enjoins upon each party to the agreement a duty that neither shall do anything which impairs the right of the other to receive the benefit of the agreement" . . . an insured bargains for "prompt payment, not a right of action against the insurer"); *Silberg v. California Ins. Co.*, 11 Cal.3d 452 (1974); *Gruenberg v.*

---

Similarly, in *Plantronics, Inc. v. American Home Assurance Company*, 2014 WL 2452577 (N.D. Cal. 2014), the underlying lawsuits alleged that the use of Bluetooth headsets caused noise induced hearing loss but lacked adequate warnings about such potential hearing loss. Notably, the underlying lawsuits expressly disclaimed damages for bodily injury, and instead alleged that the class members sought "damages for economic injury and do not seek damages for any physical injury that may have been sustained by Class members." *Id*. at *1. The insurers denied coverage on this basis, and coverage litigation ensued. The trial court ruled against the insurers and determined that they had a duty to defend, holding that because the underlying actions described the noise-induced hearing loss risk engendered through extensive use, the insurers were on notice of "a *potential* for coverage under the terms of the policy" and thus duty- bound to defend their insured. *Id*. at 4. (emphasis in the original). Again, *Plantronics* supports the existence of GAIC's duty to defend in the present matter.

*Aetna Ins. Co*., 9 Cal.3d 566 (1973). *See also* Cal. Ins. Code § 790.03(h). To date, GAIC has engaged in bad faith and has tortiously breached the implied covenant of good faith and fair dealing by, inter alia, its refusal to defend Athena. GAIC must immediately accept its duty to defend in connection with the Actions. If GAIC fails to do so, Athena will take all available actions to recover from GAIC the damage that it has caused, including, without limitation, compensatory, consequential and punitive damages.

Of course, nothing in this letter is, or shall be deemed to be, a waiver of any factual or legal position, or of any rights, of the insureds, all of which are expressly hereby reserved.

Sincerely,

David P. Schack

Encl.

LOU | LAW
YOUR LAW ADVOCATE

June 15, 2023

**VIA EMAIL**
**TO:** Kathy Chard
Great American E&S Insurance Company
301 E. Fourth St.
Cincinnati, OH 45202
Email: kchard@gaig.com

**RE:** Claimant: Doriann Slattery
Your Insured: Athena Cosmetics, Inc.
Claim No.: A00525610

**NOTICE OF CLAIM**

Dear Ms. Chard:

I have the pleasure of representing Doriann Slattery, who sustained injury to her eyes after using RevitaLash® Advanced Eyelash Conditioner. Please allow this letter to serve as notice that Ms. Slattery intends to pursue legal action against Athena Cosmetics, Inc., the manufacturer of the product for her injuries. The basis of her claims are set out herein.

***The Injury***

Doriann Slattery saw advertisements for RevitaLash® Advanced Eyelash Conditioner, which promised to improve the look of her eyelashes by making them grow longer and darker. She went on the product's website to review information about the lash serum. The website represented the lash serum as a "conditioning serum." The information on the website assured her that the product is safe and without side effects. The manufacturer did not provide any warnings that the product may cause serious and long-lasting complications and did not disclose that the lash serum contains a synthetic prostaglandin, the active ingredient and a potent drug. The representations on the product's website made Ms. Slattery believe that the lash serum was a harmless lash "conditioner." **The manufacturer even went as far as to affirmatively state that the lash serum does not contain any "drug" ingredients.**

– Does RevitaLash® Advanced Eyelash Conditioner contain a "drug" ingredient?

No. All of the ingredients in RevitaLash® Advanced Eyelash Conditioner are cosmetic ingredients that have been included to serve a cosmetic purpose.

2180 N. Park Avenue, Suite 208, Winter Park, FL 32789
Ph. 407-622-1885 Fax. 407-536-5041
Louiza@mylawadvocate.com
www.MyLawAdvocate.com