Linda Bondi Morrison, Esq. (SBN 210264)
lmorrison@tresslerllp.com
Amy L. Metzgar, Esq. (SBN 349684)
ametzgar@tresslerllp.com
TRESSLER LLP
4 Park Plaza, Suite 1200
Irvine, California 92614
Telephone: (949) 336-1200

Attorneys for Defendant Great American E&S Insurance Company erroneously sued as Great American Insurance Company

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

ATHENA COSMETICS, INC., a corporation;

Plaintiff,

v.

GREAT AMERICAN INSURANCE COMPANY, a corporation; and DOES 1 through 15, inclusive,

Defendants.

Case No. 2:24-cv-08010-AH-AGR
Assigned to: Hon. Anne Hwang

**JOINT BRIEF RE DEFENDANT GREAT AMERICAN E&S INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Date: November 19, 2025
Time: 1:30 p.m.
Courtroom: 9C

49532043.2

**GREAT AMERICAN E&S INSURANCE COMPANY'S NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

Defendant Great American E&S Insurance Company, erroneously sued as Great American Insurance Company ("Great American"), hereby moves the Court for an order granting its Motion for Summary Judgment ("Motion") to dismiss the Complaint for Breach of Contract, Tortious Breach of Contract, Unfair Competition, and Declaratory Relief ("Complaint") of Plaintiff Athena Cosmetics, Inc. ("Athena"), in its entirety and with prejudice, under Rule 56(a) of the Federal Rules of Civil Procedure ("FRCP").

As an initial matter, Great American respectfully requests that this Court suspend the requirements of Judge Anne Hwang's Standing Order dated September 3, 2025 to allow Great American to file this Motion and its Reply Brief in accordance with Judge Andre Birotte Jr.'s Schedule of Pretrial and Trial Dates filed on December 2, 2024, as amended by Judge Anne Hwang by Order dated January 15, 2025; and Judge Birotte's Standing Order dated March 15, 2024. Great American submits that good cause and excusable neglect warrant relief from the current Standing Order such that this Court should consider Great American's Motion on the merits. The Court's Scheduling Order and Judge Birotte's Standing Order were properly docketed at the outset of the case, and all deadlines were calendared in accordance with those orders. However, after the case was transferred to Judge Hwang months after its initial assignment to Judge Birotte, counsel for Great American inadvertently omitted to update their internal docketing system to reflect Judge Hwang's modified summary judgment procedures, as set forth in her Standing Order. In this regard, under Judge Hwang's Standing Order, moving and opposition briefs must be filed concurrently. However, as articulated by this Court in *Tisdale v. Apria Healthcare LLC*, No. 2:24-cv-09620-AH (PYCx), 2025 WL 1674419 (C.D. Cal. May 22, 2025), Great American understands Judge Birotte's

initial Scheduling Order (as modified), including its requirement that the opposing party has two weeks in which to file its opposition to a summary judgment motion, also controls here, thereby effectively moving up Great American's deadline to move for summary judgment by two additional weeks. The inadvertent failure to re-calibrate internal deadlines to account for this procedural change resulted in Great American's present request.

This error was neither willful nor strategic. Fact discovery closed on September 26, 2025, and Athena continued producing documents responsive to Great American's discovery requests as late as September 23, 2025. Great American's Motion relies in part on Athena's document production. Upon discovering the docketing error on October 2, Great American immediately initiated a meet-and-confer with Athena, which occurred on October 3. Athena declined to stipulate to Great American filing this Motion or an alternative briefing schedule, which would have allowed Great American to approach this Court, on the grounds that it was impermissible. Great American acted promptly upon discovering the issue and has, at all times, proceeded in good faith, including filing this Motion within the time frame set forth in the Scheduling Order and in accordance with the original Standing Order.

Under FRCP Rule 60(b)(1), courts may grant relief from procedural orders based on "mistake, inadvertence, surprise, or excusable neglect." The Ninth Circuit has repeatedly held that calendaring and docketing errors constitute excusable neglect when, as here, the delay is minimal, promptly corrected, and causes no prejudice to the opposing party. *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261–62 (9th Cir. 2010); *Pincay v. Andrews*, 389 F.3d 853, 859 (9th Cir. 2004). This Court has likewise recognized in *Tisdale* that a standing or scheduling order may be set aside where non-compliance results from a bona fide calendaring or docketing error, so long as the moving party acts in good faith and without undue delay. *See Tisdale* at *7.

As considered by this Court in *Tisdale*, each of the factors which govern excusable neglect determinations, as articulated in *Pioneer Investment Services Co. v. Brunswick Associates*, 507 U.S. 380, 395 (1993), weigh in favor of granting relief here. Specifically, "in determining whether circumstances constitute excusable neglect, courts consider: (1) 'the danger of prejudice to the [non-moving party]'; (2) 'the length of the delay and its potential impact on judicial proceedings'; (3) 'the reason for the delay, including whether it was within the reasonable control of the movant'; and (4) 'whether the movant acted in good faith.'" *Tisdale* at *2, *citing Pioneer* at 395. As applicable here, Athena will suffer no prejudice in that the requested relief from Judge Hwang's Standing Order will not affect any substantive rights or trial date, the delay is brief and has no material effect on the case schedule, the error was a good-faith docketing oversight following judicial reassignment, and Great American has acted promptly upon discovery of this error and sought to resolve the issue cooperatively.

By contrast, denying relief would substantially prejudice Great American, whose motion would otherwise be barred by a technical, non-prejudicial error. As articulated by the Ninth Circuit, "[p]rocedure is a means to an end, not an end in itself," and the rules should be construed to "secure the just, speedy, and inexpensive determination of every action." *Ahanchian*, 624 F.3d at 1255 (quoting FRCP Rule 1). Consistent with that principle, and the equitable discretion recognized in *Irvine Unified Sch. Dist. v. K.G.*, 853 F.3d 1087, 1095 (9th Cir. 2017), good cause and excusable neglect exist here.

Accordingly, Great American respectfully requests that the Court find excusable neglect and permit Great American's Motion to proceed on the merits before this Court, and that this Court allow Great American to file its Reply Brief one week after Athena's Opposition is filed. The filing of the Reply Brief would occur on November 5, 2025, two weeks before the scheduled hearing date of November 19, 2025. Additionally, immediately after the filing of this Motion, Great

American will provide Word versions of its Motion and appendices to Athena's counsel so that their opposition may be prepared as a joint brief and joint appendices as required by Judge Hwang's Standing Order.

As set forth above, this Motion was made following the telephone conference of counsel pursuant to L.R. 7-3, which took place on October 3, 2025, in which Great American's counsel discussed the grounds for this Motion. Meet and confer efforts were unsuccessful to resolve this dispute.

This Motion is made on the grounds that there is no dispute over any material issues of fact and Great American is entitled to judgment as a matter of law. Great American's policy provides coverage only for "those sums that the Insured becomes legally obligated to pay as damages *because of* 'bodily injury'…." (emphasis added). The underlying tort claims against Athena do not satisfy this standard. While the tort lawsuits allege that Athena's products can pose health risks, those allegations support the claimants' assertions that they are entitled to economic relief representing the difference between what they paid for Athena's products and what they would have paid if Athena had not concealed the risks of those products. The underlying complaints do not seek damages *because of* "bodily injury" as defined in Great American's policy, but rather seek monetary relief for the claimants' economic loss from Athena's alleged deceptive practices. Indeed, the tort plaintiffs have repeatedly disavowed seeking any damages for physical injuries. Moreover, coverage is barred by the Exclusion of Claims and Suits Alleging Infringement of Intellectual Property or Unfair Competition (the "Unfair Competition Exclusion") in the Great American policy. The grounds for this Motion are detailed in the Memorandum of Points and Authorities attached hereto and supporting documents, along with the pleadings on file in this action, and upon such further evidence or argument as the Court permits.

Please take notice that on November 19, 2025, at 1:30 p.m., or as soon thereafter as this matter may be heard in Courtroom 9C of the above-entitled Court,

located at 350 West First Street, Los Angeles, CA 90012, Great American will and hereby does move the Court for an order granting its Motion and entering judgment in its favor. The Complaint consists of a First Cause of Action for Breach of Contract, Second Cause of Action for Tortious Breach of Contract, Third Cause of Action for Unfair Competition, and Fourth Cause of Action for Declaratory Relief.

Dated: October 15, 2025

**TRESSLER LLP**

By: */s/ Linda Bondi Morrison*
Linda Bondi Morrison
Amy L. Metzgar
Attorneys for Defendant
Great American E&S Insurance Company erroneously sued as Great American Insurance Company

# TABLE OF CONTENTS

Page (s)


I. INTRODUCTION AND SUMMARY OF ARGUMENT ..... 1

A. Great American's Introduction and Summary of Argument ..... 1

B. Athena's Introduction and Summary of Argument ..... 3

II. FACTUAL BACKGROUND ..... 5

A. Great American's Factual Background ..... 5

1. THE ATHENA ACTIONS ..... 5

a) The Slattery Action ..... 5

b) The Rush Action ..... 6

c) The Markoff Action ..... 6

d) The Common Allegations of the Athena Actions ..... 7

e) The Initial Disclosures from the Athena Actions ..... 8

2. THE GREAT AMERICAN POLICY ..... 9

3. GREAT AMERICAN'S COVERAGE POSITION ..... 12

4. PROCEDURAL BACKGROUND ..... 12

B. Athena's Factual Background ..... 13

1. The Athena Actions ..... 13

a) The Slattery Action ..... 13

b) The Rush Action ..... 14

c) The Markoff Action ..... 15

2. The Great American Policy ..... 15

3. Great American's Coverage Position ..... 16

4. Procedural Background ..... 16

## TABLE OF CONTENTS


Page (s)

III. LEGAL STANDARDS .......... 18

A. Great American's Legal Standards .......... 18

1. THE STANDARD FOR RULE 56 MOTION FOR SUMMARY JUDGMENT .......... 18

2. THE STANDARD GOVERNING THE DUTY TO DEFEND18

B. Athena's Legal Standards .......... 19

IV. ARGUMENT .......... 21

A. Issue 1: Athena's Argument .......... 21

1. The MSJ Suffers from Multiple Procedural Infirmities that Mandate its Denial .......... 21

a) Great American Impermissibly Seeks Reconsideration of Judge Birotte's Prior Coverage Determinations From a Different District Court Judge .......... 21

b) The MSJ Admittedly Fails to Comply with the Court's Standing Order .......... 24

B. Issue 2: Great American's Argument .......... 25

1. THE ATHENA ACTIONS DO NOT SEEK DAMAGES BECAUSE OF "BODILY INJURY" .......... 25

C. Issue 2: Athena's Argument .......... 29

1. The Class Actions Allege "Bodily Injury" Sufficient to Trigger Great American's Duty to Defend .......... 29

2. Great American's Argument that the Athena Actions do not Allege Damages Because of "Bodily Injury" Lacks Merit .......... 30

3. The Initial Disclosures Do Not Change the Analysis .......... 33

4. The Cases Great American Cites are Inapposite as They Relate to the Duty to Indemnify .......... 34

**TABLE OF CONTENTS**

Page (s)

D. Issue 3: Great American's Argument....36

1. THE UNFAIR COMPETITION EXCLUSION BARS COVERAGE FOR THE ATHENA ACTIONS....36

E. Issue 3: Athena's Argument....42

1. As Judge Birotte Previously Determined, the Unfair Competition Exclusion Does Not Apply....42

2. The Cases Great American Cites Actually Support Judge Birotte's Ruling....44

3. The Stautberg Declaration is Irrelevant and Inadmissible....45

F. Issue 4: Athena's Argument....47

1. Great American's Wholly Fails to Brief Why It is Entitled to Summary Judgment as to Athena's Other Claims....47

V. CONCLUSION....47

A. Great American's Conclusion....47

B. Athena's Conclusion....48

# TABLE OF AUTHORITIES


Page(s)

**Cases**

24th & Hoffman Investors, LLC v. Northfield Ins. Co., 82 Cal. App. 5th 825 (2022) .......... 37, 45

AIU Ins. Co. v. Superior Court (FMC Corp.), 51 Cal. 3d 807 (1990) .......... 40

American States Ins. Co. v. Progressive Cas. Ins. Co., 180 Cal. App. 4th 18 (2009) .......... 18

Another Planet Ent., LLC v. Vigilant Ins. Co., 15 Cal. 5th 1106 (2024) .......... 40, 41

Baker v. Nat'l Interstate Ins. Co., 180 Cal. App. 4th 1319 (2009) .......... 40

Bank of the West v. Sup. Ct., 2 Cal. 4th 1254 (1992) .......... 42

Bliss Sequoia Ins. & Risk Advisors, Inc. v. Allied Prop. & Cas. Ins. Co., 52 F.4th 417 (9th Cir. 2022) .......... 27

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) .......... 5, 47

CNA Casualty of California v. Seaboard Surety Co., 176 Cal. App. 3d 598 (1986) .......... 21

County of San Diego v. Ace Property & Casualty Ins. Co., 37 Cal. 4th 406 (2005) .......... 40

Envirotac, Inc. v. Great Am. E&S Ins. Co., No. 5:21-cv-00145, 2021 WL 3779227 (C.D. Cal. July 27, 2021) .......... 37, 44

Federal Ins. Co. v. Steadfast Ins. Co., 209 Cal. App. 4th 668 (2012) .......... 19

Feltz v. Cox Communications Cal., LLC, 562 F. Supp. 3d 535 (C.D. Cal. 2021) .......... 23

# TABLE OF AUTHORITIES

**Page(s)**


Foremost Ins. Co. v. Allstate Ins. Co.,
No. 5:23–cv–02557, 2025 WL 2235416 (C.D. Cal. May 8, 2025) .......... 18, 19

Foster-Gardner, Inc. v. National Union Fire Ins. Co.,
18 Cal.4th 857 (1998) .......... 13

Geddes & Smith, Inc. v. St. Paul-Mercury Indem. Co.,
51 Cal. 2d 558 (1959) .......... 26, 27, 35

Gonsalves & Santucci v. Greenwich Ins. Co.,
634 F. Supp. 3d 830 (C.D. Cal. 2022) .......... 19

Graves v. Alt. Express,
2008 WL 11343090 (C.D. Cal. Mar. 10, 2008) .......... 22, 23

Gray v. Zurich Ins. Co.,
65 Cal. 2d 263 (1966) .......... 19, 20

Great Am. E&S Ins. Co. v. Theos Med. Sys., Inc.,
357 F. Supp. 3d 953 (N.D. Cal. 2019) .......... 36, 44

Greenwood v. FAA,
28 F.3d 971 (9th Cir. 1994) .......... 47

Hartford Fire Ins. Co. v. Tempur-Sealy Int'l Inc.,
158 F. Supp. 3d 877 (N.D. Cal. 2016) .......... 31, 32

Haynes v. Farmers Ins. Exch.,
32 Cal. 4th 1198 (2004) .......... 22, 45

Homedics, Inc. v. Valley Forge Ins. Co.,
315 F.3d 1135 (9th Cir. 2003) .......... 20

Horace Mann Inc. Co. v. Barbara B.,
4 Cal.4th 1076 (1993) .......... 20

Horsemen's Benevolent & Protective Ass'n v. Insurance Co. of North Am.,
222 Cal. App. 3d 816 (1990) .......... 27, 35

# TABLE OF AUTHORITIES

**Page(s)**

Hudson Ins. Co. v. Colony Ins. Co., 624 F.3d 1264 (9th Cir. 2010) .......... 30

Independent Towers of Washington v. Washington, 350 F.3d 925 (9th Cir. 2003) .......... 47

James River Ins. Co. v. Rawlings Sporting Goods Co., No. CV 19-6658-GW-MAAX, 2021 WL 346418 (C.D. Cal. Jan. 25, 2021) .......... passim

Ketab Corp. v. Mesriani L. Grp., 2015 WL 2084469 (C.D. Cal. May 5, 2015) .......... 22

Kinsale Ins. Co. v. R.P. Ruiz Corp., 764 F. Supp. 3d 935 (C.D. Cal. 2025) .......... 19

Kunde Enters., Inc. v. Nat'l Sur. Co., 608 F. Supp. 3d 883 (N.D. Cal. 2022) .......... 22, 45

Kwikset Corp. v. Superior Court, 51 Cal. 4th 310 (2011) .......... 39, 41

Low v. Golden Eagle Ins. Co., 99 Cal. App. 4th 109 (2002) .......... 28, 29, 31, 32

MacKinnon v. Truck Ins. Exchange, 31 Cal.4th 635 (2003) .......... 42, 46

Markoff v. Athena Cosmetics, Inc., filed in U.S.D.C., N.D. Ill., Case No. 23-cv-16401 .......... passim

Markoff v. Athena Cosmetics, Inc., United States District Court for the Northern District of Illinois Case No. 23-cv-16401 .......... 3

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) .......... 19

## TABLE OF AUTHORITIES

**Page(s)**

Molecular Bioproducts, Inc. v. St. Paul Mercury Ins. Co.,
No. 03-0046-IEG(LSP), 2003 WL 23198852
(S.D. Cal. July 9, 2003) ....37, 45

Montrose Chem. Corp. of Cal. v. Superior Ct. of L.A. Cnty.,
No. B335073, 2025 WL 2778109 (Cal. Ct. App. Sept. 30, 2025) ....40

Montrose Chem. Corp. v. Superior Ct.,
6 Cal. 4th 287 (1993) ....passim

National Union Fire Ins. v. Ready Pac Foods, Inc.,
782 F. Supp. 2d 1047 (C.D. Cal. 2011) ....passim

Nofziger v. Holman,
61 Cal. 2d 526 (1964) ....41

In re Oracle Corp. Sec. Litig.,
627 F.3d 376 (9th Cir. 2010) ....19

Pardee Const. Co. v. Ins. Co. of the W.,
77 Cal. App. 4th 1340 (2000) ....22, 46

Pinnacle Brokers Ins. Solutions LLC v. Sentinel Ins. Co., Ltd.,
No. 15-CV-02976-JST, 2015 WL 5159532 (N.D. Cal. Sept. 2, 2015) ....37, 44

Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship,
507 U.S. 380 (1993) ....25

Plantronics, Inc. v. Am. Home Assur. Co.,
No. 07-cv-06038-PSG, 2014 WL 2452577 (N.D. Cal. May 30, 2014) ....32

Prudential Ins. Co. of Am. v. Superior Court,
98 Cal. App. 4th 585 (2002) ....22, 46

Rush v. Athena Cosmetics, Inc.,
filed in U.S.D.C., E.D.N.Y., Case No. 23-cv-8799 ....passim

Rush v. Athena Cosmetics, Inc.,
United States District Court for the Central District of California
Case No. 24-cv-8542 ....3

## TABLE OF AUTHORITIES


Page(s)

S.B.C.C., Inc. v. St. Paul Fire & Marine Ins. Co., 186 Cal. App. 4th 383 (2010) ..... 37, 45

Slattery v. Athena Cosmetics, Inc., filed in U.S.D.C., C.D. Cal., Case No. 2:23-cv-10078 ..... passim

Slattery v. Athena Cosmetics, Inc., United States District Court for the Central District of California Case No. 2:23-cv-10078 ..... 3

State Farm Mut. Auto Ins. Co. v. Longden, 197 Cal. App. 3d 226 (1987) ..... 20

Tria Beauty, Inc. v. Nat'l Fire Ins. Co. of Hartford, No. C 12-05465 WHA, 2013 WL 2181649 (N.D. Cal. May 20, 2013) ..... 36, 44

USA Equestrian Trust, Inc. v. Old Republic Ins. Co., No. 2:24-cv-07661, 2025 WL 829969 (C.D. Cal. Feb. 13, 2025) ..... 18

Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1 (1995) ..... 19

Walls v. Central Contra Costa Transit Auth., 653 F.3d 963 (9th Cir. 2011) ..... 20

WAWGD, Inc. v. Sentinel Ins. Co., No. 16-CV-2917-CAB-BGS, 2017 WL 4340437 (S.D. Cal. Sept. 29, 2017) ..... 36, 45

**Statutes**

Cal. Bus. & Prof. Code § 17200 et seq. ..... 43

Cal. Bus. & Prof. Code § 17500 et seq. ..... 43

Cal. Civ. Code § 1750 et seq. ..... 43

California's Unfair Competition Law ..... 39, 41

FRCP Rule 12(b)(6) ..... 12

**TABLE OF AUTHORITIES**

Page(s)

FRCP Rule 26(a)(1)(A) ........................................................................ 8, 9

FRCP Rule 56(a) ........................................................................ 18, 19, 47

FRCP Rule 56(c)(2) ........................................................................ 18

Federal Rules of Evidence, Rule 201(b) ........................................................................ 18

# JOINT BRIEF RE GREAT AMERICAN'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

### A. Great American's Introduction and Summary of Argument

This action involves a dispute as to whether Great American owes a duty to defend[1] Athena in three putative class action lawsuits filed against Athena in California, Illinois and New York (collectively the "*Athena* Actions").[2] Each of the *Athena* Actions alleges that the underlying plaintiffs purchased RevitaLash enhancement serums from Athena that contained compounds found in prescription drugs and that were only approved for use under a physician's supervision. Although the *Athena* Actions allege that the Enhancement Serums are known to cause adverse effects to the face and eye area, they disavow seeking any damages because of any physical injuries the putative class members may have suffered. Instead, the *Athena* Actions allege that because Athena concealed the serum's risk of side effects, the class members "would not have purchased the Enhancement Serums, or not have purchased on the same terms (e.g., purchased them for substantially less), had they known the truth." They allege that the class members "suffered injury-in-fact and a loss of money or property through the out-of-pocket costs expended to purchase the Enhancement Serums," and that Athena was unjustly enriched because the class members' "[paid] for Defendant's Enhancement Serums." Their Prayers for Relief seeks damages for the "full amount paid or reimbursed for

---

[1] Athena's Complaint does not seek a determination regarding whether Great American is obligated to indemnify Athena in the *Athena* Actions.

[2] *Slattery v. Athena Cosmetics, Inc.,* filed in U.S.D.C., C.D. Cal., Case No. 2:23-cv-10078 ("*Slattery* Action"); *Rush v. Athena Cosmetics, Inc.*, filed in U.S.D.C., E.D.N.Y., Case No. 23-cv-8799, this case was dismissed and refiled in the U.S.D.C., C.D. Cal. on October 4, 2024, Case No.: 24-cv-8542 ("*Rush* Action"); and *Markoff v. Athena Cosmetics, Inc.*, filed in U.S.D.C., N.D. Ill., Case No. 23-cv-16401 ("*Markoff* Action").

Enhancement Serums and Defendant's ill-gotten gains." In other words, the *Athena* Actions allege that the class members suffered economic harm caused by Athena's engaging in unfair competition or unfair or deceptive acts or practices in violation of consumer protection statutes. The *Athena* Actions repeatedly disclaim seeking relief for any physical injuries that may have been caused by the Enhancement Serums. (*See* Joint Appendix of Facts ("JAF") 1.)

The Great American policy provides coverage for sums Athena becomes legally obligated to pay as damages *because of* "bodily injury." The policy defines "bodily injury" as "injury, sickness, or disease sustained by a person, including death of a person," as well as "mental anguish, mental injury, or shock, if directly resulting from physical injury, sickness, or disease to that person." Because the *Athena* Actions seek only to recover the class members' economic loss in paying more for the Serums than they were allegedly worth, the *Athena* Actions do not seek damages *because of* "bodily injury." Courts have consistently held that such purely economic damages do not constitute damages because of "bodily injury". Therefore, Great American's policy does not even potentially apply to afford coverage for the *Athena* Actions, and Great American has no duty to defend Athena.

Moreover, even if the *Athena* Actions sought damages because of "bodily injury," which they do not, the Exclusion of Claims and Suits Alleging Infringement of Intellectual Property or Unfair Competition (the "Unfair Competition Exclusion") in the Great American policy bars coverage for the *Athena* Actions. The Unfair Competition Exclusion excludes coverage for "[a]ny 'bodily injury' or 'property damage' alleged in any claim or 'suit' that also alleges any…violation of any statute, common law, or other laws or regulations" concerning "unfair competition, antitrust, restraint of trade, piracy, unfair trade practices, or any similar laws or regulations." Here, each of the *Athena* Actions alleges "violation of…statute, common law, or other laws or regulations" concerning "unfair competition, antitrust, restraint of trade, piracy, unfair trade practices, or any similar laws or regulations."

Consequently, the plain language of the Unfair Competition Exclusion bars coverage.

For the above reasons, because Great American's initial coverage disclaimer based on the policy's plain language was correct, this Court should grant Great American's Motion and dismiss Athena's claims with prejudice.

**B. Athena's Introduction and Summary of Argument**[3]

Plaintiff Athena Cosmetics, Inc. ("Athena") respectfully submits this opposition to Defendant Great American E&S Insurance Company's motion for summary judgment (the "MSJ"). This insurance coverage action concerns Defendant Great American E&S Insurance Company's ("Great American") duty to defend Athena in three putative consumer class actions involving alleged injuries arising from the use of Athena's eye serum products. Those actions are: (1) *Slattery v. Athena Cosmetics, Inc.*, United States District Court for the Central District of California Case No. 2:23-cv-10078 ("Slattery Action"); (2) *Rush v. Athena Cosmetics, Inc.*, United States District Court for the Central District of California Case No. 24-cv-8542; and (3) *Markoff v. Athena Cosmetics, Inc.*, United States District Court for the Northern District of Illinois Case No. 23-cv-16401 ("Markoff Action") (collectively, the "Athena Actions").

The MSJ represents a procedurally improper vehicle through which Great American seeks reconsideration of the Honorable Andre Birotte Jr.'s prior determination that Great American had a duty to defend the Athena Actions. Notably, Great American does not seek to terminate its duty to defend based upon some subsequent development in the Athena Actions. Instead, Great American

[3] Plaintiff Athena Cosmetics, Inc. ("Athena") participates in the belated submission of this joint brief notwithstanding, and reserving all rights concerning, Athena's position that Great American's motion for summary judgment filings are untimely and violate this Court's Standing Order. Athena does not waive any such arguments by participating in this joint submission.

simply wants a second bite at the apple from a different district court judge based upon its ongoing disagreement with Judge Birotte's prior ruling. As discussed herein, the MSJ is procedurally improper, substantively defective, and ultimately represents a wholly improper attempt to reargue issues Judge Birotte already decided. For the reasons discussed below, this Court should deny the MSJ on multiple, independent grounds.

First, the MSJ is procedurally improper because it is, in effect, a motion for reconsideration governed by Local Rule 7-18—not Rule 56. Great American identifies no newly discovered evidence, intervening change in law, or clear error in Judge Birotte's prior decision. Because none of the narrow grounds for reconsideration exist, the motion fails at the threshold.

Second, the MSJ is procedurally defective for the separate reason that Great American failed to seek relief under Rule 6(b) when it realized it had missed the Court's summary judgment filing deadline per the Standing Order. Great American's purported "excusable neglect" explains only its initial noncompliance with the Court's Standing Order, not its subsequent failure to correct it. Having ignored the Federal Rules of Civil Procedure and this Court's Orders, Great American cannot now seek to benefit from its own inexcusable delay.

Third, the MSJ lacks substantive merit. Judge Birotte correctly found that Great American owes a duty to defend the Athena Actions because the Athena Actions allege "bodily injury" within the meaning of the Policy. The underlying complaints, and later discovery, confirm allegations of bodily injury and mental anguish. Great American's attempt to resurrect its argument that "bodily injury" is not the same as "damages because of bodily injury" represents a false distinction that Judge Birotte already considered and rejected.

Fourth, the MSJ fares no better as to Judge Birotte's ruling that the Unfair Competition Exclusion does not apply. That exclusion is, at best, ambiguous as to consumer claims and, at worst, wholly inapplicable. Courts construing nearly

identical language have held such exclusions apply only to claims brought by business competitors. Indeed, every case Great American cites supports Athena's interpretation, as each involved a claim brought by a business competitor—not a consumer. Great American's reliance on the conclusory declaration of its underwriter, Kathleen Stautberg, regarding Great American's alleged intent behind the exclusion, is both improper and irrelevant under California law. Her statement lacks foundation and is nothing more than Great American's supposed subjective intent, which courts have long deemed inadmissible in interpreting insurance contracts.

Finally, to the extent Great American seeks summary judgment on Athena's second, third, and fourth causes of action, the Court should deny the MSJ because it fails to brief or support those arguments in any way. Under *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), a moving party bears the initial burden of informing the Court of the basis for its motion and failure to do so is fatal.

Accordingly, for the reasons set forth in further detail below, the Court should deny the MSJ in its entirety.

## II. FACTUAL BACKGROUND

### A. Great American's Factual Background

#### 1. THE *ATHENA* ACTIONS

##### *a) The Slattery Action*

The Plaintiff in the *Slattery* Action, Doriann Slattery, allegedly purchased one of a series of Serums manufactured by Athena the without knowing that using the products as directed by the manufacturer could cause serious side effects. (JAF 2.) Slattery filed a putative class action complaint on November 30, 2023, against Athena, for "economic damages and injunctive relief (not for physical injuries)" on behalf of herself and "all others similarly situated." (JAF 3.) Although Slattery suffered an eye infection and a chalazion, she has not brought suit in her individual capacity to recover damages for her injuries. (*See* JAF 3.) Rather, she is a named

plaintiff in the *Slattery* Action seeking compensation for economic loss. (*See* JAF 3.) The *Slattery* Action complaint contains seven causes of action: 1. Violation of State Consumer Protection Statutes; 2. Fraud; 3. Negligent Misrepresentation and Omission; 4. Breach of Express Warranty; 5. Breach of Implied Warranty; 6. Negligence; and 7. Unjust Enrichment. (JAF 4.)

***b) The Rush Action***

The Plaintiff in the *Rush* Action, Rebecca Rush, is alleged to have purchased two of the Serums manufactured by Athena. (JAF 4.) Rush filed a putative class action complaint on November 30, 2023, against Athena on behalf of herself and a National Class and New York subclass who "paid any money for Enhancement Serums for personal, family, or household purposes." (JAF 6.) Although Rush suffered eye irritation, she has not brought suit in her individual capacity to recover damages for her injuries. (*See* JAF 6.) Rather, she is a name plaintiff in the *Rush* Action seeking compensation for economic loss. (*See* JAF 6.) The *Rush* Action complaint contains seven causes of action: 1. Violation of Consumer Protection Acts; 2. Fraud; 3. Negligent Misrepresentation; 4. Breach of Express Warranty; 5. Breach of Implied Warranty; 6. Negligence; and 7. Unjust Enrichment. (JAF 7.)

***c) The Markoff Action***

The Plaintiff in the *Markoff* Action, Corrine Markoff, is alleged to have purchased Serums manufactured by Athena "without knowing that using the products as directed by the manufacturer can cause serious side effects." (JAF 8.) Markoff filed a putative class action complaint on November 30, 2023, against Athena, on behalf of herself and "all others similarly situated" "for economic damages and injunctive relief (not for physical injuries) on behalf of all persons who paid for Athena's dangerous Products." (JAF 9.) Markoff does not contend that she suffered any physical injury as a result of using Athena's products. (*See* JAF 9.) The *Markoff* Action complaint contains seven causes of action: 1. Violation of State Consumer Protection Statutes; 2. Fraud; 3. Negligent Misrepresentation and

Omission; 4. Breach of Express Warranty; 5. Breach of Implied Warranty; 6. Negligence; and 7. Unjust Enrichment. (JAF 10.)

***d) The Common Allegations of the Athena Actions***

The allegations of the *Athena* Actions are materially the same, with the same general allegations and prayers for relief. Each alleges the "…class action arises from the false, misleading, unfair, and deceptive sale of beauty products without disclosing dangerous risks and side effects of the products' key ingredient." (JAF 11.) Each alleges that Athena manufactures and sells beauty products, including Serums, and that Athena did not disclose the risk of any side effects of the Serums when selling the serums to its customers. (JAF 12.) The *Athena* Actions allege that Athena violated "[state] consumer protection statutes" when it "engaged in unfair competition or unfair or deceptive acts or practices…" in violation of various state law codes and statutes relating to consumer protection. (JAF 13.) Athena is alleged to have "engaged in unlawful conduct by deliberately and knowingly engaging in misleading, deceptive, and false statements regarding the Enhancement Serums in the course of [Athena's] business" and "Athena made these misrepresentations, or omitted material information, in its marketing (including its website and the websites of its authorized resellers) for the Enhancement Serums, and the Products' packaging, labeling, and instructions." (JAF 14.)

In identifying the harm suffered by the class, the *Athena* Actions allege that "[r]easonable consumers would consider the affirmatively misrepresented and omitted facts [by Athena] to be important in determining whether or not to purchase the Enhancement Serums at all, or alternatively at the prices at which the Products were purchased." (JAF 15.) The injury allegedly suffered was the "loss of money or property through the out-of-pocket costs expended to purchase the Enhancement Serums." (JAF 16.) Specifically, the harm claimed in the *Athena* Actions is that Plaintiff and the other putative class members "would not have purchased" the Serums, or not have purchased them on the same terms (e.g., purchased them for

substantially less), had they known the truth of what the products contained. (JAF 17.) Although the *Athena* Actions allege that the Serums carried the risk of physical harms to plaintiffs and the class, they expressly disavow seeking to recover damages for such physical injuries. (JAF 18.) Each of the *Athena* Actions seeks an order awarding appropriate preliminary and/or final injunctive relief against Athena's conduct; payment to the respective Plaintiffs and class members of all damages, exemplary or punitive, and/or restitution associated with the conduct for all causes of action proven at trial "including but not limited to the full amounts paid or reimbursed for Enhancement Serums and Defendant's ill-gotten gains," attorneys' fees and expert witness fees and costs, statutory penalties as provided by law, and interest as provided by law. (JAF 19.)

***e) The Initial Disclosures from the Athena Actions***

On September 4, 2025 Athena produced to Great American in response to Requests for Production, FRCP Rule 26(a)(1)(A) Initial Disclosures served on March 26, 2024, by plaintiff Rush in the *Rush* Action. (JAF 20.) In the Initial Disclosures, Rush identified the claimed category of damages in the putative class action as economic loss as a result of paying for the Serums:

> Any damages in this action will be based largely on Defendant's own records, which it have [*sic*] yet to produce, and potentially expert analysis of same. Expert disclosures are not yet due. As set forth in the operative complaint, Plaintiff currently seeks, individually and on a class-wide basis, available categories of monetary and equitable relief relating to, *inter alia*, the amounts paid for the Serums or, alternatively, the difference in the amounts paid for the Serums and the amounts that would have been paid had Defendant's [*sic*] fully disclosed all health risks and side effects; disgorgement of ill-gotten gains; marketing, disclosure, and related business practice changes; equitable exemplary or punitive damages as allowed by law; and attorneys' fees, costs, and interest

allowed by law.

(JAF 20.)

On September 18, 2025 Athena produced to Great American in response to Requests for Production, FRCP Rule 26(a)(1)(A) Initial Disclosures served on April 4, 2024, by plaintiff Corrine Markoff in the *Markoff* Action. (JAF 21.) In the Initial Disclosures, Markoff identified the claimed category of damages in the putative class action as economic loss as a result of paying for the Serums:

> As set forth in the operative complaint, Plaintiff currently seeks, individually and on a class-wide basis, available categories of monetary damages, restitution, and/or equitable relief relating to, *inter alia*, the amounts paid for the subject products or, alternatively, the difference in the amounts paid for the Serums and the amounts that would have been paid had Defendant fully disclosed all risks and health effects; disgorgement of ill-gotten gains; marketing, disclosure, and related business practice changes; equitable exemplary or punitive damages as allowed by law; and attorneys' fees, costs, and interest allowed by law.

(JAF 21.)

On September 17, 2025 counsel for Athena informed Great American, in response to Great American's requests for production, that Slattery did not produce Initial Disclosures in the S*lattery* Action. (JAF 22.)

### 2. THE GREAT AMERICAN POLICY

Great American issued the Commercial General Liability Policy identified in the Complaint, to Athena, Policy No.: PL2258463-05, effective March 1, 2023 to March 1, 2024 (the "Policy"). (JAF 23.)[4] The Policy states, in relevant part, that

[4] Athena's Complaint identifies only the Policy as being at issue in this action. To the extent Athena contends additional policies with identical or materially identical provisions are at issue, Great American seeks a ruling that it has no duty to defend for the reasons set forth in this Motion.

Great American will pay "those sums that [Athena] becomes legally obligated to pay as **damages** because of 'bodily injury' . . . to which this insurance applies…. However, we will have no duty to defend the Insured against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply. (JAF 24.) The Policy also defines "bodily injury" to mean "injury, sickness, or disease sustained by a person, including death of a person. 'Bodily injury' also means mental anguish, mental injury, or shock, if directly resulting from physical injury, sickness, or disease to that person." (JAF 24.)

The Policy also includes the Unfair Competition Exclusion in a stand-alone endorsement that is clearly labeled and which states, in relevant part:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION OF CLAIMS AND SUITS ALLEGING INFRINGEMENT OF INTELLECTUAL PROPERTY OR UNFAIR COMPETITION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

* * *

**B.** The following exclusion is added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I – COVERAGES, Coverage B – Personal and Advertising Injury Liability, 2. Exclusions:**

**Claim or Suit Alleging Violation of Laws Concerning Unfair Competition or Similar Laws**

* * *

2. Any "personal and advertising injury" alleged in a claim or "suit" that also alleges any actual, alleged, or threatened violation of any statutes, common law, or other laws or regulations concerning unfair competition, antitrust, restraint of trade, piracy, unfair trade practices, or any similar laws or regulations.

This exclusion applies to our duty to defend and our duty to pay damages whether such misappropriation, infringement or violation is committed in your "advertisement" or otherwise.

* * *

**C.** The following exclusion is added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I – COVERAGES, Coverage A – Bodily Injury and Property Damage Liability, 2. Exclusions:**

**Claim or Suit Alleging Infringement of Intellectual Property or Violation of Laws Concerning Unfair Competition or Similar Laws**

Any "bodily injury" or "property damage" alleged in any claim or "suit" that also alleges any:

* * *

2. Violation of any statute, common law, or other laws or regulations described in **COMMERCIAL GENERAL**

**LIABILITY COVERAGE FORM, SECTION I – COVERAGES, Coverage B – Personal and Advertising Injury, 2. Exclusions, Claim or Suit Alleging Violation of Laws Concerning Unfair Competition or Similar Laws.**

(JAF 25.)

**3. GREAT AMERICAN'S COVERAGE POSITION**

Athena tendered the defense of the *Athena* Actions to Great American. (JAF 26.) Great American initially denied the tenders of each of the *Athena* Actions on the grounds that it owed no duty to defend or indemnify Athena because the *Athena* Actions did not seek potentially covered damages because of "bodily injury." (JAF 27.) Moreover, even if the *Athena* Actions could be construed to seek damages because of "bodily injury," coverage is barred by the Unfair Competition Exclusion in the Policy. (JAF 27.) Great American later agreed to defend Athena in the *Athena* Actions subject to a complete reservation of rights. (JAF 28.)

**4. PROCEDURAL BACKGROUND**

Athena filed its complaint against Great American on August 13, 2024 in the Ventura County Superior Court. (JAF 29.) On September 19, 2024, Great American removed the action to this Court based on diversity jurisdiction. (JAF 30.) On September 26, 2024, Great American filed a Motion to Dismiss under FRCP Rule 12(b)(6), requesting that the Court dismiss Athena's Complaint with prejudice for each claim. (JAF 31.) Athena filed its Memorandum in Opposition to the Motion on October 24, 2024. (JAF 32.) Great American filed its Reply on November 8, 2024. (JAF 33.)

On December 3, 2024, Judge Andre Birotte, Jr. entered an Order denying Great American's Motion to Dismiss. (JAF 34.) Judge Birotte concluded that the *Athena* Actions contained "factual allegations of bodily injury of plaintiffs' eyes sufficient to support a covered claim, revealing a clear *potential* for liability." (JAF 35.) He did not address whether the *Athena* Actions sought damages *because of*

"bodily injury." (JAF 36.) Judge Birotte also declined to apply the Unfair Competition Exclusion in the Policy, as addressed in Paragraph IV.B. below. (*See* JAF 36.)

After the court denied Great American's Motion to Dismiss, Great American promptly agreed to defend Athena in the *Athena* Actions, subject to a complete reservation of rights, and has paid to date over $600,000 in Athena's defense. (JAF 37.) Fact discovery in this case has now closed, and Great American brings this Motion with additional evidence to support its position that no coverage exists for the *Athena* Actions.

**B. <u>Athena's Factual Background</u>**

**1. The *Athena* Actions**

As confirmed by Judge Birotte, and further developed in discovery, the *Athena* Actions all allege claims of bodily injury, including but not limited to claims that the Athena products caused (1) swollen and red eyes; (2) eye disease; (3) blurry vision; (4) chronic dry eyes; and (5) anxiety, depression and the feeling of isolation.

***a) The Slattery Action***

As Great American confirms in its pending MSJ, the plaintiff in the *Slattery* Action, Doriann Slattery, allegedly suffered an eye infection and a chalazion as a result of using a Serum manufactured by Athena. (See JAF 3). Indeed, Ms. Slattery described her injuries in a June 15, 2023 letter to Great American, wherein she alleged a variety of physical and mental injuries.[5] (JAF 44-45 [O'Hanlon Decl., Exh. 13]). These included: (i) swollen and red eyes, (ii) chalazion on the left upper eye, (iii) blurry vision, (iv) blepharitis in both eyes, (v) chronic dry eyes, and (vi) "[t]he sudden onset of eye problems caused her anxiety, depression, and feeling of isolation." (*Id.*) The plaintiff described her mental injuries as follows:

---

[5] Under California law, Great American must consider extrinsic evidence, such as Ms. Slattery's letter, in evaluating the duty to defend. *Foster-Gardner, Inc. v. National Union Fire Ins. Co.*, 18 Cal.4th 857, 880 (1998).

> [The onset of eye problems is] causing me to not have desire for or ability to participate in normal daily activities including cleaning my home. It is always there and a distraction, even carrying on a conversation with the discomfort there.

(JAF 45). Ms. Slattery further explained that she can no longer wear makeup "due to her eyes constantly watering" which in turn "makes her feel very self-conscious" and "she has missed many social activities," which further contributes to her "anxiety, depression, and feeling of isolation." *Id.*

Ms. Slattery confirmed these allegations during her deposition on April 23, 2025, where she testified that her eyes continue to burn, feel uncomfortable, and remain dry. (JAF 47 [Slattery Depo, 36:14-22; 141:7-9].) She explained that she must use a prescription eye drop daily as a result. *Id.* at 37:1-19. Ms. Slattery further testified that Revitalash caused her eyes to become severely swollen, red, and burning, and led to the development of blepharitis. *Id.* at 84:15-85:4. She also stated that the product impaired her vision and prevented her from engaging in activities she previously enjoyed, such as reading and doing puzzles. *Id.* at 151:7-152:7.

On August 6, 2025, Ms. Slattery's treating physician testified regarding her injuries and their alleged cause. He explained that he diagnosed Ms. Slattery with a chalazion in her left upper eyelid in January 2023 and opined that it was caused by the Athena serum she had used. (JAF 48 [Coleman Depo 68:21-70:2]). He further testified that the Athena serum caused inflammation that blocked her oil glands (*Id.* at 72:15-73:4) and that also caused her blepharitis. *Id.* 74:25-75:3.

***b) The Rush Action***

Like Ms. Slattery, the plaintiff in the *Rush* Action, Rebecca Rush, suffered eye irritation from using an Athena serum. (JAF 6-7). On April 22, 2025, Ms. Rush testified that her eyes started to flare up as soon as she began to use the serum (JAF 49 [Rush Depo 34:23-36:22]) and become inflamed, irritated, itchy, painful and red *Id.* at 37:1-10; 67:8-24; 74:17-22; 77:3-8. Ms. Rush further testified that the serum

caused permanent harm to her eyes.

Q. What type of physical harm do you think it presented by RevitaLash Advanced?

A. Permanent harm to the eyes, pressure, vision.

Q. Any other physical harm that you believe is the true risk of RevitaLash Advanced?

A. Other than permanent eye damages? No.

*Id.* at 95:15-21.

***c) The Markoff Action***

The plaintiff in the *Markoff* Action, Corrine Markoff, similarly allegedly suffered bodily injury. (JAF 7-8). Furthermore, on April 17, 2025, Ms. Markoff testified that the serum caused her eyes to burn and become irritated, itchy, painful and red. (JAF 50 [Markoff Depo at 56:5-11, 57:4-15, 75:4-21, 113:3-114:1; 115:11-21].)

**2. The Great American Policy**

Great American issued the Commercial General Liability Policy identified in the Complaint, to Athena, Policy No.: PL2258463-05, effective March 1, 2023 to March 1, 2024 (the "Policy"). (JAF 23). The Policy provides that Great American "will pay those sums that the Insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. *Id.* ¶ 5. The term "bodily injury" is defined in the Policy to mean "injury, sickness, disease . . . sustained by a person," including "mental anguish, mental injury or shock if directly resulting from physical injury, sickness, or disease to that person." *Id.* The Policy further provides that Great American "will have the right and duty to defend the Insured against any 'suit' seeking those damages." *Id.*

As relevant here, the Policy also includes an Unfair Competition exclusion that provides the following:

Any "bodily injury" or "property damage" alleged in any claim or "suit" that

also alleges any:

***

2. Violation of any statute, common law, or other laws or regulations described in **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I – COVERAGES, Coverage B – Personal and Advertising Injury, 2. Exclusions, Claim or Suit Alleging Violations of Laws Concerning Unfair Competition or Similar Laws**.

***

That cited exclusion, in turn, precludes coverage for "[a]ny 'personal and advertising injury' alleged in a claim or 'suit' that also alleges any actual, alleged, or threatened violation of any statutes, common law, or other laws or regulations concerning unfair competition, antitrust, restraint of trade, piracy, unfair trade practices, or any similar laws or regulations." (JAF 25). The term "unfair competition" is not defined in the Policy. (JAF 51).

**3. Great American's Coverage Position**

Athena tendered the defense of the *Athena* Actions to Great American. (JAF 26). Great American initially denied coverage, asserting that it owed no duty to defend Athena because (1) the *Athena* Actions did not seek damages potentially covered under the Policy, as they did not allege "bodily injury"; and (2) even if the *Athena* Actions could be construed to seek such damages, coverage was barred by the Policy's Unfair Competition Exclusion. (JAF 27). Only after Judge Birotte ruled against Great American—holding that Great American owed Athena a duty to defend and that the Unfair Competition Exclusion did not preclude coverage as a matter of law—did Great American reverse course. (JAF 28). It then agreed to provide a defense, but only under a complete reservation of rights. *Id.*

**4. Procedural Background**

Athena filed its complaint against Great American on August 13, 2024, in the Ventura County Superior Court. (JAF 29). On September 19, 2024, Great American

removed the case to this Court based on diversity jurisdiction. (JAF 30). Shortly thereafter, Great American filed a Motion to Dismiss under Rule 12(b)(6), seeking dismissal of Athena's Complaint with prejudice as to all claims. (JAF 31).

In its Motion to Dismiss, Great American advanced the same arguments it presses now—namely, that it owed no duty to defend because (1) the *Athena* Actions did not allege damages because of "bodily injury" and (2) even if they did, coverage was barred by the Policy's Unfair Competition Exclusion. *Id.*; (JAF 52).

On December 3, 2024, Judge Birotte rejected those arguments, denying Great American's Motion to Dismiss in its entirety. (JAF 34, 53). Judge Birotte found that the Athena Actions contained factual allegations of bodily injury—e.g., harm to plaintiffs' eyes—that were sufficient to support a potentially covered claim and establish a "clear potential for liability." (JAF 35). In reaching this conclusion, Judge Birotte reaffirmed that "an insurer has a very broad duty to defend its insured under California law" and that "the insurer's duty is not measured by the *technical legal* cause of action pleaded, but rather by the potential for liability as revealed by the facts alleged in the complaint." (Dkt. 31, PageID.443, citing *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1267 (9th Cir. 2010)). Because the Athena Actions already alleged the type of harm covered under the Policy—namely, bodily injury—the Court held that Great American had a duty to defend even though the *Athena* Actions purported to disavow damages for "physical injury." *Id.*

Judge Birotte further declined to apply the Policy's Unfair Competition Exclusion, finding it ambiguous and therefore unenforceable against Athena. (JAF 55). The Court explained that the term "unfair competition" could reasonably be interpreted as intending to preclude claims brought by business competitors, *no*t consumer actions. Because California law requires that "any ambiguity or uncertainty in an insurance policy be resolved against the insurer," Judge Birotte held that the exclusion did not bar coverage for the *Athena* Actions.

Prior to the belated filing of this MSJ, Great American did not seek

reconsideration of Judge Birotte's order. (JAF 56 [O'Hanlon Decl. ¶ 3]).

## III. LEGAL STANDARDS

### A. Great American's Legal Standards

#### 1. THE STANDARD FOR RULE 56 MOTION FOR SUMMARY JUDGMENT

Pursuant to FRCP Rule 56(a), this Court should grant Great American's Motion because there is no genuine dispute as to any material fact and Great American is therefore entitled to judgment as a matter of law. *See USA Equestrian Trust, Inc. v. Old Republic Ins. Co.*, No. 2:24-cv-07661, 2025 WL 829969, at * 3 (C.D. Cal. Feb. 13, 2025). Great American's Motion relies on evidence that is capable of being presented at trial in a form that would be admissible in evidence. *See* FRCP Rule 56(c)(2).

This Court may take judicial notice of facts that are not subject to reasonable dispute because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Federal Rules of Evidence, Rule 201(b). This Court can take judicial notice of proceedings in the *Athena* Actions that have a direct relationship to the issues before the court, such as the Complaints and Initial Disclosures from the *Athena* Actions. *See Foremost Ins. Co. v. Allstate Ins. Co.*, No. 5:23–cv–02557, 2025 WL 2235416, at * 4 (C.D. Cal. May 8, 2025) (court took judicial notice of pleadings from the underlying litigation).

#### 2. THE STANDARD GOVERNING THE DUTY TO DEFEND

Whether an insurer has a duty to defend is a question "made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 295 (1993) (quoting *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 n. 15 (1966)). "An insurer does not have a continuing duty to investigate the potential for coverage if it has made an informed decision on coverage at the time of tender." *American States Ins. Co. v. Progressive*

*Cas. Ins. Co*., 180 Cal. App. 4th 18, 26 (2009). Where the complaint potentially seeks damages covered by the policy, the insurer owes a duty to defend. *Gray v. Zurich Ins. Co.,* 65 Cal. 2d 263, 275 (1966). Facts extrinsic to the complaint may negate coverage if they "conclusively eliminate a potential for liability." *Montrose*, 6 Cal. 4th at 295. While the duty to defend is broad, it is not unlimited. *See Foremost Ins. Co.,* 2025 WL 2235416, at * 5.

"If, as a matter of law, … there is no potential for coverage based on the allegations in the complaint or the extrinsic facts known to the insurer, then there is no duty to defend." *Federal Ins. Co. v. Steadfast Ins. Co.*, 209 Cal. App. 4th 668, 680 (2012); *Gonsalves & Santucci v. Greenwich Ins. Co*., 634 F. Supp. 3d 830, 838 (C.D. Cal. 2022). "[W]here there is no possibility of coverage, there is no duty to defend." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 19 (1995) (internal quote marks omitted). Moreover, when there is no duty to defend, there can be no duty to indemnify, and not breach of the covenant of good faith and fair dealing. *Kinsale Ins. Co. v. R.P. Ruiz Corp.*, 764 F. Supp. 3d 935, 942 (C.D. Cal. 2025), *quoting Certain Underwriters at Lloyd's of London v. Superior Court* ("*Powerine I*"), 24 Cal. 4th 945, 961 (2001).

**B. Athena's Legal Standards**

Summary Judgment Standard: Summary judgment is only appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If and when the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the

non-moving party." *Walls v. Central Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).

Great American's Broad Duty to Defend Under California Law:[6] For almost sixty years, beginning with the seminal decision in *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263 (1966), the California appellate courts have emphasized the expansive breadth of an insurer's duty to defend and the rule that an insurer must defend the insured if the allegations against the insured create *any possibility of coverage*. The California Supreme Court has emphasized that the *bare* possibility of coverage is sufficient to trigger the duty to defend. *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 295 (1993). Any doubt as to whether the facts give rise to a duty to defend will be resolved in the insured's favor. *Horace Mann Inc. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081 (1993); *see also State Farm Mut. Auto Ins. Co. v. Longden*, 197 Cal. App. 3d 226, 233 (1987). Indeed, an insurer cannot escape its defense duty unless it can conclusively "establish the absence of any such potential…. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales." *Montrose*, *supra* at 300 (emphasis added).

Finally, a claimant need not allege a formal "cause of action" against an insured—let alone all the elements thereof—to trigger an insurer's duty to defend. The case of *Barnett v. Fireman's Fund Ins.* Co., 90 Cal. App. 4th 500 (2001), is instructive. In *Barnett*, the plaintiff in the underlying suit pleaded causes of action for breach of fiduciary duty, intentional interference with contractual relations, breach of the implied covenant of good faith and fair dealing and fraud against Barnett, who was insured under a CGL policy issued by Fireman's Fund ("FF").

---

[6] This coverage action is governed by California law. *See e.g., Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135 (9th Cir. 2003) (in diversity actions, the courts apply the substantive law of the state in which the action is pending).

The complaint contained no cause of action for "disparagement," "libel" or "slander," but did contain allegations that Barnett had made false statements about the plaintiffs' methods of doing business. FF argued that "the insurer has no obligation to defend unless the underlying complaint alleges all of the elements necessary to establish the enumerated defense" and that "the underlying action did not allege all of the elements necessary to state a cause of action for defamation, and therefore it had no duty to defend the underlying action." *Id*. The Court of Appeal ***rejected*** this argument and held that allegations of defamation and disparagement within the complaint triggered the duty to defend regardless of the labels the plaintiff used on the causes of action. *Id*. at 510 (internal citations omitted); *see also CNA Casualty of California v. Seaboard Surety Co.*, 176 Cal. App. 3d 598, 612 (1986) ("two solitary, unsubstantiated words" "false disparagement" in the middle of an uncovered cause of action for violation of antitrust laws was sufficient to trigger the insurer's duty to defend under a liability policy).

## IV. ARGUMENT

### A. Issue 1: Athena's Argument

#### 1. The MSJ Suffers from Multiple Procedural Infirmities that Mandate its Denial

##### *a) Great American Impermissibly Seeks Reconsideration of Judge Birotte's Prior Coverage Determinations From a Different District Court Judge*

Although styled as a motion for summary judgment, the MSJ is nothing more than an untimely and improper attempt to relitigate issues Judge Birotte already decided. Judge Birotte unequivocally held that Great American owes a duty to defend Athena and that the Unfair Competition Exclusion does not bar coverage as a matter of law. Rather than accept that ruling, Great American now repackages the same arguments under the procedural label of Rule 56 in an obvious effort to obtain a second bite at the apple.

This procedural sleight-of-hand cannot stand. Local Rule 7-18 narrowly limits reconsideration to three circumstances: (1) newly discovered material facts, (2) intervening changes in controlling law, or (3) the need to correct clear error or prevent manifest injustice. L.R. 7-18; *Graves v. Alt. Express*, 2008 WL 11343090, at *2 (C.D. Cal. Mar. 10, 2008). The rule also forbids re-argument of issues already decided and requires any motion for reconsideration to be filed within 14 days of the challenged order. *Ketab Corp. v. Mesriani L. Grp.*, 2015 WL 2084469, at *2 (C.D. Cal. May 5, 2015). The MSJ satisfies none of these requirements.

*First*, Great American identifies no new evidence. The only "additional" evidence it cites are the initial disclosures from the *Rush* and *Markoff* Actions and a self-serving and inadmissible declaration from its own employee. These "new facts" merely restate information already before Judge Birotte. The disclosures confirm that claimants "currently seek, *inter alia*," economic damages and injunctive relief, while the declaration simply reiterates Great American's subjective view of what the Unfair Competition Exclusion precludes. Neither alters the record nor changes the analysis. Judge Birotte already determined that, although the *Athena* Actions sought economic damages and/or injunctive relief, the factual allegations nevertheless triggered a potential for coverage and thus a duty to defend. Dkt. No. 31.

Similarly, the new declaration adds nothing of consequence—it merely restates Great American's own subjective interpretation of its Policy—a position Judge Birotte considered and rejected. Under well-settled law, ambiguity must be assessed from the standpoint of a reasonable layperson, *not* through the insurer's internal understanding. *Kunde Enters., Inc. v. Nat'l Sur. Co.*, 608 F. Supp. 3d 883, 892 (N.D. Cal. 2022); *Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1212 (2004). Indeed, as a matter of well-established California law, an insurer's "undisclosed subjective intent as to policy coverage is irrelevant to determining the meaning of contractual language." *Pardee Const. Co. v. Ins. Co. of the W.*, 77 Cal. App. 4th 1340, 1360 (2000); *see also Prudential Ins. Co. of Am. v. Superior Court*, 98 Cal.

App. 4th 585, 599 (2002) ("The opinions of claims adjusters or other agents or employees of the insurer are also inadmissible to interpret an insurance contract").

*Second*, no intervening change in controlling law has occurred. Great American identifies no new authority altering the governing duty-to-defend standard or the interpretation of the Unfair Competition Exclusion. It merely recites many of the same cases Judge Birotte considered and rejected.

*Third*, Great American fails to show any clear error or manifest injustice. Judge Birotte correctly applied California's broad duty-to-defend standard, reviewed the policy language and the allegations and other voluminous documentation submitted by Great American (which Great American re-submitted in this MSJ), and found a potential for coverage. Great American's disagreement with that conclusion does not transform it into manifest injustice that requires the "extraordinary remedy" of reconsideration. *Feltz v. Cox Communications Cal., LLC*, 562 F. Supp. 3d 535, 539 (C.D. Cal. 2021) (A motion for reconsideration "is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources").

*Fourth*, Great American impermissibly seeks reconsideration of one district judge's decision by a *different* district court judge. Indeed, district courts regularly decline to reconsider decisions by a different district court judge. *Graves v. Atl. Express*, 2008 WL 11343090, at *2 (C.D. Cal. Mar. 10, 2008) ("We are not a court of appeals, and do not have jurisdiction in this matter to reconsider the rulings of another judge of the United States District Court. As such, we cannot reconsider the decisions of Judge Anderson. Such reconsideration can only be made by Judge Anderson himself…. We do not have the authority to reconsider the decision of another unrecused district judge"). As such, even if the MSJ were otherwise timely and procedurally proper (which it is not), only Judge Birotte could reconsider his prior order. *Id.* ("If Plaintiff wants Judge Anderson to reconsider the February 7, 2008 order regarding Judge Gutierrez, or for Judge Gutierrez to reconsider any of his own rulings, Plaintiff must file a proper motion for reconsideration before the judge

that issued the original ruling”).

Finally, the MSJ is untimely as a reconsideration motion. Local Rule 7-18 requires any motion for reconsideration to be filed promptly—within 14 days of the order at issue—not months later. Great American’s challenge comes nearly ten months after Judge Birotte’s decision, far outside that window. This extraordinary delay and its transparent attempt to revive long-resolved issues under the guise of a Rule 56 motion is improper.

***b) The MSJ Admittedly Fails to Comply with the Court’s Standing Order***

Compounding its procedural violations, Great American does not even attempt to seek the proper relief for its *admittedly* untimely and noncompliant MSJ. Great American concedes that its filing violates this Court’s Standing Order, yet rather than follow the Federal Rules and move under Rule 6(b) for an extension, it attempts to obtain retroactive relief in its notice of motion. This is improper.

Further, Great American attributes its violation to an “inadvertent” internal calendaring oversight after reassignment to this Court. Even if that explanation had merit, it only excuses—at most—its *initial* failure to track the deadline. By Great American’s own admission, it knew by October 2, 2025—the date it contacted Athena for the meet and confer—that the summary judgment deadline had already passed under this Court’s Standing Order. At that point, the error was no longer inadvertent. Once a party becomes aware that it has missed a deadline, it is bound to follow Rule 6(b) and seek an extension from the Court. Great American did not.

Instead, it made the deliberate choice to do nothing for nearly two more weeks, waiting until the last possible day to file an untimely and procedurally defective motion. In doing so, it compounded its noncompliance by violating yet another provision of this Court’s Standing Order, which expressly cautions that “as a courtesy to both the Court and the opposing party, a moving party should not wait until the last possible day to initiate the filing of a summary judgment motion.”

Great American's "do now and ask for forgiveness later" strategy should not be rewarded. While a genuine oversight may constitute excusable neglect, "ignorance of the rules, or mistake construing the rules do not." *See Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Having invoked the Federal Rules of Civil Procedure by removing this case to federal court, Great American cannot now disregard them. The MSJ is untimely, noncompliant, and procedurally and substantively defective and should be denied outright.

**B. Issue 2: Great American's Argument**

**1. THE *ATHENA* ACTIONS DO NOT SEEK DAMAGES *BECAUSE OF* "BODILY INJURY"**

The Policy obligates Great American to "pay those sums that the Insured becomes legally obligated to pay as damages *because of* ""bodily injury'…to which this insurance applies." (JAF 24 (emphasis supplied).) While the *Athena* Actions state that the named plaintiffs use of the products caused pain and eye irritation, none of the *Athena* Actions actually seek damages because of the alleged pain or irritation. (JAF 38.) In the event any of the underlying plaintiffs were seeking compensation for alleged injuries, they would have filed separate actions, and not putative class actions in which compensation for physical injuries cannot be awarded. The underlying plaintiffs seek "economic damages and injunctive relief and specifically disclaim seeking compensation for physical injuries." (JAF 39.) They allege, among other things, that Athena violated consumer protection statutes and that each of the *Athena* Actions "arises from the false, misleading, unfair, and deceptive sale of beauty products." (JAF 40.) They contend that they and the putative class members would not have purchased Athena's products or would have paid less had Athena been truthful. (*See* JAF 17.) They do not seek damages *because of* any "bodily injury" they allegedly suffered, but rather, they seek damages and injunctive relief *because of* their economic loss. (JAF 41.)

Ample authority supports Great American's position. In *National Union Fire*

*Ins. v. Ready Pac Foods, Inc.*, 782 F. Supp. 2d 1047 (C.D. Cal. 2011), the court was asked to determine whether lost patronage claims suffered by Taco Bell sought damages "because of" covered property damage and bodily injury. It concluded they did not. Ready Pac, the insured, produced pre-shredded and pre-washed lettuce for Taco Bell restaurants, and contamination of that lettuce caused food-borne illnesses among Taco Bell customers. Taco Bell franchisees sued Ready Pac for their drop-off in patronage after the outbreak. There was no dispute that Ready Pac's contaminated lettuce had caused property damage to the extent it tainted the meal items into which it was incorporated as well as restaurant surfaces and equipment. *Id*. at 1050 & n.1, 1056. Ready Pac alleged that its liability insurers were obligated to cover the lost-patronage losses either as damages "because of property damage" or "because of bodily injury." The court was rejected the argument that the insured's economic damages were "because of" bodily injury:

> Taco Bell's interpretation and argument that "because of bodily injury" substantiates coverage for its Lost Patronage Claim expands the coverage of the policy so as to provide coverage for almost any liability where bodily injury is a factor. Courts from other jurisdictions have previously determined that there is no coverage for economic losses "because of bodily injury" under the "bodily injury" portion of a liability policy. (Citations omitted.)

*Ready Pac Foods, Inc.,* 782 F. Supp. 2d at 1057.

In addition, in *Geddes & Smith, Inc. v. St. Paul-Mercury Indem. Co.,* 51 Cal. 2d 558, 562 (1959), the California Supreme Court was asked to interpret a liability policy which required the insurer to indemnify an insured for losses incurred "because of injury to or destruction of property." The insured supplied aluminum doors and was sued by a contractor who installed the doors on a number of houses, only to have the doors fail. *Id.* at 560-561. Although the Court allowed recovery for physical damage to the houses which resulted from the defective doors, it did not

allow recovery for lost profits. *Id.* at 565. It expressly rejected the insured's claim for lost profits and goodwill despite the existence of actual covered damage to property. *Id.* at 566. Like the claims at issue in *Geddes,* the *Athena* Actions do not seek covered damages "because of" any injury to the underlying plaintiffs; rather, they seek recovery of amounts the claimants paid for Athena's product and solely economic damages.

Additional pertinent authority supports Great American's position. In *Horsemen's Benevolent & Protective Ass'n v. Insurance Co. of North Am*., 222 Cal. App. 3d 816 (1990), an injured jockey sued the owner and trainer of the horse he had been riding. The owner and trainer then sued the horsemen's association, which had procured their insurance policy, for fraud and misrepresentation related to gaps in the coverage. The horsemen's association sought indemnity under a policy covering damages "because of" personal injury. *Id*. at 840-841. The court held that the policy did not cover the fraud and misrepresentation claims because the association was "not seeking to recover compensation for any personal injury or property damage for which [it] is legally responsible," so the "claims cannot be considered as constituting claims for personal injury or property damage" under the policy. *Id*. Like the claims at issue in *Horsemen's,* the claims at issue in the *Athena* Actions seek damages because of Athena's alleged fraud and misrepresentations. *See also*, *Bliss Sequoia Ins. & Risk Advisors, Inc. v. Allied Prop. & Cas. Ins. Co*., 52 F.4th 417, 423 (9th Cir. 2022) (applying Oregon law) (holding that claims of professional negligence against a risk management service, Bliss Sequoia, by a client who was sued after a child drowned at the client's water park did not seek damages "because of bodily injury").

The fact that the *Athena* Actions do not seek damages *because of* "bodily injury" is underscored by the Initial Disclosures recently produced by Athena to Great American in the *Rush* Action and *Markoff* Action. Those Initial Disclosures further confirm that the damages sought by the underlying plaintiffs are "the

amounts paid for the Serums or, alternatively, the difference in the amounts paid for the Serums and the amounts that would have been paid" if Athena had fully disclosed all health risks and side effects. (JAF 42, *see also* JAF Nos. 20-21.) The complaints' allegations about the health risks associated with Athena's products are only relevant to the *Athena* Actions' assertions that the serums were worth less than the plaintiffs paid ("[r]easonable consumers would consider the affirmatively misrepresented and omitted facts [by Athena] to be important in determining whether or not to purchase the Enhancement Serums at all, or alternatively at the prices at which the Products were purchased."). (*See* JAF 15.) Any reference to physical injury is the *Athena* Actions is merely informative and ancillary to the dispute for economic damages and should be disregarded. *See Ready Pac Foods, Inc.,* 782 F. Supp. 2d at 1057.

Moreover, the *Athena* Actions cannot be amended to seek damages *because of* "bodily injury" suffered by the individual putative class members without destroying the putative class, as individual claims "because of" bodily injury would cost plaintiffs commonality required for class certification. In *Low v. Golden Eagle Ins. Co.*, 99 Cal. App. 4th 109 (2002), the plaintiff alleged that she "sustained personal injuries as a result of ingesting" the appetite suppressant and other diet products manufactured by the insured. *Id*. at 112. However, the complaint alleged no claim for recovery for those damages, and the complaint alleged that she "expressly disclaim[ed] seeking recovery for personal injuries attributable to the use of consumed [sic] the appetite suppressant Metabolife 356 and other diet drug products containing ephedrine in this class action." *Id*. at 112. The Court of Appeal held the insurer had no duty to defend where the underlying class action complaint did not seek damages because of "bodily injury," and the class representatives explicitly disavowed any interest in such damages. *Id.* The court observed: "[a] class action is a special type of case and if one or more of the plaintiffs opts out and pursue[s] their case on their own, the case becomes completely changed in character. *Id.* at 111.

For the above reasons, because the *Athena* Actions do not seek damages *because of* "bodily injury" and the *Athena* Actions cannot be amended under the law to seek damages *because of* "bodily injury" without destroying the commonality requirement for class status, Great American has met its burden to show that coverage under the Policy does not apply and Great American owes no duty to defend Athena. This Court should grant summary judgment to Great American and dismiss Athena's Complaint with prejudice.

**C. <u>Issue 2: Athena's Argument</u>**

**1. The Class Actions Allege "Bodily Injury" Sufficient to Trigger Great American's Duty to Defend**

The Policy provides that Great American "will pay those sums that the Insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. (JAF 24). The term "bodily injury" is defined in the Policy to mean "injury, sickness, disease . . . sustained by a person," including "mental anguish, mental injury or shock if directly resulting from physical injury, sickness, or disease to that person." *Id.* The Policy further provides that Great American "will have the right and duty to defend the Insured against any 'suit' seeking those damages." *Id.*

As Judge Birotte previously determined, the *Athena* Actions "all allege the type of damages covered by the Policy (i.e. bodily injury)." Dkt. 31, PageID.443. As discussed below, while that holding remains correct given the express allegations of bodily injury and mental anguish in each of the underlying complaints, it is even more compelling today in light of the factual revelations obtained through discovery in the *Athena* Actions.

As explained above, recent deposition testimony confirms that the named class members suffered tangible bodily injury from their alleged use of Athena's lash serum. Ms. Slattery's treating physician diagnosed her with a chalazion on her left upper eyelid and opined that the condition—as well as associated inflammation,

blepharitis, and blocked oil glands—was caused by the Athena serum. (JAF 48 [Coleman Depo 68:21-70:2, 72:15-75:4. 74:25-75:3]). Ms. Rush similarly testified that her eyes became inflamed, irritated, itchy, and painful immediately after using the serum, resulting in permanent harm to her eyes and vision. (JAF 49 [Rush Depo 34:23-36:22, 37:1-10, 67:8-24, 74:17-22, 77:3-8, 95:15-21]). Likewise, Ms. Markoff testified that the serum caused her eyes to burn and become red, itchy, painful, and irritated. (JAF 50 [Markoff Depo at 56:5-11, 57:4-15, 75:4-21, 113:3-114:1; 115:11-21]). This uncontroverted evidence demonstrates that each named plaintiff suffered bodily injury attributable to use of the Athena serum.[7]

As California courts have consistently found, such allegations of bodily injury are sufficient to trigger an insurer's duty to defend. *Hudson*, 624 F.3d at 1267 ("the insurer's duty is not measured by the technical legal cause of action pleaded in the underlying third-party complaint, but rather by the potential for liability…as revealed by the facts alleged in the complaint"); *Barnett*, 90 Cal. App. 4th at 510 (same).

**2. Great American's Argument that the *Athena* Actions do not Allege Damages Because of "Bodily Injury" Lacks Merit**

Great American attempts to draw an artificial distinction between allegations of"bodily injury" and "damages because of 'bodily injury,'" and that this supposed distinction eliminates its duty to defend. This argument fails as it mischaracterizes Judge Birotte's prior ruling and repeats an argument that lacks merit under California's expansive duty-to-defend standard.

---

[7] As discussed below, the Policy's definition of "bodily injury" also includes "mental anguish [and] mental injury . . . resulting from physical injury, sickness or disease." (JAF 24). Notably, in addition to allegations of bodily injury, the underlying claimants such as Ms. Slattery also alleged emotional distress thereby triggering Great American's duty to defend on this additional basis. (JAF 44-45).

First, Judge Birotte expressly considered and rejected Great American's contention that it owes no duty to defend because the *Athena* Actions allege only economic damages rather than damages "because of bodily injury." In doing so, he recognized that the duty to defend is triggered where factual allegations give rise to a *potential* for covered liability—either under the existing complaint or one that "might be amended to give rise to a liability that would be covered under the policy." Dkt. 31, PageID. 440. Judge Birotte further observed that, even though the underlying complaints pursued class certification by disclaiming recovery for physical injury, the possibility remained that the complaints could be amended—or construed—to give rise to covered liability based on the factual allegations pled. Dkt. 31, PageID.443.

Second, Judge Birotte's reasoning accords with established California law. In *Hartford Fire Ins. Co. v. Tempur-Sealy Int'l Inc.*, 158 F. Supp. 3d 877 (N.D. Cal. 2016), for example, the underlying class action alleged that defendants failed to inform consumers that their mattresses emitted a chemical odor caused by a volatile organic compound. The insurers, as Great American does here, denied any duty to defend on the ground that the complaint did not assert explicit bodily injury claims. The court rejected that argument, explaining that insurers:

> [C]annot construct a formal fortress of the third party's pleadings and retreat behind its walls. The pleadings are malleable, changeable and amendable . . . Since modern procedural rules focus on the facts of a case rather than the theory of recovery in the complaint, the duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources. An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential for liability under the policy.

*Id.* at 883 (quoting *Gray*, 65 Cal.2d at 276–77).

Indeed, the *Tempur-Sealy* court distinguished the very case that Great American cites in support of its MSJ—*Low v. Golden Eagle Ins. Co.*, 99 Cal. App.

4th 109, 112 n.3 (2002)—noting that "the underlying complaint in *Low* did not actually allege that the plaintiff suffered any bodily injury." *Id.* at 884. By contrast, *Temper-Sealy* emphasized that where the underlying complaint includes factual allegations of bodily injury sufficient to give rise to potential coverage, the duty to defend is triggered—*even if plaintiffs disclaim recovery for "physical injury." Tempur-Sealy*, 158 F. Supp. 3d at 885. The duty to defend is extinguished only when "the third-party complaint d[oes] not allege the type of damages covered by the policy, ***and*** the class representatives explicitly disavowed any interest in the type of damages covered by the policy." *Id.* (emphasis added) (citing *Sony Computer Entm't Am. Inc. v. Am. Home Assur. Co.*, 532 F.3d 1007, 1020 (9th Cir. 2008).). Similarly here, the *Athena* Actions contain factual allegations of bodily injury, such that there is a potential for liability.

*Plantronics, Inc. v. Am. Home Assur. Co.*, No. 07-cv-06038-PSG, 2014 WL 2452577 (N.D. Cal. May 30, 2014) is also instructive on this point. There, as here, the underlying lawsuits expressly disclaimed damages for physical injury and instead alleged that consumers suffered economic losses from the use of Bluetooth headsets that caused noise-induced hearing loss. The court nonetheless held that the insurers owed a duty to defend because the complaints described a risk of physical injury sufficient to create "a *potential* for coverage under the terms of the policy." *Id*. at *4. (emphasis in the original). The court emphasized that it "will not permit the insurers to duck coverage simply because the complainants sought the tactical advantage of bringing their claims through a class action." *Id.* at *4 n. 39.

As in *Plantronics* and *Tempur-Sealy*, the *Athena* Actions contain factual allegations of bodily injury—injury to the eyes and related emotional and physical effects—that establish at least a potential for covered liability. Great American's attempt to re-litigate this settled issue disregards both Judge Birotte's prior ruling and controlling authority confirming that the duty to defend arises whenever facts alleged, or facts learned from any source, reveal a possibility of coverage.

Third, while Great American places heavy emphasis on the underlying plaintiffs' disavowal of recovery for *physical* injuries, it overlooks the fact that they have *not* disavowed recovery for their *mental* injuries. (JAF 46). Notably, Slattery expressly alleges that "[t]he sudden onset of eye problems caused her anxiety, depression, and feeling of isolation." (JAF 45). Because the Policy defines "bodily injury" to include "mental anguish [and] mental injury . . . resulting from physical injury, sickness or disease," (JAF 24), the *Athena* Actions clearly continue to allege covered "bodily injury" for this additional reason despite any disavowal of damages for "physical injury" thereby triggering Great American's duty to defend on this additional basis.

**3. The Initial Disclosures Do Not Change the Analysis**

Great American incorrectly contends that the Initial Disclosures from the *Rush* and *Markoff* Actions somehow negate its duty to defend. They do not. The Initial Disclosures mirror the allegations in the underlying complaints and therefore add nothing new to the coverage analysis. The Initial Disclosures confirm that the claimants "currently seek, *inter alia*," economic damages and injunctive relief. These same allegations were before Judge Birotte when he determined that the underlying complaints alleged damages sufficient to trigger the duty to defend. (JAF 18). Just as those allegations did not eliminate the potential for coverage, neither do the Initial Disclosures.

Under well-settled California law, an insurer cannot escape its duty to defend unless it conclusively proves that there is no possible potential for coverage—"facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales." *Montrose*, *supra* at 300 The Initial Disclosures do not meet that standard. They add no new facts, evidence, or developments that would negate the potential for coverage previously recognized by the Court. Further, the *Athena* Actions remain pending,

and neither expert discovery nor the claimants' damages model have been produced. (JAF 57 [Declaration of Sascha Henry ¶ 6]). In this posture, it is impossible to conclude that the potential for coverage has been extinguished, and Great American's reliance on the Initial Disclosures—documents that simply restate information Judge Birotte found immaterial to the duty to defend—is misplaced.

**4. The Cases Great American Cites are Inapposite as They Relate to the Duty to Indemnify**

The cases Great American cites in support of its MSJ—none of which are new and all of which could have been cited in its prior Motion to Dismiss—do not alter the controlling law. Indeed, the cases concern the *duty to indemnify*, not the *duty to defend*, and are therefore irrelevant from the outset.

In *National Union Fire Ins. Co. of Pittsburgh, PA v. Ready Pac Foods, Inc.*, 782 F. Supp. 2d 1047 (C.D. Cal. 2011), the coverage question was whether the insurers were obligated to **indemnify** their insured, a food supplier, for a claim brought by Taco Bell seeking damages for lost profits and other economic losses resulting from a decline in customer patronage following an E. coli outbreak. The case did not involve the duty to defend and turned entirely on whether Taco Bell's alleged economic harm—derivative of consumer reactions to the E. coli outbreak—triggered indemnity coverage. The court concluded that it did not. By contrast, the coverage question here is whether Great American has a duty to **defend** the *Athena* Actions, which involve *direct* claims by individuals who personally allege bodily injury and mental anguish as a result of using Athena's products. Whereas *Ready Pac Foods* concerned a commercial claimant seeking recovery for reputational and economic fallout from customer behavior, the underlying plaintiffs allege firsthand physical and mental injury, bringing their claims squarely within the Policy's definition of "bodily injury" and well within the scope of Great American's duty to defend.

///

The same is true for *Geddes & Smith, Inc. v. St. Paul-Mercury Indem. Co.*, 51 Cal. 2d 558, 562 (1959). Like *Ready Pac Foods*, *Geddes* concerned the duty to **indemnify**—not the duty to defend. There, the court held that because the insurer had failed to defend, it was bound by the judgment as to all material findings of fact. *Id.* at 561. The insured had been found liable for property damage and loss of goodwill, and the court required indemnification for the property damage portion of the judgment only. Nothing in *Geddes* undermines Judge Birotte's analysis regarding the broader and more protective duty to defend.

Likewise, *Horsemen's Benevolent & Protective Assn. v. Insurance Co. of North America*, 222 Cal. App. 3d 816 (1990), is similarly inapposite. That case too involved only the duty to indemnify. *Id.* at 819. While the initial lawsuit there was filed by a jockey who suffered bodily injury during training, the relevant coverage question arose from a separate cross-compliant filed by association members alleging misrepresentation about the extent of coverage under a public liability policy. The court found no duty to indemnify because the cross-complaint contained no allegations of bodily injury or property damage. The *Horsemen's* facts bear no resemblance to the present case, where the underlying complaints expressly allege bodily injury and mental anguish arising from Athena's products.

In sum, as Judge Birotte already found, Great American "has not satisfied its heavy burden of showing that the *Athena* Actions 'can by no conceivable theory raise a single issue that could bring it within the policy coverage.'" Dkt. 31, PageID.443. Any doubt regarding the existence of a potential for coverage must be resolved in favor of the insured. Because the *Athena* Actions include factual allegations of bodily injury, Great American owes a duty to defend the *Athena* Actions.

///

///

///

**D. <u>Issue 3: Great American's Argument</u>**

**1. THE UNFAIR COMPETITION EXCLUSION BARS COVERAGE FOR THE *ATHENA* ACTIONS**

Even if this Court were to find that the *Athena* Actions seek damages *because of* "bodily injury," coverage would be barred by the Unfair Competition Exclusion, which bars coverage for "[a]ny 'bodily injury' or 'property damage' alleged in any claim or 'suit' that also alleges any … violation of any statute, common law, or other laws or regulations" concerning "unfair competition, antitrust, restraint of trade, piracy, unfair trade practices, or any similar laws or regulations."

As set forth above, the *Athena* Actions allege that Athena violated "[state] consumer protection statutes" when it "engaged in unfair competition or unfair or deceptive acts or practices…" in violation of various state law codes and statutes relating to consumer protection. (JAF 13.) Athena is alleged to have "engaged in unlawful conduct by deliberately and knowingly engaging in misleading, deceptive, and false statements regarding the Enhancement Serums in the course of [Athena's] business" and "Athena made these misrepresentations, or omitted material information, in its marketing (including its website and the websites of its authorized resellers) for the Enhancement Serums, and the Products' packaging, labeling, and instructions." (JAF 14.)

Federal and state courts in California have consistently enforced the Unfair Competition Exclusion and materially similar exclusions and have rejected the argument that the exclusion is ambiguous. *Great Am. E&S Ins. Co. v. Theos Med. Sys., Inc.*, 357 F. Supp. 3d 953, 971 (N.D. Cal. 2019), *aff'd,* 799 F. App'x 539 (9th Cir. 2020) (catch-all exclusion barred coverage of entire action); *Tria Beauty, Inc. v. Nat'l Fire Ins. Co. of Hartford*, No. C 12-05465 WHA, 2013 WL 2181649, at *8 (N.D. Cal. May 20, 2013) (claim need not have "logical or legal link" to intellectual property cause of action for catch-all exclusion to apply); *WAWGD, Inc. v. Sentinel Ins. Co.*, No. 16-CV-2917-CAB-BGS, 2017 WL 4340437, at *6 (S.D. Cal. Sept. 29,

2017) (exclusion applied to "any injury or damage alleged in a lawsuit including a patent infringement claim"); *Pinnacle Brokers Ins. Solutions LLC v. Sentinel Ins. Co., Ltd.*, No. 15-CV-02976-JST, 2015 WL 5159532, at *5 (N.D. Cal. Sept. 2, 2015) (catchall exclusion was "clear and explicit, and therefore governs"); *Molecular Bioproducts, Inc. v. St. Paul Mercury Ins. Co.*, No. 03-0046-IEG(LSP), 2003 WL 23198852, at *3 (S.D. Cal. July 9, 2003) (catchall exclusion was "clear and explicit and is, therefore dispositive"); *24th & Hoffman Investors, LLC v. Northfield Ins. Co.*, 82 Cal. App. 5th 825, 835 (2022) (habitability of premises exclusion barred coverage for "any other injury or damage alleged in a claim or suit which also alleged infringement or violation); *S.B.C.C., Inc. v. St. Paul Fire & Marine Ins. Co.*, 186 Cal. App. 4th 383, 397 (2010) (exclusion that applied to specified intellectual property laws but also "any other injury or damage that's alleged in any claim or suit which also alleges any such infringement or violation" barred coverage).

This district court enforced the identical unfair competition exclusion in *Envirotac, Inc. v. Great Am. E&S Ins. Co.*, No. 5:21-cv-00145, 2021 WL 3779227 (C.D. Cal. July 27, 2021), *appeal dismissed*, No. 21-55918, 2022 WL 510378 (9th Cir. Jan. 28, 2022). There, the underlying complaint alleged that Great American's insured made "false, misleading, disparaging and unfair statements" about the underlying plaintiff and its products "to participants in the industry, including vendors, customers and potential customers." *Id.* at *2. The underlying action included express claims for unfair business practices or unfair competition. *Id.* at *5. In granting summary judgment in favor of Great American, the court concluded that coverage was barred because the Unfair Competition Exclusion barred coverage for any "suit" that includes unfair competition claims. *Id.* at *2.

In denying Great American's Motion to Dismiss, Judge Birotte relied on a single unreported case, *James River Ins. Co. v. Rawlings Sporting Goods Co*., No. CV 19-6658-GW-MAAX , 2021 WL 346418 (C.D. Cal. Jan. 25, 2021), when considering Athena's argument that the Unfair Competition Exclusion is directed at

business competitors and not consumer-protection claims. (*See* JAF 43). The court stated that "[t]he question is admittedly a close call, but, ultimately, it does appear that the term 'unfair competition' leans towards ambiguity and could reasonably be construed to be directed towards business competitors and to not cover the allegations of deceptive advertising." (*See* JAF 43).

The court erred in relying on *James River* and imposing this "business competitors" limitation on the exclusion, the language of which has been found to be clear and unambiguous, in comparing the Unfair Competition Exclusion to an entirely different exclusion in *James River* titled an "Anti-Trust Exclusion." In that case, the insured, a sports equipment manufacturer that produced baseball bats, was sued in a class action alleging that it misrepresented the weight of its baseball bats and violated California's unfair competition laws, false advertising law, and consumer legal remedies act. The insured was not sued for anti-trust violations.

As an initial matter, *James River* involved a different type of coverage with different coverage expectations. *James River* involved directors and officers liability coverage versus general liability coverage. The policy at issue in *James River* also expressly covered "wrongful acts," defined to include misstatements, misleading statements or omissions by the insured. *Id.* at *3. Therefore, the policies covered intentional acts, unlike Great American's policy. In *James River*, the court was asked to interpret a self-titled "Anti-Trust Exclusion" and was asked to look to the categories of excluded behavior under the "Anti-Trust Exclusion" and concluded that the "anti-trust, business competition, and tortious interference categories all refer to conduct by businesses targeted at its business competitors." *Id.* at *4. It concluded that, <u>in this context</u>, "unfair trade practices" must also be similarly limited. (Emphasis added.) *Id.* Moreover, as the policies in *James River* expressly covered "wrongful acts" (i.e., intentional acts) by the corporate insureds and the court there was concerned that the "Anti-Trust Exclusion" "would swallow the rule," as the policies expressly covered misstatements, misleading statements, omissions,

or acts by the corporate insured. *Id.* at *5. It stated that applying the "Anti-Trust Exclusion" to claims against the insured alleging that the insured misrepresented the weight of its baseball bats would virtually read the "misstatement, misleading statement, omission" language right out of the policies' coverage, vitiating them. *Id.*

The Unfair Competition Exclusion in Great American's Policy differs materially from the "Anti-Trust Exclusion" at issue in *James River*. The applicable heading in Great American's exclusion states that it applies to any "Claim or Suit Alleging Infringement of Intellectual Property or Violation of Laws Concerning Unfair Competition or Similar Laws." It clearly states that it applies to "Violation of Unfair Competition or Similar Laws," and states that it bars coverage, in relevant part, for "bodily injury" alleged in any claim or suit that also alleges any actual or alleged "violation of any statutes, common law, or other laws or regulations concerning unfair competition, antitrust, restraint of trade, piracy, unfair trade practices, or any similar laws or regulations." There is nothing in Great American's exclusion that limits its application to antitrust or suits by business competitors.

In addition, the title of the Unfair Competition Exclusion reflects that it is not limited to business torts, such as anti-trust laws, but broadly encompasses "CLAIMS AND SUITS ALLEGING INFRINGEMENT OF INTELLECTUAL PROPERTY OR UNFAIR COMPETITION." Claims for unfair competition include claims by consumers that they were deceived into purchasing a product that they would not have purchased but for the false advertising of a retailer. *See*, *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 317 (2011) (finding that consumers' purchases of locksets that were mislabeled as being "made in the U.S.A." fell within the meaning of Proposition 64 Unfair Competition Law). The purpose of California's Unfair Competition Law, which defines unfair competition as "any unlawful, unfair or fraudulent business act or practice," "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. *Id.* at 883.

As set forth in the cases cited above, the "clear and explicit" meaning of the terms of the Unfair Competition Exclusion, interpreted in their "ordinary and popular sense," have been applied in prior decisions and should be applied here. *See, AIU Ins. Co. v. Superior Court (FMC Corp.),* 51 Cal. 3d 807, 821 (1990). Although Judge Birotte concluded that the Unfair Competition Exclusion "leans towards ambiguity," a proper analysis of the Unfair Competition Exclusion, set forth by the Supreme Court of California, requires that the Court must first attempt to determine whether coverage is consistent with the insured's *objectively* reasonable expectations. *Montrose Chem. Corp. of Cal. v. Superior Ct. of L.A. Cnty.*, No. B335073, 2025 WL 2778109, at *3 (Cal. Ct. App. Sept. 30, 2025) (citing *Another Planet Ent., LLC v. Vigilant Ins. Co*., 15 Cal. 5th 1106, 1136 (2024).

In so doing, the court must interpret the language in context, with regard to its intended function in the policy. *Montrose*, 2025 WL 2778109, at *3. This is because 'language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.'" *Another Planet,* 15 Cal. 5th at 1136. "The fact that a term is not defined in the policies does not make it ambiguous. *Montrose*, 2025 WL 2778109, at *3. "Nor does '[d]isagreement concerning the meaning of a phrase,' or [] "the fact that a word or phrase isolated from its context is susceptible of more than one meaning. '" *County of San Diego v. Ace Property & Casualty Ins. Co.*, 37 Cal. 4th 406, 415 (2005). "Courts will not strain to create an ambiguity where none exists." *Another Planet,* 15 Cal. 5th at 1136 (citing *Waller v. Truck Ins. Exchange,* 11 Cal. 4th at 18-19). "Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning." *Id.*; *see also, Baker v. Nat'l Interstate Ins. Co*., 180 Cal. App. 4th 1319, 1327 (2009) ("If the language of the policy is not ambiguous, then the coverage inquiry ends, and the court determines coverage by applying the plain meaning of the unambiguous provisions of the policy").

In determining that the application of the Unfair Competition Exclusion was a "close call," Judge Birotte considered that the Unfair Competition Exclusion "could reasonably be construed to be directed towards business competitors and to not cover the allegations of deceptive advertising." (JAF 43.) However, California Supreme Court authority is clear that the purpose of unfair competition laws are to protect consumers as well as business competitors. As set forth in *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320 (2011), the purpose of California's Unfair Competition Law, which defines unfair competition as "any unlawful, unfair or fraudulent business act or practice," "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services (emphasis added).

It is Great American's position that the language of the Unfair Competition Exclusion is clear and unambiguous and nothing in the exclusion limits its application to disputes among business competitors. However, to the extent this Court believes that the Unfair Competition Exclusion may be fairly susceptible of two constructions, "when the language used in an agreement is fairly susceptible of two or more constructions, extrinsic evidence may be considered, not to vary or modify the terms of the agreement but to aid the court in ascertaining the true intent of the parties." *Nofziger v. Holman,* 61 Cal. 2d 526, 528 (1964). Thus, "[a] court may provisionally receive such evidence until it is 'in a position to determine whether in the light of all of the offered evidence, the item objected to will turn out to be admissible as tending to prove a meaning of which the language of the instrument is reasonably susceptible or inadmissible as tending to prove a meaning of which the language is not reasonably susceptible.'" *Another Planet, supra*, 15 Cal. 5th at 1144. Extrinsic evidence is admissible only to the extent it is relevant "to prove a meaning of which the language of the policy is reasonably susceptible." *Id.* at 1145–1146 (citations omitted).

As Judge Birotte's Order was entered in response to a Motion to Dismiss, he

did not consider, nor could he consider, extrinsic evidence to aid the Court in interpreting the Unfair Competition Exclusion. Here, in light of Judge Birotte's comments and the proper standard for construing alleged ambiguities in policy language, Great American offers the Declaration of Kathleen Pamela Stautberg, Divisional/Subsidiary Senior Vice President – Underwriting. Ms. Stautberg has extensive knowledge regarding the policy language used by Great American, and Ms. Stautberg attests that the Unfair Competition Exclusion was intended to apply as written without limitation to claims by business competitors against Great American's insureds.[8] In light of Judge Birotte's Order, Great American's Declaration of Kathleen Pamela Stautberg should be accepted to tend to prove the meaning of the plain language of the Unfair Competition Exclusion.[9]

**E. Issue 3: Athena's Argument**

1. As Judge Birotte Previously Determined, the Unfair Competition Exclusion Does Not Apply

It is well-established that, to be enforceable, an exclusionary clause "must be conspicuous, plain and clear." *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635, 639 (2003). Any ambiguity concerning the scope of an exclusion must be construed in favor of coverage. *Bank of the West v. Sup. Ct.*, 2 Cal. 4th 1254, 1264–65 (1992). A policy provision is ambiguous when it is reasonably susceptible to two or more constructions. *MacKinnon, supra* at 647.

---

[8] Although Judge Birotte's Order stated that the Unfair Competition Exclusion "could reasonably be construed to be directed towards business competitors and to not cover the allegations of deceptive advertising" (*see* JAF No. 43), it overlooked the fact that the *Athena* Actions alleged, among other things, causes of action for Violation of Consumer Protection Statutes and Fraud.

[9] By presenting Ms. Stautberg's declaration in support of this Motion, Great American does not admit that the language of the Unfair Competition Exclusion is ambiguous. Great American's position is that the Unfair Competition Exclusion is clear and unambiguous and that its plain language should be applied as written.

Judge Birotte correctly applied these principles in holding that the term "unfair competition" was ambiguous. He found the phrase reasonably susceptible to at least two interpretations—one encompassing all claims under California's unfair competition laws, and another limited to business-versus-business disputes—and, consistent with California law, construed the ambiguity in favor of coverage. Relying in part on *James River Ins. Co. v. Rawlings Sporting Goods Co.*, 2021 WL 346418 (C.D. Cal. Jan. 25, 2021), Judge Birotte observed that the question was "a close call, but, ultimately, it does appear that the term 'unfair competition' leans towards ambiguity and could reasonably be construed to be directed towards business competitors and to not cover the allegations of deceptive advertising." (JAF 43).

Although Great American disagrees with this conclusion, it cannot meet its burden to show "clear error" warranting reversal. Nor can it meaningfully distinguish *James River*. In that case, the court interpreted a nearly identical exclusion and held that it applied only to allegations of unfair competition or trade practices directed at business competitors, not consumer-protection suits. The insured, Rawlings, was named in a class action complaint alleging that it misrepresented the weight of baseball bats that it sold. *Id.* at *1. Like here, the claimants asserted several consumer protection claims against Rawlings, including violation of California's (1) unfair competition law, Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) false advertising law, Cal. Bus. & Prof. Code § 17500 *et seq.*; and (2) consumer legal remedies act, Cal. Civ. Code § 1750 *et seq.* The insurer, James River, argued that Rawlings' alleged wrongdoing fell within an exclusion for "unfair trade practices" in the James River policy. *Id.* at *4. The court disagreed, noting that "the fact that California's consumer protection statutes refer to unfair trade practices does not, by itself, determine the meaning of 'unfair trade practices' within the Policies." *Id.* The court further noted that, within the context of the policy, "unfair trade practices" appeared alongside other excluded conduct—"antitrust," "business

competition," and "tortious interference"—all of which describe conduct among competing businesses. *Id.* Because "a word takes meaning from the company it keeps," the court concluded that the exclusion must likewise be limited to claims brought by business competitors, not by consumers. *Id.*

The same reasoning applies here. The fact that California's consumer protection statutes reference "unfair competition" does not, by itself, determine the meaning of that term in Great American's policy. As in *James River*, the exclusion can reasonably be read as applying only to claims brought by *business competitors* – not *consumers* of the insured's product—given the context of the words in the exclusion (*e.g.*, antitrust, restraint of trade, piracy)

**2.** The Cases Great American Cites Actually Support Judge Birotte's Ruling

None of the cases Great American cites in its MSJ support a broader reading of the exclusion, and each involve a claim bought by a business competitor of the insured—supporting Judge Birotte's holding that the exclusion could be interpreted to apply only to claims brought by business competitors.[10] *See e.g., Great Am. E & S Ins. Co. v. Theos Med. Sys.*, 357 F. Supp. 3d 953, 959 (N.D. Cal. 2019) (Malem Medical was a business competitor of the insured); *Tria Beauty, Inc. v. Nat'l Fire Ins. Co.*, 2013 WL 2181649, *3 (N.D. Cal. May 20, 2013) (Radiancy was a business competitor of the insured); *Pinnacle Brokers Ins. Solutions LLC v. Sentinel Ins. Co., Ltd.*, 2015 WL 5159532, at *5 (N.D. Cal. Sept. 2, 2015) (Granite was a business competitor of the insured); *EP&A Envirotac, Inc. v. Great Am. E&S Ins. Co.*, 2021 WL 3779227, *2 (C.D. Cal. July 27, 2021) (Soilworks was a business competitor of the insured).

///

[10] Further, the cases Great American relies on now are the same ones it cited in its Motion to Dismiss—each of which Judge Birotte already considered and rejected.

The other cases cited by Great American—such as *WAWGD, Inc. v. Sentinel Ins. Co.*, 2017 WL 4340437, at *6 (S.D. Cal. Sept. 29, 2017), *Molecular Bioproducts, Inc. v. St. Paul Mercury Ins. Co.*, 2003 WL 23198852, at *3 (S.D. Cal. July 9, 2003), *24th & Hoffman Investors, LLC v. Northfield Ins. Co.*, 82 Cal. App. 5th 825, 835 (2022), and S.*B.C.C., Inc. v. St. Paul Fire & Marine Ins. Co.,* 186 Cal. App. 4th 383, 397 (2010)—do not even address this exclusion. Rather, they concern the enforceability of "catch all" exclusions that remove the duty to defend in mixed-action cases. That issue is not presented here, as Great American cannot show that the *Athena* Actions allege unfair competition claims as that term is used in the Policy.

**3.** The Stautberg Declaration is Irrelevant and Inadmissible

In a transparent attempt to rewrite the meaning of the Unfair Competition Exclusion, Great American relies on the declaration of Kathleen Pamela Stautberg, an underwriter employed by Great American. Ms. Stautberg states that she has worked for Great American for 18 years and asserts, without any basis to so conclude, that the Unfair Competition Exclusion "was intended to be applied as written without limitation to claims by business competitors against Great American's insureds." Stautberg Decl. ¶¶ 2, 6.[11]

While that may reflect Great American's undisclosed, subjective intent, it is legally irrelevant. An insurer's subjective belief about what it "intended" its policy language to mean cannot alter the plain language of the contract. Ambiguity must be assessed objectively—from the standpoint of the reasonable insured—not through the lens of the insurer's internal, subjective understanding. *Kunde Enters., Inc. v. Nat'l Sur. Co.*, 608 F. Supp. 3d 883, 892 (N.D. Cal. 2022); *Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1212 (2004). Indeed, courts have long held that an insurer's

[11] Notably, Great American did not include any facts from the Stautberg Declaration in its statement of undisputed material facts. This confirms that the purported facts set forth in the Stautberg Declaration are not material. See L.R. 56-1.

"undisclosed subjective intent as to policy coverage is irrelevant to determining the meaning of contractual language." *Pardee Const. Co. v. Ins. Co. of the W.*, 77 Cal. App. 4th 1340, 1360 (2000). Likewise, "[t]he opinions of claims adjusters or other agents or employees of the insurer are also inadmissible to interpret an insurance contract." *Prudential Ins. Co. of Am. v. Superior Court*, 98 Cal. App. 4th 585, 599 (2002).[12]

Thus, even if Great American now contends that it *meant* to exclude certain types of claims, it bears the burden of having clearly and unambiguously stated so in the Policy. Having failed to do that, any ambiguity must be construed against it. Athena cannot be expected to divine Great American's undisclosed intent—and neither can any of its insureds.

As such, consistent with Judge Birotte's ruling, where an exclusion is susceptible to more than one reasonable interpretation, ambiguity exists—and every ambiguity, especially in an exclusion, must be construed in favor of coverage. *MacKinnon*, 31 Cal. 4th at 648. Accordingly, the Unfair Competition Exclusion does not bar Great American's duty to defend.

///

///

///

///

---

[12] The Stautberg Declaration also lacks foundation. Ms. Stautberg attempts to lay foundation with a single, conclusory sentence: "I have extensive knowledge regarding the policy language used by Great American E&S Insurance Company ('Great American')." However, this statement fails to establish any foundation for knowledge of the meaning of the Unfair Competition Exclusion. Ms. Stautberg never states that she drafted the Exclusion or spoke with anyone who was responsible for drafting the Exclusion. She never identifies any reliable source of the purported meaning of the Exclusion and never establishes any personal knowledge. The Court should sustain Athena's objections to the Stautberg Declaration.

### F. Issue 4: Athena's Argument

#### 1. Great American's Wholly Fails to Brief Why It is Entitled to Summary Judgment as to Athena's Other Claims

The Court should also deny the MSJ to the extent it seeks summary judgment on claims it fails to address. A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and identifying the evidence that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where a movant offers no argument or evidence directed to a specific claim, the court cannot grant judgment on that claim. Courts will not "manufacture arguments" for a party and issues raised without developed analysis are deemed waived. *Independent Towers of Washington v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003); *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994).

Because the MSJ fails to brief, analyze or identify any evidence as to Athena's Second, Third, and Fourth Causes of Action, it has not met its initial burden. The burden therefore never shifts, and the Court must deny summary judgment on this additional basis.

## V. CONCLUSION

### A. Great American's Conclusion

For the foregoing reasons, Great American respectfully requests that this Court enter judgment in its favor and dismiss the Complaint in its entirety, with prejudice, pursuant to FRCP Rule 56(a).

///

///

///

///

///

///

**B. <u>Athena's Conclusion</u>**

For the foregoing reasons, the Court should deny the MSJ.

Dated: October 29, 2025

**TRESSLER LLP**

By: */s/ Amy L. Metzgar*

Linda Bondi Morrison
Amy L. Metzgar
Attorneys for Defendant,
Great American E&S Insurance Company erroneously sued as Great American Insurance Company

**BARNES & THORNBURG LLP**

Dated: October 29, 2025

By: /s/ *David P. Schack*

David P. Schack
david.schack@btlaw.com
Matthew B. O'Hanlon
matthew.ohanlon@btlaw.com
Alice Kyureghian
akyureghian@btlaw.com
Brian T. Nguyen
brian.nguyen@btlaw.com
Attorneys for Plaintiff Athena Cosmetics Inc.

**SIGNATURE CERTIFICATION**

I hereby attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: October 29, 2025

By: */s/ David P. Schack*