UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-08010-AH-AGRx | Date | November 24, 2025 |
| Title | *Athena Cosmetics, Inc. v. Great American E&S Insurance Company* | | |

| | |
|---|---|
| Present: The Honorable | Anne Hwang, United States District Judge |

| | |
|---|---|
| Yolanda Skipper | Not Reported |
| Deputy Clerk | Court Reporter |

| | |
|---|---|
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings: (IN CHAMBERS) ORDER DENYING MOTION FOR SUMMARY JUDGMENT (DKT. NO. 53)**

Before the Court is a Motion for Summary Judgment ("Motion") filed by Defendant Great American E&S Insurance Company ("Great American"). Dkt. No. 53. Plaintiff Athena Cosmetics, Inc. ("Athena") opposed and filed a Joint Brief ("J. Br.").[1] Dkt. No. 55. Great American replied. Dkt. No. 57. The parties also filed a Joint Appendix of Facts ("JAF").[2] Dkt. No. 59. The Court heard oral argument on November 19, 2025. For the following reasons, the Court DENIES the Motion.

[1] The Joint Brief appears to incorporate Great American's initial motion, Dkt. No. 53, and amended notice of motion, Dkt. No. 54, and therefore the Court disregards that motion.

[2] The JAF appears to incorporate Athena's statement of facts, Dkt. No. 56, and therefore the Court disregards that statement.

# I. BACKGROUND[3]

## A. Factual Background

This action involves a dispute as to whether Great American owes a duty to defend Athena in three putative class action lawsuits filed against Athena (collectively, "*Athena* Actions").[4] J. Br. at 1, 3. Each of the *Athena* Actions alleged that the plaintiffs purchased lash enhancement serums from Athena that contained compounds found in prescription drugs and were known to cause adverse side effects to the face and eye area. *Id.*[5] The *Athena* Actions commonly alleged "false, misleading, unfair, and deceptive sale of beauty products without disclosing dangerous risks and side effects of the products' key ingredient" and "unfair competition or unfair or deceptive acts or practices" in violation of various states' consumer protection statutes. JAF 11, 13 (internal quotations omitted). Although the *Athena* Actions' complaints alleged that the plaintiffs experienced "physical impact" on their face and eye area, they explicitly did "not seek to recover for physical injuries." JAF 18; *Athena* Actions Compls., Dkt. No. 10-1, Ex. A ¶ 117, Ex. B. ¶ 117, Ex. C ¶ 117.[6]

Great American issued a Commercial General Liability Policy ("Policy"), Policy No. PL2258463-05, to Athena effective March 1, 2023, to March 1, 2024. JAF 23. The Policy states, in relevant part, that Great American "will pay those sums that [Athena] becomes legally obligated to pay as damages because of

---

[3] The following summarized facts are relevant to the instant Motion and taken from the parties' JAF and appendices of evidence. *See* Def.'s App. of Evid., Dkt. No. 53-4; Pl.'s App. of Evid., Dkt. No. 55-1. To the extent that any of the facts were disputed by the opposing party, the Court concludes that no actual dispute exists or that the adopted language resolves the dispute.

[4] The *Athena* Actions are *Slattery v. Athena Cosmetics, Inc.*, No. 2:23-cv-10078 (C.D. Cal) ("*Slattery* Action"); *Rush v. Athena Cosmetics, Inc.*, No. 24-cv-8542 (C.D. Cal) ("*Rush* Action"); and *Markoff v. Athena Cosmetics, Inc.*, No. 23-cv-16401 (N.D. Ill.) ("*Markoff* Action"). JAF 1.

[5] Although these facts were not contained in the parties' JAF, they appear to be undisputed.

[6] The Court admonishes the parties for not including the complaints with the other evidence relied upon for this Motion. Nonetheless, since both parties cite to the evidence presented with the earlier filed motion to dismiss without objection, the Court refers to that evidence herein.

'bodily injury' . . . to which this insurance applies" and "will have the right and duty to defend [Athena] against any 'suit' seeking those damages." JAF 24. The Policy defines "bodily injury" to mean "injury, sickness, or disease sustained by a person, including death of a person," as well as "mental anguish, mental injury, or shock, if directly resulting from physical injury, sickness, or disease to that person." *Id.* The Policy also includes in a stand-alone endorsement an exclusion for any "Claim or Suit Alleging Infringement of Intellectual Property or Violation of Laws Concerning Unfair Competition or Similar Laws" ("Unfair Competition Exclusion"), which excludes coverage for bodily injury or property damage "alleged in any claim or 'suit' that also alleges any: . . . (2) violation of any statute, common law, or other laws or regulations" "concerning unfair competition, antitrust, restraint of trade, piracy, unfair trade practices, or any similar laws or regulations."[7] Staffo Decl., Ex. 1 at 67, Dkt. No. 53-4; JAF 25.

Athena tendered the defense of the *Athena* Actions to Great American. JAF 26. Great American initially denied the tenders of each of the *Athena* Actions on the grounds that (1) it owed no duty to defend Athena because the *Athena* Actions did not seek potentially covered damages because of "bodily injury"; and (2) coverage is barred by the Unfair Competition Exclusion. JAF 27. Great American later agreed to defend Athena in the *Athena* Actions, subject to a complete reservation of rights. JAF 28.

**B. Procedural Background**

On August 13, 2024, Athena sued Great American in the Ventura County Superior Court for (1) breach of contract, (2) tortious breach of contract, (3) unfair competition, and (4) declaratory relief. Compl., Dkt. No. 1-1. On September 19, 2024, Great American removed the action to this Court based on diversity jurisdiction. Notice of Removal ("NOR"), Dkt. No. 1. On September 26, 2024, Great American moved to dismiss Athena's Complaint. Mot. to Dismiss, Dkt. No. 8. The Court denied Great American's motion to dismiss.[8] Order Den. Mot. to

---

[7] The Unfair Competition Exclusion referenced in Section C.2 refers to the definition of Section B.2 concerning any "personal and advertising injury" alleged in a claim or "suit" that alleges any "actual, alleged, or threatened violation of any statutes, common law, or other laws or regulations" concerning the topics referenced above. Staffo Decl., Ex. 1 at 67; JAF 25.

[8] Athena argues that this Motion impermissibly seeks reconsideration of Judge Birotte's order denying Great American's motion to dismiss. J. Br. at 21.

Dismiss, Dkt. No. 31. On December 6, 2024, this case was transferred to the undersigned for all further proceedings. Dkt. No. 32. On October 15, 2025, Great American moved for summary judgment, requesting that the Court dismiss the Complaint in its entirety with prejudice.[9] Mot. at 22.

## II. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the case, and the substantive law "identif[ies] which facts are material." *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, discovery responses, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To carry its burden of production, the moving party must either: (1) produce evidence negating

---

However, different legal standards govern a motion to dismiss and a motion for summary judgment, and additional evidence that was not incorporated in the complaint for purposes of the motion to dismiss has been presented with this Motion. Athena's arguments under Local Rule 7-18, which applies to motions for reconsideration, are therefore inapposite. *See id.* at 22.

[9] Athena argues this Motion should be denied because it failed to comply with this Court's Standing Order. J. Br. at 24. Great American acknowledges that it missed the deadline to move for summary judgment and failed to file moving and opposition briefs concurrently, as required by this Court's Standing Order. *Id.* at 1. Great American contends, however, that good cause and excusable neglect warrant relief from the Standing Order given an internal scheduling error after the case was transferred from Judge Birotte's calendar and differing Standing Order. *Id.* at 1–2. The Court decides this Motion on the merits in the interest of judicial economy and efficiency, without reaching whether good cause exists.

an essential element of the nonmoving party's claim or defense; or (2) show that there is an absence of evidence to support the nonmoving party's case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citation modified). The evidence presented by the parties must be capable of being presented at trial in a form that would be admissible. *See* Fed. R. Civ. P. 56(c)(2). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The court must draw all reasonable inferences in the nonmoving party's favor. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson*, 477 U.S. at 255).

## III. DISCUSSION

### A. Request for Judicial Notice

Great American requests judicial notice of (1) "Plaintiff's Initial Disclosures" served by plaintiff Rebecca Rush in the *Rush* Action and (2) "Plaintiff's Initial Disclosures" served by plaintiff Corinne Markoff in the *Markoff* Action (collectively, "Initial Disclosures"), which were both produced by Athena in response to Great American's Request for Production. Def.'s Request for Judicial Notice ("RJN"), Dkt. No. 53-4. Athena objected to judicial notice. Dkt. No. 55-2. Great American replied in support of its request. Dkt. No. 58. Great American also requests judicial notice of (1) an Order Regarding Motion to Dismiss from *Axial Manufacturing, Inc. v. Great American E&S Insurance Company*, No. 8:25-cv-00519-JVS-JDE (C.D. Cal. Aug. 19, 2025) and (2) an Order Regarding Motion for Reconsideration from the same case. Reply, Dkt. No. 57-1.

A court may judicially notice facts that are not subject to reasonable dispute because they are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court may "take notice of proceedings in other courts . . . if those proceedings have a direct relation to matters at issue." *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). While a court "may consider documents properly subject to judicial notice, including the existence of court dockets and filings in related proceedings, . . . the court cannot take judicial notice of those documents for the truth of any matter

asserted therein." *See Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1101 (S.D. Cal. 2024).

Athena argues that discovery items such as the Initial Disclosures are not subject to judicial notice because they are not self-authenticating and cannot be verified, citing *United Safeguard Distributors Ass'n, Inc. v. Safeguard Bus. Sys., Inc.*, 145 F. Supp. 3d 932, 942 (C.D. Cal. 2015) ("Discovery items such as . . . responses to requests for discovery are not proper subjects for judicial notice because they are not 'self-authenticating' and thus cannot be verified."). Great American argues the Court can take judicial notice of the Initial Disclosures because they were produced by Athena during discovery and are properly authenticated, citing Federal Rule of Evidence 901(b)(4) and *Anand v. BP West Coast Products LLC*, 484 F. Supp. 2d 1086, 1092 n.11 (C.D. Cal. 2007) ("Documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent."). Great American's arguments pertain to admissibility of evidence, as opposed to judicial notice.

Accordingly, the Court declines to take judicial notice of the Initial Disclosures but may consider them to the extent they are admissible evidence.[10] The Court also considers the *Axial Manufacturing* Orders. Additionally, the three class action complaints that comprise the *Athena* Actions were previously found to be incorporated by reference. *Athena* Action Compls., Exs. A, B, C; *see* Order Den. Mot. to Dismiss at 5–6 (granting Great American's RJN for the *Athena* Actions complaints).

### B. Evidentiary Objections

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). When considering summary judgment, a district court "must also rule on evidentiary objections that are material to its ruling." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010). However, "in motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument

[10] Although Athena raises evidentiary objections, the Court nonetheless considers the Initial Disclosures because they may be presented in an admissible form at trial.

raised." *Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2010) (citation omitted). Additionally, "when evidence is not presented in an admissible form in the context of a motion for summary judgment, *but it may be presented in an admissible form at trial*, a court may still consider that evidence." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006) (citing *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) ("[T]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

The parties' objections include hearsay, irrelevance, lack of foundation, and improper legal conclusion or opinion. *See generally* Pl.'s Evidentiary Objs., Dkt No. 55-3; Def.'s Evidentiary Objs., Dkt. No. 60. "'[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself' and unnecessary to consider here." *Holt v. Noble House Hotels & Resort, Ltd.*, 370 F. Supp. 3d 1158, 1164 (S.D. Cal. 2019) (quoting *Burch*, 433 F. Supp. 2d at 1119). "Moreover, Federal Rule of Evidence 403 objections are unnecessary at the summary judgment stage because there is no jury that can be misled and no danger of confusing the issues." *Id.* at 1164. "Accordingly, the Court does not consider any objections on the grounds that the evidence is irrelevant, speculative, argumentative, prejudicial, that it constitutes hearsay or inadmissible lay opinion, or that there is a lack [of] personal knowledge." *Id.* (citing *Burch*, 433 F. Supp. 2d at 1122).

Accordingly, the Court OVERRULES the parties' objections.

### C. Breach of Contract

The elements of a cause of action for breach of contract in California are: "(1) existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (citation omitted). The parties do not dispute the existence of a contract, Athena's performance under the contract, or damages to Athena resulting from an alleged breach. Athena alleges Great American breached the contract by initially refusing to defend the *Athena* Actions. Compl. at 2. Great American argues (1) it has no duty to defend Athena under the policy because the *Athena* Actions do not seek

damages *because of* "bodily injury," and (2) the Unfair Competition Exclusion bars coverage for the *Athena* Actions. J. Br. at 25, 36.

### 1. Duty to Defend

The Policy covers "those sums that [Athena] becomes legally obligated to pay as damages because of 'bodily injury'" and establishes a "duty to defend [Athena] against any 'suit' seeking those damages." JAF 24. Great American argues that the *Athena* Actions' plaintiffs do not seek damages *because of* bodily injury but instead seek economic damages for the out-of-pocket costs to purchase the serums. J. Br. at 25; JAF 41. Great American asserts that the *Athena* Actions' plaintiffs expressly disclaimed recovery for damages for bodily injuries, even though the complaints include allegations of bodily injury. J. Br. at 25; JAF 18. Athena opposes this distinction between allegations of bodily injury and claims for damages for bodily injury, and argues that the underlying complaints' allegations of bodily injury are sufficient to trigger the duty to defend. J. Br. at 30.

"An insurer has a very broad duty to defend its insured under California law." *Anthem Elecs., Inc. v. Pac. Emp'rs Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002). An "insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." *Montrose Chem. Corp. v. Super. Court*, 6 Cal. 4th 287, 299 (1993) (emphasis in original) (citing *Gray v. Zurich Ins. Co*, 65 Cal. 2d 263, 275–76 (1966)). "Facts known to the insurer and extrinsic to the third party complaint can generate a duty to defend, even though the face of the complaint does not reflect a potential for liability under the policy." *Id.* at 296. Therefore, while the "insured need only show that the underlying claim *may* fall within policy coverage, the insurer must prove it *cannot*." *Id.* at 300 (emphasis in original) (citation modified). In other words, under California law, "the insurer's duty is not measured by the technical legal cause of action pleaded in the underlying third-party complaint, but rather by the *potential* for liability under the policy's coverage as revealed by the *facts* alleged in the complaint or otherwise known to the insurer." *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1267 (9th Cir. 2010) (emphasis in original) (citation modified). Accordingly, to determine whether the insurer owes a duty to defend, courts "compare the allegations of the complaint—and facts extrinsic to the complaint—with the policy terms to see if they reveal a possibility that the claim may be covered by the policy." *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 949 (9th Cir. 2002) (citation modified). "Any doubt as

to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Hudson*, 624 F.3d at 1269. The "insurer may be relieved of its duty only when the facts alleged in the underlying suit can by no conceivable theory raise a single issue that could bring it within the policy coverage." *Pension Tr.*, 307 F.3d at 949; *Gray*, 65 Cal. 2d at 276.

Here, Great American "does not dispute that the *Athena* Actions include allegations that the named plaintiffs suffered some physical injury as a result of the use of Athena's products." Reply at 2. Great American further acknowledges that "there is nothing that would prevent the putative class members from settling the *Athena* Actions, or securing a judgment against Athena, and then filing suit against Athena seeking compensation for physical injuries." *Id.* Yet Great American contends that because the *Athena* Actions' plaintiffs seek compensation for economic loss, rather than damages because of any physical injuries, the *Athena* Actions are not covered under the Policy. *Id*. at 2–3. Great American's position, however, is inconsistent with California law providing that a *potential* for liability can trigger a duty to defend, and here, that potential arises from the allegations of bodily injury undisputedly contained in the complaints. *See Hudson*, 624 F.3d at 1267 ("Under California law the insurer's duty is not measured by the technical legal cause of action pleaded in the underlying third party complaint, but rather by the *potential* for liability under the policy's coverage as revealed by the *facts* alleged in the complaint or otherwise known to the insurer.") (emphasis in original) (citation modified); *see also Montrose*, 6 Cal. 4th at 296 (holding that facts known to the insurer can generate a duty to defend "even though the face of the complaint does not reflect a potential for liability under the policy").

Great American relies heavily on the *Athena* Actions' disclaimer of recovery of damages arising from physical injuries, citing *Low v. Golden Eagle Insurance Co*., in which the insurer had no duty to defend where the underlying complaint expressly disclaimed recovery for personal injuries, despite an allegation that the plaintiff "sustained personal injuries as a result of ingesting [the insured's] product."[11] 99 Cal. App. 4th 109, 112 (2002). The court noted that the underlying

[11] As Athena notes, the other cases cited by Great American involve the duty to indemnify, rather than the duty to defend. *See* J. Br. at 26–27, 34–35. The California Supreme Court recognized "the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." *Montrose*, 6 Cal. 4th at 295. In any event, the cases cited are inapposite. For example, in *Nat'l Union Fire*

"complaint demonstrates it was a class action with *an* individual allegation," as the "great bulk" of the complaint was devoted to class action allegations and only one paragraph set forth allegations particular to the plaintiff. *Id.* at 112. In this circumstance, the court found no duty to defend because the plaintiff "expressly disclaims any interest in seeking recovery of damages for her alleged personal injuries, despite that fact that such an allegation is required to trigger coverage and a related duty to defend under the policy." *Id.* at 114.

Athena, on the other hand, cites two district court cases that distinguished *Low* and found a duty to defend even when the underlying complaints disclaimed damages for physical injuries. In *Hartford Fire Insurance Co. v. Tempur-Sealy International, Inc.*, the court observed that the underlying complaint in *Low* did not "actually *allege* detailed facts that would support covered claims for bodily injury or property damage." 158 F. Supp. 3d 877, 884 (N.D. Cal. 2016) (emphasis in original) (citation modified). In contrast, the underlying complaint in *Tempur-Sealy* contained "detailed factual allegations describing the bodily injuries and property damage caused by [the insured's] defective" product. *Id.* at 883. The court also rejected the insurer's argument that the plaintiffs' explicit disclaimer against seeking damages for physical injuries negated the duty to defend, given the factual allegations of injury in the complaint. *Id.* at 885. Similarly, in *Plantronics, Inc. v. American Home Assurance Co.*, the court noted: "Unlike the complaint in *Low* which only set forth a single paragraph laying out allegations particular to the potentially covered claims, the underlying actions in this case go to great length to describe the noise-induced hearing loss risk." 2014 WL 2452577, at *4 (N.D. Cal. May 30, 2014). The court likewise noted that the plaintiffs' "disavowal of bodily injury claims is not dispositive" and that the insurer cannot "duck coverage simply because the complainants sought the tactical advantage of bringing their claims through a class action." *Id.* at *4 n.39. In addition, the Ninth Circuit appeared to

---

*Ins. Co. of Pittsburgh, PA v. Ready Pac Foods, Inc.*, the third-party complaint sought damages for the plaintiffs' "economic loss arising out of an alleged decline in patronage at [plaintiffs'] restaurants due to the E. coli outbreak," and the issue was whether the policies provided coverage for the defendant's liability for this lost patronage claim. 782 F. Supp. 2d 1047, 1050 (C.D. Cal. Mar. 18, 2011); *see also Geddes & Smith, Inc. v. St. Paul-Mercury Indem. Co.*, 51 Cal. 2d 558, 564 (1959) ("The crucial issue is which, if any, of these harms were within the policy coverage.") (citation modified). Here, there is no dispute that the harms would be within the scope of coverage, but the issue is whether the third-party plaintiffs' allegations of those harms in the complaints trigger a duty to defend.

interpret the underlying complaint in *Low* as lacking allegations of bodily injury, citing *Low* to support its statement that "California courts have held that no duty to defend attaches where . . . the third party complaint *did not allege the type of damages covered by the policy*, and the class representatives explicitly disavowed any interest in the type of damages covered by the policy." *Sony Computer Ent. Am. Inc. v. Am. Home Assur. Co.*, 532 F.3d 1007, 1020 (9th Cir. 2008) (emphasis added). These cases demonstrate that a bare allegation of physical injury without further facts, as in *Low*, do not constitute allegations that would trigger a duty to defend. *See* 99 Cal. App. 4th at 112. On the other hand, allegations detailing the factual basis for a potential covered claim, as in *Tempur-Sealy*, may give rise to a duty to defend even when the plaintiffs disclaim damages arising from physical injury. *See* 158 F. Supp. 3d at 883.

Here, Athena claims that the *Athena* Actions all allege bodily injury, including claims that the "products caused (1) swollen and red eyes, (2) eye disease, (3) blurry vision, (4) chronic dry eyes, and (5) anxiety, depression and the feeling of isolation."[12] Response to JAF 1. For instance, the *Athena* Actions' complaints allege that "Plaintiff's use of [Athena's serums] caused pain and eye inflammation." *Athena* Actions Compls., Ex. A ¶ 17, Ex. B. ¶ 17, Ex. C. ¶ 17. The complaints also allege that Athena's serums "resulted in physical impact to Plaintiff and other class members, including . . . sub-cellular or structural impact on Plaintiffs and each other class member's face and eye area." *Id.* Ex. A ¶ 140, Ex. B ¶ 140, Ex. C. ¶ 140. The complaints further incorporate customer complaints describing red, itching, and burning eyes after using Athena's serums. *Id.* Ex. A ¶ 47; Ex. B ¶ 47, Ex. C. ¶ 47.[13] The nature of the class action complaints, which were not certified as a class at the time of Athena's tender, were generally related to the safety of the product and the undisclosed risk of injury. *See generally*

---

[12] Great American disputes this claim, arguing that the *Athena* Actions' plaintiffs "specifically disavow claims for physical injury and affirm their intention not to make a claim for 'bodily injury,'" and that consequently any claims for "'mental anguish, mental injury, or shock,' if such claims were in fact made, would not be covered." Reply to JAF 1. The Court notes that this is not a dispute of fact, but an argument that the Court addresses herein.

[13] In addition, here, plaintiff Slattery sent a pre-filing notice of claim directly to Great American, detailing her physical and mental injuries and providing notice that she "intend[ed] to pursue legal action against Athena Cosmetics, Inc., the manufacturer of the product for her injuries." O'Hanlon Decl., Ex. 13 at 137, Dkt. No. 55-1.

*id.* As in *Tempur-Sealy*, "if [Defendant's] defective products had not allegedly caused bodily injury . . . , then [Defendant] would not have been able to allegedly misrepresent the products' ability to cause such injuries or damage." *See* 158 F. Supp. 3d at 883. The factual allegations here are more extensive than those in *Low* and sufficiently indicate a *potential* that the suits may fall within the Policy's coverage of bodily injury claims.[14] *See Pension Tr.*, 307 F.3d at 949, 951 (noting that California courts have found that even "remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty"). By Great American's own admission, the *Athena* Actions' plaintiffs could presumably file suit against Athena to seek compensation for physical injuries with these allegations. *See* Reply at 2; Reply to JAF 1 ("Great American agrees that allegations by the named plaintiffs *Athena* Actions could, in a non-class action setting, constitute individual claims for 'bodily injury.'").

Further, as Athena notes, the complaints in the *Athena* Actions did not expressly disclaim recovery for mental injuries, which are included in the Policy's definition of "bodily injury." J. Br. at 33; *see Athena* Actions Compls., Ex. A ¶ 76, Ex. B. ¶ 76, Ex. C. ¶ 76 ("Although Plaintiff does not seek to recover for *physical* injuries . . . .") (emphasis added). Great American's response is to reiterate that the *Athena* Actions' complaints expressly disavowed recovery for physical injury and did not allege or seek recovery for any mental injuries. *See* Reply at 5 n.3; Response to JAF 46; Reply to JAF 1. However, Great American does not address that the *Slattery* Action plaintiff described her mental injuries in a June 15, 2023, pre-filing notice of claim to Great American. JAF 45; O'Hanlon Decl., Ex. 13 at 137 (stating that the "sudden onset of eye problems caused [Slattery] anxiety, depression, and feeling of isolation"). Such facts that are extrinsic to the

---

[14] Given that the allegations of bodily injury in the *Athena* Actions' complaints are facially sufficient to establish a duty to defend, the Court does not address the plaintiffs' deposition testimony regarding the bodily injuries they suffered. *See* J. Br. at 29–30. For the same reason, the Court also need not address the Initial Disclosures. *See* Reply at 7 ("[The Initial Disclosures] are being provided as support for what Great American contends the complaints in the *Athena* Actions already prove—that is, that the complaints seek damages from Athena due to the economic loss of the putative class and not damages because of 'bodily injury' to any putative class member."). In any event, the Initial Disclosures merely state that the plaintiff "currently seeks" the "available categories of monetary and equitable relief relating to, *inter alia*, the amounts paid for the Serums . . ." and "reserves the right to seek different damages." RJN, Ex. 5 at 3, Dkt. No. 53-4.

underlying complaint but known to the insurer can generate a duty to defend, "even though the face of the complaint does not reflect a potential for liability under the policy." *Montrose*, 6 Cal. 4th at 296.

The Court therefore concludes that Great American owed a duty to defend Athena in the *Athena* Actions under the Policy.

### 2. Unfair Competition Exclusion

Great American also argues that even if the *Athena* Actions sought "damages because of 'bodily injury,'" coverage is barred by the Policy's Unfair Competition Exclusion. J. Br. at 36. This provision excludes coverage for suits that allege "violation of any statutes, common law, or other laws or regulations concerning unfair competition, antitrust, restraint of trade, piracy, unfair trade practices, or any similar laws or regulations." JAF 25. Each of the *Athena* Actions alleges that Athena violated California's Unfair Competition Law ("UCL") and other state consumer protection statutes by engaging in "unfair competition or unfair or deceptive acts or practices." JAF 13; *Athena* Actions Compls., Ex. A ¶ 68, Ex. B ¶ 68, Ex. C ¶ 68. The Court must determine whether the term "unfair competition" within the Unfair Competition Exclusion includes these allegations.

Under California law, "interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation." *MacKinnon v. Truck Ins. Exchange*, 31 Cal. 4th 635, 647 (2003) (citation modified). The "interpretation of a contract must give effect to the 'mutual intention' of the parties . . . [which] is to be inferred, if possible, solely from the written provisions of the contract." *Id.* The Court will apply the "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," but will consider a provision "ambiguous when it is capable of two or more constructions, both of which are reasonable." *Id.* at 647–48. When considering an "ambiguous" provision in an insurance policy, the Court must follow "not the subjective beliefs of the insurer but, rather, the objectively reasonable expectations of the insured." *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1265 (1992). If this rule does not resolve the ambiguity, then the Court will "resolve it against the insurer." *Id.*; *see also Crane v. State Farm Fire & Cas. Co.*, 5 Cal. 3d 112, 115 (1971) ("[W]hen language found in an insurance policy avails itself to more than one reasonable interpretation, the Court must favor the interpretation advanced by the insured."). Generally, insurance coverage is "interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] . . . exclusionary clauses are interpreted

narrowly against the insurer." *MacKinnon*, 31 Cal. 4th at 648 (citation modified). "The burden is on the insured to establish that the claim is within the basic scope of coverage and on the insurer to establish that the claim is specifically excluded." *Id.* "An exclusionary clause must be conspicuous, plain and clear." *De May v. Interinsurance Exch.*, 32 Cal. App. 4th 1133, 1137 (1995) (citation modified).

The Court first considers the "ordinary and popular sense" of term "unfair competition." *See Bank of the West*, 2 Cal. 4th at 1265. Black's Law Dictionary defines "unfair competition" as the "dishonest or fraudulent rivalry in trade and commerce" and the "body of law encompassing various business and privacy torts, all generally based on deceitful trade practices, including passing off, false advertising, commercial disparagement, and misappropriation." Black's Law Dictionary (12th ed. 2024); *see Cooper Companies v. Transcon. Ins. Co.*, 31 Cal. App. 4th 1094, 1103 (1995) (referring to the Black's Law Dictionary definition to determine the "ordinary and popular sense" of a contract term).

The Court must also consider the term "unfair competition" in the context of the exclusion in this case. *Bank of the West*, 2 Cal. 4th at 1265; *see Align Tech., Inc. v. Fed. Ins. Co.*, 673 F. Supp. 2d 957, 970 (N.D. Cal. 2009) (noting that applying the UCL's "broad definition [of unfair competition] would stretch the term far beyond its context embedded within an exclusion"). Within the Unfair Competition Exclusion, the term "unfair competition" appears alongside "antitrust, restraint of trade, piracy, unfair trade practices, or any similar laws or regulations." JAF 25. Athena argues that the term "unfair competition" is ambiguous, and therefore must be construed in its favor, because it could be construed as covering only disputes by business competitors and not all claims under the UCL or other states' consumer protection statutes. J. Br. at 43. Great American counters that the Unfair Competition Exclusion's language is unambiguous and nothing in the exclusion limits its application to disputes among business competitors. *Id.* at 41. Great American notes that California's UCL defines unfair competition as "any unlawful, unfair or fraudulent business act or practice" and serves to "protect both consumers and competitors by promoting fair competition." *Id.* (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 320 (2011)). Great American acknowledges that the *Athena* Actions allege violations of state consumer protection statutes by engaging in misleading, deceptive, and false statements and misrepresentations regarding products. *Id.* at 36.

Athena relies on *James River Insurance Co. v. Rawlings Sporting Goods Co.*, in which the court considered whether consumer protection claims, including

a UCL claim, alleged a violation of "unfair trade practices" under a similar exclusion provision. 2021 WL 346418, at *4 (C.D. Cal. Jan. 25, 2021). In that case, the so-called "Anti-Trust Exclusion" disclaimed coverage for claims relating to "anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships." *Id.* The court noted that these other terms all "refer to anti-competitive *business* practices and not to any conduct directed at consumers." *Id.* at 7 (emphasis in original) (citation modified). The court concluded the term "unfair trade practices" was ambiguous and found the Anti-Trust Exclusion did not exclude coverage for the underlying consumer protection claims. *Id.* at 8. Athena argues that, like the Anti-Trust Exclusion in *James River*, the Unfair Competition Exclusion can reasonably be read as applying only to claims brought by business competitors and not consumers of the insured's product. J. Br. at 44.

The Court agrees with *James River*'s reasoning as applied to those terms in common between the Anti-Trust Exclusion and the Unfair Competition Exclusion here, and considers whether some different terms alter the context. The Anti-Trust Exclusion's terms of "business competition" and "tortious interference in another's business or contractual relationships" are absent in the Unfair Competition Exclusion. *See James River*, 2021 WL 346418, at *7. On the flip side, the Unfair Competition Exclusion's terms of "unfair competition," "restraint of trade," "piracy" and "or any similar laws or regulations" did not appear in the Anti-Trust Exclusion. It is therefore much clearer that the Anti-Trust Exclusion was directed towards business competition in the antitrust context. Indeed, the title "Anti-Trust Exclusion" suggests it is limited to restraints of competition, while the title of the exclusion here — "Claim or Suit Alleging Violation of Laws Concerning Unfair Competition or Similar Laws" — is less restrictive. *See* JAF 25.

The Court also considers the California Supreme Court's interpretation of "unfair competition" in *Bank of the West*, 2 Cal. 4th at 1262, as applied by the Ninth Circuit in *Standard Fire Ins. Co. v. Peoples Church of Fresno*, 985 F.2d 446 (9th Cir. 1993). In *Bank of the West*, the court held that the term "unfair competition" did not refer to statutes prohibiting unfair business practices, but rather only to the common law tort of unfair competition. 2 Cal. 4th at 1262–63. The court considered the term in the context of a Commercial General Liability ("CGL") policy that covered damages for "advertising injury" caused by "unfair competition" or "libel, slander, defamation, violation of right of privacy, and infringement of copyright, title or slogan." *Id.* at 1265–66. The court described common law unfair competition as "synonymous with the act of 'passing off' one's

goods as those of another," including the "wrongful exploitation of trade names and common law trademarks" or the "sale of confusingly similar products, by which a person exploits a competitor's reputation in the market." *Id.* at 1263. In *People's Church*, the Ninth Circuit considered whether "unfair competition" in a similar CGL policy as in *Bank of the West* encompassed actions for negligent misrepresentation, and concluded that the term is "limited to the common law tort which includes competitive injury as an element." 985 F.2d at 450. In that case, the term "unfair competition" was listed among "libel, slander, defamation, violation of right of privacy, piracy, misappropriation of idea, and infringement of copyright, title or slogan." *Id.* at 450 n.4. The group of torts within which "unfair competition" was "nestled" "all involve disparagement or appropriation of another's name, style, identity, or other forms of representation of products." *Id*. at 450. The court concluded that "plainly, none of this coverage involves misrepresentation, negligent or otherwise, of the unique attributes of one's own product." *Id*. (citation modified). "Additionally, to include claims of negligent misrepresentation within the scope of unfair competition coverage would be to expand that coverage to include the insured's business activities in general. Such a result does not comport with the context of the CGL policy and does not support an objectively reasonable expectation of coverage." *Id*.

Here, the Unfair Competition Exclusion also includes "piracy," and at least one district court has found that where "the term 'unfair competition' appears in the context of 'piracy, unfair competition or other similar practices,'" it refers to common law unfair competition. *Align Tech.*, 673 F. Supp. 2d at 970 (citing *Bank of the West*, 2 Cal.4th at 1263). However, here, the policy clearly and unambiguously states that the exclusion applies to any "bodily injury" alleged in any claim or "suit" that also alleges any "violation of any statute, common law, or other laws or regulations described" in the prior section, which in turn applies to any "actual, alleged, or threatened violation of any statutes, common law, or other laws or regulations." *See* Staffo Decl., Ex. 1 at 67. Nonetheless, as in *Align Technology*, the Court considers the dictionary definition of "piracy": the "unauthorized and illegal reproduction or distribution of materials protected by copyright, patent, or trademark law." Black's Law Dictionary (12th ed. 2024).

In considering the Unfair Competition Exclusion here, none of the "similar laws or regulations" listed along with "unfair competition" refer to conduct directed at consumers, and Great American does not argue otherwise. Instead, Great American argues that nothing in the exclusion "limits its application to antitrust or suits by business competitors." J. Br. at 39. But Great American

ignores that terms such as "antitrust" and "similar laws or regulations" do limit the application of "unfair competition" to the extent that they are the context in which "unfair competition" is to be considered.[15] Great American has not cited any case finding that the term "unfair competition," as used in a policy provision with similar terms as the Unfair Competition Exclusion, clearly and unambiguously includes consumer fraud claims like those alleged in the *Athena* Actions.[16]

---

[15] Great American argues that the title of the exclusion broadly states "Claims and Suits Alleging Infringement of Intellectual Property or Unfair Competition." J. Br. at 39. While the Court acknowledges the surface appeal of the argument that "Unfair Competition" means a state's "Unfair Competition Law," "unfair competition" itself is not defined in the policy and, as discussed, is nestled with other offenses that are not so broad. Great American's argument that California's UCL broadly protects both consumers and competitors does not demonstrate that the insured's objectively reasonable expectation would be that the title itself meant the exclusion was coextensive with all states' unfair competition laws, rather than limited by the context in which "unfair competition" was found with other "similar laws or regulations." *See id.* at 41.

[16] Great American cites several cases interpreting identical Unfair Competition Exclusions in other policies issued by Great American. *See* J. Br. at 36–37. In *EP&A Envirotac, Inc. v. Great American E&S Insurance Co.*, the court found that the exclusion barred coverage for underlying actions that included "express claims for unfair business practices or unfair competition." 2021 WL 3779227, at *5 (C.D. Cal. July 27, 2021). And in *Great American E & S Insurance Co. v. Theos Medical Systems, Inc.,* the court found that the exclusion barred coverage for an underlying action that included claims for unfair competition under federal law and California's UCL. 357 F. Supp. 3d 953, 970 (N.D. Cal. 2019), *aff'd*, 799 F. App'x 539 (9th Cir. 2020). However, the underlying actions in these cases were brought by business competitors rather than consumers and also included allegations that sound in common law unfair competition. *See EP&A Envirotac*, 2021 WL 3779227, at *2 (noting underlying action's allegations of "false, misleading, disparaging and unfair statements about [competitor] and its products"); *Theos Medical*, 357 F. Supp. 3d at 970 (noting underlying action's claim of common law misappropriation). Great American also relies on a recent district court order finding that the Unfair Competition Exclusion barred coverage for an action that alleged piracy, which is not alleged in the *Athena* Actions. Reply at 8; Order re Mot. for Recons. at 5, *Axial Mfg., Inc. v. Great American E&S Ins. Co.*, No. 8:25-cv-00519-JVS-JDE (C.D. Cal. Oct. 16, 2025). These cases therefore do not

Considering that the prevalent interpretations of "unfair competition" in similar insurance policies and exclusions have limited the term to either business-competition torts or the common law tort of unfair competition, the Court concludes that the "objectively reasonable expectations of the insured" would not consider "unfair competition" to broadly exclude consumer fraud-related claims.[17] *See Bank of the* West, 2 Cal. 4th at 1265. "Unfair competition" is at least ambiguous as to whether it means competition between competitors or whether it is coextensive with a broad "Unfair Competition Law," such as California's UCL, encompassing conduct that harms both competitors and consumers. Accordingly, the exclusion must be construed against the insurer under California law. *See id.*; *Crane*, 5 Cal. 3d at 115. The Court therefore concludes that the Unfair Competition Exclusion does not bar coverage for the *Athena* Actions.

Because Great American owed a duty to defend Athena in the *Athena* Actions under the Policy and the Unfair Competition Exclusion does not bar coverage, the Court DENIES Great American's Motion as to the breach of contract claim.

### D. Remaining Claims

Great American's Motion also seeks to dismiss the Complaint's claims for tortious breach of contract, unfair competition, and declaratory relief. Mot. at 1. However, Great American's opening briefing is entirely dedicated to the breach of contract claim, specifically its arguments that it owed no duty to defend and that the Unfair Competition Exclusion barred coverage. *See generally* J. Br. Athena argues that because the Motion "fails to brief, analyze or identify any evidence" as to the remaining three claims, it has not met its burden to inform the Court of the basis for its motion. J. Br. at 47 (citing *Celotex*, 477 U.S. at 323 (holding that a party moving for summary judgment "bears the initial responsibility of informing

---

support Great American's position that "unfair competition" clearly and unambiguously means consumer fraud or consumer protection claims.

[17] Great American submitted a declaration by Kathleen Pamela Stautberg, Divisional/Subsidiary Senior Vice President – Underwriting, that "attests that the Unfair Competition Exclusion was intended to apply as written without limitation to claims by business competitors against Great American's insureds." J. Br. at 42; *see* Stautberg Decl., Dkt. No. 53-2. However, contract interpretation follows "not the subjective beliefs of the insurer but, rather, the objectively reasonable expectations of the insured." *Bank of the West*, 2 Cal. 4th at 1265.

the district court of the basis for its motion")). Great American's response simply asserts: "In the event this Court concludes that no duty to defend exists, as set forth in the Motion, there can be no duty to indemnify and no breach of the covenant of good faith and fair dealing." Reply at 12. Great American did not address, however, the remaining claims in the event this Court concludes that a duty to defend does exist. Accordingly, the Court DENIES the Motion as to the claims for tortious breach of contract, unfair competition, and declaratory relief.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Great American's motion for summary judgment.

**IT IS SO ORDERED.**